UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Dan Valentine and W. Brand Bobosky, individually, and on behalf of themselves and all others similarly situated, ) ) ) ) | |
| Plaintiffs, ) ) | No. 09 C 07653 |
| v. ) ) | Judge Edmond E. Chang |
| WideOpen West Finance, LLC, ) ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Valentine and Bobosky brought this putative class action suit against Internet service provider WideOpen West (WOW), alleging that WOW violated several state and federal laws as a provider of Internet services.[1] Before the Court are WOW's motion to dismiss, R. 59, WOW's motion to compel arbitration, R. 69, and WOW's motion to strike the class allegations of the original complaint, R. 74. For the reasons explained below, the motion to dismiss is denied without prejudice, the motion to compel arbitration is granted, and the motion to strike the class allegations is denied without prejudice as moot.

---

[1] Citation to the docket is "R." followed by the docket entry. Plaintiffs' motion to amend the complaint, R. 101, is granted. The amended complaint does not assert any new claims, and so the parties' arguments on the pending motions are not materially affected by the filing of the amended complaint. Citation to the complaint is to the proposed amended complaint that was attached to the motion to amend. R. 101-1. The Court has jurisdiction over Counts 3 and 5 of the amended complaint because they assert claims arising under federal law. 28 U.S.C. § 1331. The Court has jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367.

## I.

WideOpen West is a cable-based Internet service provider in several states, including Illinois. R. 101-1 ¶ 7. WOW provided Internet services to approximately 330,000 customer accounts, including Plaintiffs Dan Valentine and Brand Bobosky. *Id.* Among the provisions in the Terms of Service between customers and WOW is an arbitration provision. R. 72-1. Listed under the heading of "**ARBITRATION**" on page 26 of the 30-page document is a class-action waiver and limitation of recoverable damages. *Id.* at 26. Relevant to this motion, the arbitration clause provides that:

> Any controversy or claim arising out of or related to this agreement that cannot be resolved informally (except for [four exceptions, one of which is applicable here, claims arising under 18 U.S.C. § 2510]) shall be resolved by binding arbitration. . . . Each party shall bear its own expenses and the cost of arbitrator(s) shall be shared. The parties expressly waive any entitlement to attorneys' fees or punitive damages to the fullest extent permitted by law. Consolidated or class action arbitration shall not be permitted.

*Id.* (The actual arbitration provision is in all caps in the Terms of Service).

According to Plaintiffs, in or around late 2007, WOW began installing spyware devices on its broadband networks, which directed all users' Internet communications to a third-party Internet advertisement-serving company, NebuAd. R. 101-1 ¶ 1. In December 2009, Plaintiffs filed a complaint alleging WOW installed hardware at their facilities that intercepted all online communications for advertisement services. R. 1. On June 8, 2011, WOW filed the pending motion to compel arbitration. R. 69.

## II.

Under the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, if the parties have an arbitration agreement and the asserted claims are within its scope, a motion to

compel must be granted. 9 U.S.C. §§ 3-4; *Sharif v. Wellness Int'l Network Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004) (citing *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.,* 174 F.3d 907, 909 (7th Cir. 1999)). Section 3 of the FAA specifically requires granting a motion to stay a lawsuit where "the issue involved in such suit . . . is referable to arbitration" under a written agreement. 9 U.S.C. § 3. And Section 4 requires that the court order the parties to proceed in arbitration if there is an agreement to arbitrate. 9 U.S.C. § 4.

Here, Plaintiffs do not dispute that they agreed to the Terms of Service quoted above. *See generally* R. 84. Instead, Plaintiffs contend that WOW cannot compel arbitration because it has waived its right to do so. *Id.* at 1. In the alternative, Plaintiffs also argue that the arbitration provision is unconscionable. *Id.* Because neither of these arguments have merit, the motion to compel is granted.

**A.    Waiver**

Plaintiffs' first argument is that WOW implicitly waived its right to arbitrate because it waited until June 8, 2011 to file a motion to compel in response to a complaint filed 18 months earlier. R. 84 at 3. Although those dates are correct, a brief examination of the context in which the parties interacted establishes that WOW never acted in a way to waive its rights.

"A contractual right to arbitrate may be waived expressly or implicitly . . . ." *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753, 756 (7th Cir. 2002). In determining whether there has been waiver, the Court "must examine the totality of the circumstances and determine whether based on all the circumstances, the party against whom the waiver is to be enforced has acted inconsistently with the right to

3

arbitrate." *Id.* (internal citation, quotation, and bracketing omitted). Among the circumstances to be considered, "uncertainty about the right to arbitrate is a factor that tends to undermine a finding of waiver . . . ." *Iowa Grain Co. v. Brown*, 171 F.3d 504, 509 (7th Cir. 1999).

This case was filed in December 2009. R. 1. WOW filed a motion to dismiss on February 22, 2010. R. 22. Briefing on the motion was held in abeyance while the parties attempted to resolve their dispute through mediation. R. 42 at 1. Thereafter, the previously-assigned judge denied the motion to dismiss, in part due to a lack of sufficient detail regarding the technology at issue; the judge suggested limited discovery on that subject. *Id.* at 4-5. Shortly after that decision, the case was transferred to this Court, R. 49, and an initial status hearing was held February 9, 2011, R. 52. At that time, the Court permitted one deposition of a WOW employee in an effort to foster the parties' understanding of the technology at issue. *Id.* Armed with the knowledge, WOW was in a position to reassert its motion to dismiss, which it did on April 25, 2011. R. 59. On April 27, the United States Supreme Court released its opinion in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011). As explained below, *Concepcion* altered the state of the law with regards to arbitration provisions and class-action waivers. Around three weeks after *Concepcion*, on May 23, 2011, WOW requested that Plaintiff[2] submit his claims to arbitration. R. 73-1. After Plaintiff refused, WOW then filed the pending motion to compel on June 8. R. 69.

---

[2]At the time, Valentine was the only plaintiff. R. 1.

4

Plaintiffs contend that WOW waived its right to arbitrate by waiting too long between the initial filing of the case and the filing of the motion to compel arbitration. R. 84 at 4-5. But the time lag is justified by the initial procedural steps, as well as, significantly, the issuance of *Concepcion* in April 2011. The initial procedural steps included the previously-assigned judge's request for limited discovery in order to better address the motion to dismiss, the mediation between the parties, and the detour the case took to reach the current judge. Just as importantly, in April 2011, *Concepcion* held that the Federal Arbitration Act preempted a California line of cases, *see Discover Bank v. Superior Court*, 113 P.3d 1100 (Cal. 2005), which deemed most collective-arbitration waivers in consumer contracts to be unconscionable. *Concepcion*, 131 S. Ct. at 1745. In this case, before *Concepcion*, the class-action waiver in the arbitration agreement here would have been vulnerable to an unconscionability challenge under Illinois law. Specifically, in 2006, the Illinois Supreme Court deemed unconscionable an arbitration agreement that did not reveal the cost of arbitration to the consumer (the consumer was a cellular phone service customer who was charged $150 for terminating service before the contract's minimum term ended). *Kinkel v. Cingular Wireless*, 857 N.E.2d 250, 274-75 (Ill. 2006). As it turned out, the rules of the arbitration service provided that the claimant must pay half of the arbitrator's fee, up to a maximum of $125. In light of the fee and other costs to pursuing arbitration, none of which were recoverable even if the consumer won the arbitration, *Kinkel* held that the class-action waiver prevented the consumer from pursuing the "only reasonable, cost-effective means of obtaining a complete remedy," namely, proceeding as the

5

representative (or a member of) a class-action. *Id.* at 275. It is likely that if WOW had demanded arbitration, the class-action waiver would not have been enforced, and WOW would have been forced to arbitrate a class action, with all of its attendant risks. *Concepcion*, 131 S. Ct. at 1752 ("Arbitration is poorly suited to the higher stakes of class litigation."). At the very least, there was substantial uncertainty over whether WOW's right to arbitrate on a bilateral basis only, pursuant to the actual agreement entered into by the parties. After *Concepcion*'s issuance, WOW promptly demanded arbitration, and upon Plaintiff's refusal, moved to compel arbitration. Thus, in this case, the mere passage of time does not amount to an implicit waiver.

Next, Plaintiffs argue that WOW's filing of a motion to dismiss worked as an implicit waiver. In support of their argument, Plaintiffs cite *St. Mary's Medical Center v. Disco Aluminum Products*, 969 F.2d 585, 589 (7th Cir. 1992). *St. Mary's* held that a party that filed a motion to dismiss, participated in litigation, lost on its motion to dismiss, and *then* filed a motion to compel arbitration had waived its rights to arbitrate. *Id.* It is not surprising that a party who tries a "if dismissed, great; if not, let's go to arbitration" approach will be deemed to have constructively waived arbitration. But this case is distinguishable because WOW's motion to dismiss was not definitively resolved. R. 42 at 3. The previously-assigned judge acknowledged that it could not "reach a final conclusion at this time," *id.*, and instead encouraged limited discovery in order to better resolve an anticipated refiled motion to dismiss. Put another way, WOW did not commit itself to litigation and then strategically changed course when it was too late; instead, *Concepcion* impacted the enforceability of the

6

class-action waiver. There was no waiver, and so the next question is whether the class-action waiver is unconscionable.

**B.     Unconscionability**

Plaintiffs contend that the provision is both procedurally and substantively unconscionable.[3] R. 84 at 6-9. Unconscionability under Illinois law "may be based on either procedural or substantive unconscionability, or a combination of both." *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 263 (Ill. 2006) (citation omitted).

**1.     Procedural Unconscionability**

"Procedural unconscionability refers to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it, and also takes into account a lack of bargaining power." *Razor v. Hyundai Motor America*, 854 N.E.2d 607, 622 (Ill. 2006). To determine whether a contract is procedurally unconscionable, courts take into account "the manner in which the contract was entered into, whether each party had a reasonable opportunity to understand the terms of the contract, and whether important terms were hidden in a maze of fine print." *Kinkel*, 857 N.E.2d at 264 (internal quotation omitted). Moreover, the contractual agreement should "be examined with reference to all of the circumstances surrounding the transaction." *Id.* at 265.

Plaintiffs contend that WOW's arbitration provision is procedurally

---

[3]Neither party has explicitly addressed the choice of law question, but the Terms of Service provides that the agreement be construed pursuant to federal law and "laws of the state and locality in which the Services are performed." R. 73-1 at 28. The parties assume that Illinois law applies; so too does the Court.

unconscionable for two reasons. First, Plaintiffs argue that the arbitration provision is "buried on page 26 of a 30-page document." R. 84 at 6-7; R. 101-1 at 7. But the provision is no more buried than any other portion of the Terms of Service. The arbitration provision's heading ("**ARBITRATION**") appears in bold and capital letters. Furthermore, the entirety of the provision describing the arbitration agreement, including the class arbitration waiver and limitations on costs, attorney fees, and damages, is written in CAPITAL LETTERS. Together, these stylistic choices call a reader's attention to the importance of the provision placed in the middle of an extensive document. To be sure, text in all capital letters is harder to read in the sense of taking *longer* to read,[4] but all capitalization does draw attention to the provision. In other words, the provision is not only *not* "buried," it is actually highlighted.

Second, Plaintiffs argue that the arbitration provision is procedurally unconscionable because the Terms of Service were offered on a take-it or leave-it basis, depriving consumers the opportunity to negotiate. R. 84 at 7. Plaintiff cites *Williams v. Illinois State Scholarship Commission* for support that "take-it or leave-it" contracts amount to contracts of adhesion. 563 N.E.2d 465, 487 (Ill. 1990). *Williams* is distinguishable on two grounds. First, *Williams* involved a forum-selection clause that purported to permit a student-loan lender to sue students in Cook County, no matter where the student resided and no matter whether Cook County had any connection to

---

[4]*See* Ruth Anne Robbins, *Painting with print*, 2 Journal of the Association of Legal Writing Directors 108, 115-17 (Fall 2004) (describing how all caps prevents readers from reading by shape) (available at ca7.uscourts.gov/Rules/Painting_with_Print.pdf).

the underlying facts. The clause thus violated Illinois public policy because it "results in the contravention of the policy underlying the general venue statute, ridiculous long-distance forum abuse, and the unfair burdening of a forum not connected to the litigation." *Id.* at 486. Second, Plaintiffs "here are not similarly situated to the indigent students in *Williams* . . . who had to choose between signing an agreement and forgoing a student loan . . . ." *IFC Credit Corp. v. Rieker Shoe Corp.*, 881 N.E.2d 382, 393 (Ill. App. Ct. 2007). The consumers in *Williams* were required, in order to obtain a student loan guaranteed by the State of Illinois, to obtain the loan through the Illinois State Scholarship Commission. *Williams*, 563 N.E.2d at 469. In contrast, here the consumers were purchasers of Internet-access services, and Plaintiffs cannot demonstrate that neither they specifically nor potential class members generally had no alternative Internet service providers.

Cutting against Plaintiffs' arguments, the Illinois Supreme Court has enforced arbitration clauses presented in a similar manner as the one at issue here. Under Illinois law, contracts of adhesion can be enforceable even though the terms "including the arbitration clause and the class action waiver therein, are nonnegotiable and presented in fine print in language that the average consumer might not fully understand." *Kinkel*, 857 N.E.2d at 266. "Such contracts . . . are a fact of modern life." *Id*. One final point from *Kinkel* further undermines Plaintiffs' argument. *Kinkel* held that the arbitration provision's failure to explain that the consumer would be partially responsible for the costs of arbitration was the only factor weighing toward procedural unconscionability. *Id.* at 266. Here, the arbitration provision does explain that the

9

consumer is responsible for a portion of the arbitration fees. The arbitration provision is not procedurally unconscionable.

### 2. Substantive Unconscionability

A contract is substantively unconscionable when the terms are "inordinately one-sided in one party's favor." *Kinkel*, 857 N.E.2d at 267 (quoting *Razor*, 854 N.E.2d at 622). Plaintiffs argue that the arbitration provision operates in a manner that is one-sided, R. 84 at 7-8, but Plaintiffs do not make a *specific* argument as to how the provision is substantively unconscionable, merely stating that the class waiver "when combined with the other provisions of the arbitration clause at issue [renders] the arbitration provision as a whole . . . clearly oppressive and unenforceable." *Id.* at 7-8. "Plaintiff would be unable to enforce his rights under this provision, as it would be economically unfeasible." *Id.* After that, Plaintiffs leap to explaining why the Supreme Court's holding in *Concepcion* does not foreclose an argument based on the economic inequalities worked by an arbitration provision. *Id.* at 8.

Plaintiffs do not provide, however, any specific argument, nor any specific information, to support the proposition that the arbitration provision operates in such a way that it is "economically unfeasible" for a consumer to pursue relief under the provision. The party that seeks to invalidate an agreement bears the burden to show that it is "clearly contrary" to public policy. *Phoenix Ins. Co. v. Rosen*, 949 N.E.2d 639, 644-45, 655 (Ill. 2011) ("the power to declare a private contract invalid on public policy grounds is exercised sparingly"). To be sure, the arbitration provision provides that the parties shall bear their own expenses and attorneys' fees, split arbitration fees, and

10

cannot recover fees or costs (even if successful), but Plaintiffs have not attempted to demonstrate what the fees and costs might be relative to the alleged harm and possible recovery.

It is worth adding, however, that WOW advances too broad an argument when contending that, even if Plaintiffs could demonstrate that it would *always* be economically irrational to pursue arbitration, *Concepcion* has foreclosed such an argument. R. 93 at 7-8 (*Concepcion* "mandates this arbitration agreement be enforced"). In support, WOW cites to a passage from *Concepcion* that responded to a concern raised by the dissent in that case. In addressing the dissent's concern that "class proceedings are necessary to prosecute small-dollar claims that might otherwise slip through the legal system," *Concepcion* held that "States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons." *Concepcion*, 131 S. Ct. at 1753. WOW contends that this language has closed the door on the argument that an arbitration provision can be substantively unconscionable if it leaves a consumer with no practical remedy. R. 93 at 8. *Concepcion* does not stand for such a broad proposition. After all, the FAA's "savings clause" remains a part of the United States Code, and it provides that an arbitration provision may be held unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. If *Concepcion* stands for the proposition WOW advances, then *Concepcion* not only held that the FAA preempts state laws that inhibit arbitration provisions, but also eviscerated the savings clause. The FAA ensures enforcement of arbitration agreements, but does not insulate arbitration agreements from all scrutiny.

11

It is easy enough to imagine a consumer contract where the damages arising out of some problem in the relationship between consumer and vendor are virtually certain to never exceed the arbitrator's fee, and yet the agreement does not permit even a prevailing consumer to recoup the fee. That provision would not be an arbitration agreement protected by the FAA, but instead would be a mechanism to insulate the vendor. More concretely, consider a consumer who pays a $100 security deposit for a cable box from a cable provider. As part of the agreement, the consumer agrees to arbitrate all claims with the company, and he waives class arbitration. Additionally, the arbitration provision provides that each party shall equally split the $500 costs of arbitration, and neither party can recover its costs or attorney's fees, even if the party "wins" the arbitration. If the consumer returns the cable box in perfect condition, but the cable company does not return the $100 security deposit, the consumer would not pursue that claim; even a victory would put the consumer in the hole by $150 dollars ($250 filing fee minus the return of the $100 security deposit), and perhaps even more if one considers the value of the consumer's time and other expenses beyond the fee to initiate arbitration.[5] *Concepcion* did not remove FAA § 2 scrutiny from arbitration agreements.[6]

---

[5]Perhaps the solution to such an arbitration provision would be to allow recovery of attorneys' fees and costs, as opposed to severing the class-action waiver aspect of the provision.

[6]To be sure, some cases do seem to support the broad argument WOW advances. *See e.g. Arellano v. T-Mobile USA, Inc.,* 2011 WL 1842712 at *2 (N.D. Cal. May 16, 2011) (holding that *Concepcion* has foreclosed the argument that an arbitration provision is unconscionable because the costs of arbitration outweigh the reward). But *Arellano* is distinguishable because it dealt with the arbitrability of injunctive relief claims, *id.* at *1, and injunctive relief by definition is not readily valuated in terms of dollars and cents.

It may very well be that the arbitration provision at issue here *could* be substantively unconscionable in practice, but Plaintiffs have failed to adequately make that argument, and as such their argument that the arbitration provision is unconscionable (procedurally or substantively) fails. Accordingly, the motion to compel arbitration is granted as to Counts 1 and 2, and 4 through 7.

## C. ECPA Claim (Count 3)

As noted earlier, Plaintiffs' claim under the Electronic Communications Privacy Act, 18 U.S.C. § 2510, is explicitly exempted from the arbitration provision. Nonetheless, WOW argues that the claim should be stayed because it is so closely related to the arbitrable claims. R. 71 at 12. Plaintiffs do "not dispute that the claims generally involve a common, underlying course of conduct by Defendant." R. 84 at 10. Nonetheless, Plaintiffs argue that the ECPA claim should proceed because the ECPA claim and the other claims involve "different standards in finding whether [a plaintiff] consented" to WOW's alleged actions. *Id.* at 11. But Plaintiffs have cited no law in support of this argument. *Id.*

Although nonarbitrable claims should not be automatically stayed when related claims are stayed for arbitration, "an exception to this rule has been recognized when staying arbitrable issues, while allowing nonarbitrable issues to proceed in the district court, risks inconsistent rulings because the pending arbitration is likely to resolve issues material to the lawsuit." *Volkswagen of America, Inc. v. Sud's of Peoria, Inc.*, 474 F.3d 966, 973 (7th Cir. 2007). That risk exists here. One of WOW's primary defenses to Plaintiffs' allegations is that Plaintiffs consented to traffic monitoring and the

13

installation and use of the allegedly harmful software. *See generally* R. 60. As such, the arbitrator will have to make findings regarding Plaintiffs' consent to resolve the six claims that are sent to arbitration. For this litigation to do the same for the remaining ECPA claim would be an inefficient use of resources and would risk conflicting decisions. It is appropriate to stay Plaintiffs' ECPA claim until the resolution of the arbitration.

## III.

For the reasons stated above, the motion to compel arbitration [R. 69] is granted, the motion to amend the complaint [R. 101] is granted, the motion to dismiss [R. 59] is denied without prejudice as moot, and the motion to strike the class allegations [R. 74] is denied without prejudice as moot. The claims stated in Counts 1, 2, and 4 through 7 must be arbitrated, and the litigation of Count 3 is stayed. The Court will hold a status hearing on April 12, 2012 at 9 a.m.

                                          ENTERED:

                                          *Edmond E. Chang*
                                          Honorable Edmond E. Chang
                                          United States District Judge

DATE: March 26, 2012