**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DAN VALENTINE, *et al.*,        ) | |
|            ) | |
|             ) | |
|        Plaintiffs,    ) | No. 09 C 7653 |
| v.                ) | |
|             ) | The Hon. Edmond E. Chang |
| WIDEOPEN WEST FINANCE, LLC,  ) | |
|             ) | |
|        Defendant.    ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT WIDEOPEN WEST FINANCE, LLC'S**
**MOTION TO STRIKE CLASS ALLEGATIONS**
**FROM PLAINTIFFS' SECOND AMENDED COMPLAINT**

## TABLE OF CONTENTS

**INTRODUCTION** ............................................................................................................... 1

**PROCEDURAL HISTORY AND RELEVANT FACTS** ....................................................... 3

**ARGUMENT** ....................................................................................................................... 4

I.      THE RULE AGAINST CLAIM SPLITTING DOES NOT APPLY ................................. 4

II.     CLASS ACTIONS ARE THE EXCEPTION TO THE RULE AGAINST CLAIM
        SPLITTING ............................................................................................................... 5

III.    IF THE ECPA CLAIM IS ULTIMATELY CERTIFIED, ANY RISKS OF *RES
        JUDICATA* WOULD BE MITIGATED BY NOTICE AND AN OPT OUT
        OPPORUNITY ........................................................................................................... 6

IV.     PLAINTIFFS CAN ADEQUATELY REPRESENT THE ECPA CLASS. ........................ 8

V.      PUBLIC POLICY CONSIDERATIONS SUPPORT DENIAL OF WOW'S MOTION
        TO STRIKE ............................................................................................................. 11

VI.     MOTIONS TO STRIKE ARE DISFAVORED ............................................................. 12

VII.    STRIKING CLASS ALLEGATIONS PRIOR TO DISCOVERY IS USUALLY
        INAPPROPRIATE AND WOW'S MOTION IS PREMATURE. ................................. 13

VIII.   CONCLUSION ......................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Alexander v. Caraustar Indus., Inc.*,
  No. 11-cv-1007, 2011 WL 2550830 (N.D. Ill. June 27, 2011)...............................13

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)........................................................................................11

*Bieneman v. City of Chicago*,
  864 F.2d 463 (7th Cir. 1988) ..........................................................................10

*Boatwright v. Walgreen Co.*,
  10-cv-3902, 2011 ....................................................................................2, 14, 15

*Carnegie v. Household Int'l, Inc.*,
  376 F.3d 656 (7th Cir.2004) ............................................................................12

*Coopers & Lybrand v. Livesay*,
  437 U.S. 463 (1978)........................................................................................14

*Crowder v. Lash*,
  687 F.2d 996 (7th Cir. 1982) .............................................................................6

*Cumis Ins. Soc., Inc. v. Peters*,
  983 F. Supp. 787 (N.D. Ill. 1997) ....................................................................13

*Davis v. Hutchins*,
  321 F.3d 641 (7th Cir. 2003) ...........................................................................14

*Deposit Guar. Nat'l Bank v. Roper*,
  445 U.S. 326 (1980)........................................................................................12

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)..........................................11

*Garza v. Chicago Health Clubs, Inc.*,
  347 F. Supp. 955 (N.D. Ill. 1977) ....................................................................13

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982)........................................................................................13

*Gilbert v. First Alert, Inc.*,
  904 F. Supp. 714 (N.D. Ill. 1995) ......................................................................8

*Gooch v. Life Investors Ins. Co. of America,*
    672 F.3d 402 (6th Cir. 2012) ...........................................................................5

*Gunnells v. Healthplan Servs., Inc.,*
    348 F.3d 417 (4th Cir.2003) *cert. denied after sub. appeal,* 130 S. Ct. 561 (2009)..............5, 7

*Hackett v. BMW of North Am., LLC,*
    No. 10-cv-7731 (N.D. Ill. June 30, 2011) .................................................13

*Heller Financial, Inc. v. Midwhey Powder Co., Inc.,*
    883 F.2d 1286 (7th Cir. 1989) .....................................................................2, 13

*In re 2TheMart.com, Inc. Sec. Litig.,*
    114 F. Supp. 2d 955 (C.D. Cal. 2000) .......................................................14

*In re American Exp. Merchants' Litigation,*
    667 F.3d 204 (2d. Cir. 2012)......................................................................11

*In re Behr Dayton Thermal Products, LLC Litig.,*
    No. 3:08-CV-326, 2012 WL 559913 (S.D. Ohio Feb 21, 2012) ..............7

*In re Light Cigarettes Marketing Sales Practices Litigation,*
    271 F.R.D. 402 (D. Me. 2010)....................................................................7

*In re Sony PS3 Other OS Litig.,*
    No. C 10-1811 RS, 2011 WL 672637 (N.D. Cal. Feb. 17, 2011).............15

*In re Teflon Products Liability Litigation,*
    254 F.R.D. 354 (S.D. Iowa 2008)..............................................................10

*In re Universal Serv. Fund Telephone Billing Practices Litig.,*
    219 F.R.D. 661 (D. Kan. 2004)...............................................................8, 9

*Katz v. Gerardi,*
    655 F.3d 1212 (10th Cir. 2011) ...............................................................4, 5

*Korman v. Walking Co.,*
    503 F. Supp. 2d 755 (E.D. Pa. 2007) .......................................................15

*Lyons v. Coxcom, Inc.,*
    718 F. Supp. 2d 1232 (S.D. Cal. 2009)....................................................15

*Mace v. Van Ru Credit Corp.,*
    109 F.3d 338 (7th Cir.1997) .....................................................................12

*Macon on Behalf of Griffin v. Sullivan,*
    929 F.2d 1524 (11th Cir.1991) ...................................................................5

*Magnavox Co. v. APF Electronics, Inc.*,
  496 F. Supp. 29 (N.D. Ill. 1980) ..........................................................................13

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
  256 F.R.D. 586 (N.D. Ill. 2009) ...........................................................................6

*Marshall v. Kirkland*,
  602 F.2d 1282 (8th Cir.1979) ..............................................................................5

*Martin v. Ford Motor Co.*,
  No. 10-2203, 2011 WL 570021 (E.D. Pa. Feb. 15, 2011) .....................................15

*Mercantile Nat. Bank v. Langdeau*,
  371 U.S. 555 (1963) .............................................................................................14

*Nelson v. Henson*,
  No. 09-cv-361 (S.D. Ill. March 3, 2011) .............................................................13

*Romano v. Motorola, Inc.*,
  No. 07-Civ-60517, 2007 WL 4199781 (S.D. Fla. Nov. 26, 2007) .........................15

*Saltz v. Pella Corp.*,
  257 F.R.D. 471 (N.D. Ill. 2009) (cited by WOW, R.140, at 10-11).........................7

*Simmons v. John F. Kennedy Medical Center*,
  727 F. Supp. 440 (N.D. Ill. 1992) ........................................................................12

*Tektel, Inc. v. Maier*,
  813 F. Supp. 1331 (N.D. Ill. 1992) .............................................................12, 13, 14

*Thompson v. American Tobacco Co., Inc.*,
  189 F.R.D. 544 (D. Minn. 1999) .......................................................................9, 10

*Vakharia v. Little Co. of Mary Hosp. & Health Care Centers*,
  2 F.Supp.2d 1028 (N.D. Ill. 1998) ......................................................................12

*Valentine v. NebuAd*,
  No. 3:08-cv-05113 (THE) (N.D. Cal.)....................................................................3

*Valentine v. WOW*,
  No. 09 CV 07653, 2010 U.S. Dist. LEXIS 90566 (N.D. Ill. Sept. 1, 2010)............3

## FEDERAL STATUTES

ECPA ...................................................................................................... passim

## RULES

Fed. R. Civ. Pro. 23 ..........................................................................................2, 14

Fed. R. Civ. Pro. 23(b)(3) ..........................................................................................7

Fed. R. Civ. Pro. 23(c)(1) ........................................................................................14

Fed. R. Civ. Pro. 23(c)(2) ..........................................................................................7

Fed. R. Civ. Pro. 23(c)(2)(B) ......................................................................................7

Fed. R. Civ. Pro. 23(d)(1)(D).............................................................................14, 15

Fed. R. Civ. Pro. 23(e) ...............................................................................................7

Fed. R. Civ. Pro. 12(f) ........................................................................................12, 13

Illinois. R. 135 ............................................................................................................3

## OTHER AUTHORITIES

18 Moore's Federal Practice § 131.40[3][e][iii] (2002).............................................5, 6

18A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and
  Procedure* § 4455 (2d ed. 1996) ............................................................................5

Wright & Miller, 18A Federal Practice & Procedure Jurisdiction § 4406 (2d ed. 2011)...............5

## INTRODUCTION

WOW's craftily drafted arbitration clause attacks the class action device on two fronts. Now that it has succeeded in enforcing its mandatory arbitration clause, which bans class arbitrations, with respect to six of Plaintiffs' seven claims, WOW seeks to preclude Plaintiffs from pursuing their sole remaining ECPA claim, which is explicitly exempted from the arbitration clause, on a class basis in this Court.

WOW moves to strike the class allegations in Plaintiffs' Second Amended Complaint on the grounds that Plaintiffs' "decision not to pursue all claims and the possible res judicata effect of any resolution in this case, the named Plaintiffs have interests antagonistic to the class." R.140, at 5. But it was WOW that "split" or carved out the ECPA claim from its mandatory arbitration clause.

WOW cannot have its cake and eat it, too. If the Court were to accept WOW's arguments, there will never be any class resolution or class judgment in this case or in any case where a defendant's mandatory arbitration clause bans class actions and expressly carves out federal statutory claims, as WOW's Terms and Conditions of Service ("Terms of Service") does here. Putative class members would effectively be forced to pursue some of their claims in arbitration and then bring individual suits for ECPA in a court of law. Given the small value of their claims and the complex and surreptitious nature of WOW's privacy violations, this would lead to a deprivation of federal statutory rights for hundreds of thousands of WOW subscribers.

Further, WOW's arguments with respect to claims splitting lack merit. Claim splitting does not apply here. Claim splitting is not a *res judicata* rule *per se*; rather, the rule allows courts to manage their dockets and avoid duplicative, wasteful litigation of the same issues and operative facts. Here, by the terms of WOW's mandatory arbitration clause, Plaintiffs and

absent class members cannot pursue their arbitrable claims in a court of law. Second, as discussed below, class actions are the exception to the rule against claim splitting. To the extent there is a class resolution or judgment in this case, absent class members will be given notice and afforded an opportunity to exclude themselves from the litigation. WOW fails to explain how absent class members will be prejudiced on Plaintiffs' remaining ECPA claim (in the event that such claim were certified as a class) given their rights to exercise an opt-out right. WOW also fails to explain why absent class members would be bound by claim preclusion as to the voluntarily dismissed claims, given that the voluntarily dismissed counts were never certified as a class under Rule 23 (and thus the ECPA class members (if eventually certified) would not be parties in the case when the other claims were dismissed).

Finally, Defendant ignores the large body of case law that disfavors motions to strike generally (*e.g., Heller Financial, Inc. v. Midwhey Powder Co., Inc*., 883 F.2d 1286, 1294 (7th Cir. 1989), and motions to strike class allegations specifically (*e.g., Boatwright v. Walgreen Co.*, 10-cv-3902, 2011 LEXIS 22102 (N.D. Ill. March 4, 2011)). As these cases explain, the Court should deny Defendant's motion because Plaintiff has not yet had the opportunity to conduct class discovery or formally move for class certification.

Accordingly, Plaintiffs respectfully request that the Court deny WOW's motion to strike Plaintiffs' class allegations.

## PROCEDURAL HISTORY AND RELEVANT FACTS

WideOpen West ("WOW" or "Defendant") provides cable, telephone, and cable broadband Internet services in several states, including Illinois. R. 135 at ¶ 1. WOW provided Internet services to approximately 330,000 customer accounts, including Plaintiffs Dan Valentine and Brand Bobosky. *Id.* at ¶ 15.

In *Valentine v. NebuAd*, No. 3:08-cv-05113 (THE) (N.D. Cal.), Plaintiff Dan Valentine and others brought a suit against NebuAd and a number of ISP clients, including WOW, for violating a variety of federal and state laws. WOW, together with another ISP, moved to dismiss the complaint against them on jurisdictional grounds. The California Court dismissed the claims against WOW and the other ISP defendants for lack of personal jurisdiction. Plaintiff Dan Valentine re-filed the action against WOW in this Court in December 2009 on behalf of himself and all other WOW customers whose Internet traffic was diverted by WOW through the NebuAd device. R. 1. Plaintiff Dan Valentine asserted seven claims on behalf of himself and others similarly situated. R. 1.

In February 2010, WOW moved to dismiss the complaint. In September 2010, Judge Shadur denied WOW's motion to dismiss, without prejudice, pending limited discovery on certain technology issues. *See Valentine v. WOW*, No. 09 CV 07653, 2010 U.S. Dist. LEXIS 90566 (N.D. Ill. Sept. 1, 2010).

On April 25, 2011, WOW filed a third motion to dismiss, the second in Illinois, Plaintiff's complaint. R. 59. WOW also moved to compel arbitration of six of Plaintiff Dan Valentine's claims, and to stay the one remaining ECPA claim that is explicitly exempted from the arbitration provision. R. 69. WOW also filed a second motion to strike Plaintiff's class allegations. R. 74.

3

On March 26, 2012, the Court granted WOW's motion to enforce arbitration of the non-ECPA claims (notwithstanding the class action waiver contained in the arbitration clause). R.123. The Court also stayed the ECPA claim pending resolution or the remaining six arbitrable claims and held that WOW's motion to strike the class allegations was moot. R.123.

Plaintiff elected to forgo the arbitrable claims and to pursue their ECPA claim on a class basis. The Court construed this Plaintiff's election to forgo his arbitrable claims as a voluntary dismissal without prejudice. R. 126; R. 127. Plaintiffs filed their Second Amended Class Action Complaint, which added W. Brand Bobosky as a named plaintiff and streamlined the Complaint by removing allegations pertaining to the arbitrable claims and refining allegations pertaining to Plaintiffs' ECPA claim. R.135. WOW filed a third motion to dismiss and the instant motion to strike the class allegations. R. 136; R.139

## ARGUMENT

## I.    THE RULE AGAINST CLAIM SPLITTING DOES NOT APPLY

By the express terms of WOW's arbitration clause, Plaintiffs cannot arbitrate their ECPA claims; they must pursue these claims in a court of law. Yet WOW insists that Plaintiffs have "split" their claims by forgoing the arbitrable claims and pursuing the ECPA claim in this Court.

The rule against claim splitting does not apply here. "The rule against claim splitting requires a plaintiff to assert all of its causes of action arising from a common set of facts in one lawsuit." *Katz v. Gerardi*, 655 F.3d 1212, 1218 (10th Cir. 2011). "By spreading claims around in multiple lawsuits in other courts or before other judges, parties waste scarce judicial resources and undermine the efficient and comprehensive disposition of cases." *Id.* (internal citations and quotations omitted). Here, there is no danger that scarce judicial resources will be wasted

because the abandoned claims cannot (per WOW's arbitration clause) be pursued in a subsequent litigation in any state or federal court.

The rule against claims splitting is not a *res judicata* rule *per se*; it is a rule that allows courts to manage their dockets and avoid duplicative litigation. *See id.* at 1218 ("To be sure, claim splitting and *res judicata* both serve the same interests of promoting judicial economy and shielding parties from vexatious concurrent or duplicative litigation. But claim splitting is more concerned with the district court's comprehensive management of its docket, whereas res judicata focuses on protecting the finality of judgments") (citing Wright & Miller, 18A Federal Practice & Procedure Jurisdiction § 4406 (2d ed. 2011) (considering it an "exaggeration" to describe claim splitting as an aspect of res judicata)).

## II. CLASS ACTIONS ARE THE EXCEPTION TO THE RULE AGAINST CLAIM SPLITTING

Class actions are a recognized exception to the rule against claim splitting. *Gooch v. Life Investors Ins. Co. of America*, 672 F.3d 402, 429, n. 16, (6th Cir. 2012) (citing *Gunnells v. Healthplan Servs., Inc.,* 348 F.3d 417, 432 (4th Cir.2003) (rejecting claim splitting argument in context of Rule 23(b)(3) class) *cert. denied after sub. appeal* 130 S. Ct. 561 (2009) (quoting 18 Moore's Federal Practice § 131.40[3][e][iii] (2002)).

"Pursuant to the same general principle that claim preclusion does not apply to matters that could not be advanced in a prior action, individual actions remain available to pursue any other questions that were expressly excluded from the class action." *Gooch*, 672 F.3d at 429, n. 16 (citing 18A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 4455 (2d ed. 1996) (citing *Macon on Behalf of Griffin v. Sullivan,* 929 F.2d 1524, 1530–31 (11th Cir.1991) and *Marshall v. Kirkland,* 602 F.2d 1282, 1295–98 (8th Cir.1979)).

The Seventh Circuit and courts in this district have recognized this exception. *See Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 256 F.R.D. 586, 597-598 (N.D. Ill. 2009) (noting that the doctrine of claim splitting generally does not apply to class actions). In *Makor*, the court recognized noted that "the special nature of class actions—representation in absentia and often without notice—requires this exception:"

> Generally, the request for certification as a class action and the order approving such certification will determine the nature of the claims subject to class treatment, and the resultant judgment will be limited to those claims ... Thus, a class action can be thought of as an action in a court of limited jurisdiction in which only certain claims and certain forms of relief are available. This type of action, of course, is one of the recognized exceptions to the rule against claim splitting.

*Id*. at 597 (citing 18 Moore's Federal Practice § 131.40[3][e][iii] (2002)).

The *Makor* court noted that the Seventh Circuit's decision in *Crowder v. Lash,* 687 F.2d 996, 1008 (7th Cir. 1982) signals that this Circuit recognizes such an exception. Makor, 256 F.R.D. at 597. In *Crowder*, the Seventh Circuit refused to find prisoners' individual damages claims barred by res judicata arising from a previous class action brought against the same defendants and seeking equitable relief. *Id.* "[I]t would be a harsh and improper application of res judicata to hold, on the basis of the notice sent out in (a previous class action suit) that prisoners forfeited their rights to personal redress for lack of knowledge that federal law...required that injunctive and monetary relief be sought in one action." *Id.* (citation omitted).

WOW ignores this general exception for class actions.

## III.    IF THE ECPA CLAIM IS ULTIMATELY CERTIFIED, ANY RISKS OF *RES JUDICATA* WOULD BE MITIGATED BY NOTICE AND AN OPT OUT OPPORUNITY

Presently, unnamed class members are not bound by Plaintiffs' voluntary dismissal of their non-ECPA claims. Therefore, nothing prevents these individuals from pursuing their non-ECPA claims in a mandatory arbitration proceeding.   However, because WOW's arbitration

clause contains an enforceable class action waiver, such individuals cannot pursue their any of their claims in a class arbitration. Their only chance of obtaining the benefits of a class action as an absent class member are in the instant action.

In the event that an ECPA claim is certified under Rule 23 (b)(3), absent class members will receive notice and will be afforded an opportunity to opt out of the litigation. Fed. R. Civ. Pro. 23(b)(3) and (c)(2)(B); *see also*, Fed. R. Civ. Pro. 23(e) (courts must direct notice to all class members who would be bound by a proposed settlement under Rule 23(b)(3) and approve proposed settlement only after a hearing and on finding that it is fair, reasonable, and adequate, and permitting a court to refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so).

In other words, if Plaintiffs' ECPA were ultimately certified after a motion for class certification or for settlement purposes, absent class members would have the opportunity to request exclusion from the litigation and to pursue their ECPA claims individually and/or their pursue their remaining claims a mandatory arbitration proceeding.

It is axiomatic that "the opportunity to opt out as required by Federal Rules of Civil Procedure 23(b)(3) and (c)(2)(B) solves any *res judicata* problem." *Saltz v. Pella Corp*., 257 F.R.D. 471 (N.D. Ill. 2009) (cited by WOW, R.140, at 10-11); *see also*, *In re Light Cigarettes Marketing Sales Practices Litigation*, 271 F.R.D. 402, 415 (D. Me. 2010) (Rule 23(c)(2)'s notice and opt-out procedure softens the impact of *res judicata* on these proceedings); *Gunnells,* 348 F.3d at 432 (Rule 23(c)(2) mitigates the effect of claim splitting resulting from class certification); *In re Behr Dayton Thermal Products, LLC Litig*., No. 3:08-CV-326, 2012 WL 559913, at *3-4 (S.D. Ohio Feb 21, 2012) (court permitted named plaintiff in putative class

7

action to voluntarily dismiss claims and noted that "in the context of class actions, [d]efendants' arguments concerning "claim splitting" appear to be largely unfounded"). WOW's assertion that "*all* class members would be bound by Plaintiffs' decision to split or abandon claims" (R.140 at 3) (emphasis added), is simply incorrect and ignores class action principles.

## IV.    PLAINTIFFS CAN ADEQUATELY REPRESENT THE ECPA CLASS.

As shown above, Plaintiffs can adequately represent the proposed class because their interests coincide with those of the rest of the absent class members. *See Gilbert v. First Alert, Inc.*, 904 F. Supp. 714, 719 (N.D. Ill. 1995) ("In order to satisfy the adequacy of representation prong of 23(a)(4), "the interests of the class representative must coincide with those of the rest of the class and the class representative…"). Like absent class members, Plaintiffs' purportedly "split" or abandoned claims cannot be pursued in class arbitration.[1]   The ECPA claim, which is expressly carved out of WOW's arbitration clause, is a strong, certifiable claim that allows for actual, statutory, and punitive damages, injunctive and declaratory relief, and attorneys' fees and costs.  The relief that absent class members might obtain by pursuing their ECPA claim in this Court on as class basis far exceeds that which they would receive by pursing the arbitrable claims.  Thus, Plaintiffs' interests are aligned with the interests of the putative class.

WOW's reliance on *In re Universal Serv. Fund Telephone Billing Practices Litig.*, 219 F.R.D. 661 (D. Kan. 2004) (R.140 at 10) is misplaced.  There, the court held that the named plaintiffs' decision to abandon a fraud claim appeared to be a choice that advanced the named

---

[1]     WOW asserts that "the clock on the abandoned claims of absent class members continue to run, which presents statutes of limitations concerns." R.140, at 7.  Again, there is nothing precluding these individuals from arbitrating their non-ECPA claims under WOW's Terms of Service. WOW's assertion is misleading insofar as it suggests that, at this juncture—after WOW has succeeded in enforcing its arbitration clause—that Plaintiffs can toll the statute of limitations on absent class members' arbitrable claims.  Because these claims cannot be pursued in class arbitration, Plaintiffs' decision to forgo them has no effect on the statute of limitations for absent class members.

plaintiffs' interests as wells as the interests of absent class members, and therefore, the court was

not persuaded that any impermissible conflict existed. The court held that:

> This is not a case where the class representatives are pursuing relatively
> insignificant claims while jeopardizing the ability of class members to pursue far
> more substantial, meaningful claims. Rather, here the named plaintiffs simply
> decided to pursue certain claims while abandoning a fraud claim that probably
> was not certifiable… While the court can certainly appreciate the fact that a
> named plaintiff's failure to assert certain claims of the absent class members
> might give rise to a conflict of interest when the named plaintiff is advancing his
> or her own interests at the expense of the class, the mere fact that a named
> plaintiff elects not to pursue one particular claim does not necessarily create such
> a conflict.  Here, the named plaintiffs' decision to abandon the fraud claim appears
> to have been a choice that advances the named plaintiffs' interests as well as the
> interests of the absent class members, and therefore the court is unpersuaded that
> any impermissible conflict of interest exists.

*Id.* at 669-670 (internal citations omitted).  Likewise, here, the named plaintiffs' decision to

voluntarily dismissed the arbitrable claims advances the named plaintiffs' interests as well as the

interests of absent class members because the remaining ECPA claim is the stronger, certifiable

claims for monetary damages and injunctive relief, attorneys' fees and costs. [2]

WOW cites *Thompson v. American Tobacco Co., Inc.*, 189 F.R.D. 544 (D. Minn. 1999)

(cited by WOW at R.140, at 10), a case where potential class plaintiffs in a tobacco litigation

alleging industry-wide fraud were found to offer inadequate representation when they reserved

the issue of personal injury and damages to make class certification more likely and sought only

the relief of cessation and medical monitoring. *Id.* at 551.  There, the court was concerned that,

by so limiting the class's claims, the class representatives had potentially jeopardized class

---

[2]      The court in *In re Universal Serv. Fund Telephone Billing Practices Litig.* acknowledged
that "[c]ase law…exists to support the proposition that class certification should be denied on the
basis that class representatives are inadequate when they opt to pursue certain claims on a class-
wide basis while jeopardizing the class members' ability to subsequently pursue other claims."
219 F.R.D. at 668.  However, the court noted that this line of cases was "distinguishable from the
case at bar, in that they involved actions where the class representatives had left aside the far
stronger claims for monetary damages and sought to have the weaker claims certified, for
dubious strategic purposes." *Id.* at 669.

members' rights to bring subsequent personal injury and damages claims and characterized the potential prejudice as too great for the named plaintiffs' interests to be aligned with those of other class members. *Id.*

In contrast, here, because personal injury claims do not arise out of WOW's conduct, and by pursuing ECPA, Plaintiffs have preserved the ability of absent class members to obtain both injunctive and monetary relief in a class resolution or judgment, there is little or no risk of prejudice to absent class members.

*In re Teflon Products Liability Litigation*, 254 F.R.D. 354, 366 (S.D. Iowa 2008), cited by WOW (R.140, at 7), is distinguishable for the same reasons. There, by abandoning their original claims for medical monitoring and expressly disavowing their current claim for personal injury, the named plaintiffs risked a future waiver not only of their own personal injury and medical monitoring claims, but also those of absent class members. *Id.* at 367. Here, by contrast, there is no risk of waiving significant personal injury or medical monitoring claims in favor of less significant monetary claims.

At any rate, none of the cases cited by WOW involve the unique situation presented in the case at bar where the abandoned or purportedly "split" claims are subject to an enforceable mandatory arbitration clause containing a class action waiver contained in the Defendant's Terms of Service.[3] Here, the non-ECPA claims are not and can never be "class claims" under the terms of WOW's arbitration clause. There is no reason that the ECPA claim should suffer

---

[3]     The Seventh Circuit's adequacy finding in *Bieneman v. City of Chicago*, 864 F.2d 463 (7th Cir. 1988), cited by WOW (R.140, at 10), did not involve any discussion of a risk of claim preclusion of absent class members' claims. Unlike *Bieneman,* where some putative class members "undoubtedly" benefited from the alleged wrongful conduct such that they likely would have opposed the class action (*id*. at 465), here, any recovery to Plaintiffs from WOW would not adversely affect the economic interests of any member of the putative class.

the same fate, *i.e.*, become a non-certifiable claim because of WOW's artful drafting of its arbitration clause to deny hundreds of thousands of class members their statutory rights under ECPA and to use the class action device to obtain relief under such claim.

Plaintiffs urge the Court not to exercise its pure discretion to declare them inadequate class representatives, but rather allow Plaintiffs to move for class certification and demonstrate their adequacy at the appropriate time. Accordingly, Plaintiffs request that the Court deny Defendant's motion to strike the class allegations.

## V.     PUBLIC POLICY CONSIDERATIONS SUPPORT DENIAL OF WOW'S MOTION TO STRIKE

Public policy considerations support denial of WOW's motion to strike the class allegations. WOW, as a function of its craftily drafted arbitration clause, attempts to deprive a class comprised of hundreds of thousands of individuals of their ability to vindicate their statutory rights under ECPA in a class action. Yet, when they subscribed to WOW's services, WOW's customers were not apprised that they would be giving up such rights.

It is a "well-settled rule that class action lawsuits are suitable as a vehicle for vindicating statutory rights." *In re American Exp. Merchants' Litigation*, 667 F.3d 204, 214 (2d. Cir. 2012). The Supreme Court has recognized that the class action device is the only economically rational alternative when a large group of individuals or entities has suffered an alleged wrong, but the damages due to any single individual or entity are too small to justify bringing an individual action. *Id*. (citing *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 161, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)). "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 617 (1997)

(quoting *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (7th Cir.1997)); *see also Deposit Guar. Nat'l Bank v. Roper,* 445 U.S. 326, 338 (1980) ( "[A class action] may motivate [plaintiffs] to bring cases that for economic reasons might not be brought otherwise ... [, thereby] vindicating the rights of individuals who otherwise might not consider it worth the candle to embark on litigation in which the optimum result might be more than consumed by the cost.") (footnote omitted); *Carnegie v. Household Int'l, Inc.,* 376 F.3d 656, 661 (7th Cir.2004) ("[T]he realistic alternative to a class action is not 17 million individual suits, but zero individual suits...") (emphasis omitted)).

The purported claim splitting issue raised by WOW is largely an issue that WOW created through its arbitration clause that explicitly carves out ECPA claims and requires such claims to be brought in court, while other claims that share a set of operative facts, be subject to mandatory arbitration that where class arbitration is prohibited. WOW should not be able to achieve a "global" class action ban.

## VI.  MOTIONS TO STRIKE ARE DISFAVORED

As a threshold matter—and before examining the merits of WOW motion to strike— courts in this district and circuit generally disfavor any kind of motion to strike. "Generally, motions to strike are disfavored because they are considered drastic remedies." *Vakharia v. Little Co. of Mary Hosp. & Health Care Centers,* 2 F.Supp.2d 1028, 1033 (N.D. Ill. 1998). "Motions to strike under Federal Rule 12(f) are not favored, and are usually denied unless the language in the pleading has no possible relation to the controversy and is clearly prejudicial." *Tektel, Inc. v. Maier*, 813 F. Supp. 1331, 1334 (N.D. Ill. 1992) (internal quotations omitted) (citing *Simmons v. John F. Kennedy Medical Center*, 727 F. Supp. 440, 442 (N.D. Ill. 1992),

*Garza v. Chicago Health Clubs, Inc.*, 347 F. Supp. 955, 962 (N.D. Ill. 1977), and *Magnavox Co. v. APF Electronics, Inc.*, 496 F. Supp. 29, 35 (N.D. Ill. 1980)).

Many courts have held in accordance with *Tektel*. *See e.g.*, *Alexander v. Caraustar Indus., Inc.*, No. 11-cv-1007, 2011 WL 2550830 (N.D. Ill. June 27, 2011) (holding "[m]otions to strike are generally disfavored[]" and denying motion to strike class allegations) (citing *Heller*, 883 F.2d at 1294); *Nelson v. Henson*, No. 09-cv-361 (S.D. Ill. March 3, 2011) ("Motions to strike . . . will be denied unless the portion of the pleading at issue is prejudicial.").

In the instant matter, the class allegations demonstrate more than a "possible relation to the controversy" and are not "clearly prejudicial." The court in *Nelson* explains that "[p]rejudice results, for instance, where the challenged allegation has the effect of confusing the issues or is so lengthy and complex that it places an undue burden on the responding party." *Nelson*, No. 09-cv-361 (citing *Cumis Ins. Soc., Inc. v. Peters*, 983 F. Supp. 787, 798 (N.D. Ill. 1997)). Notably, WOW does not argue that Plaintiffs' class allegations are prejudicial in any way. Defendant does not, and cannot, argue that that the class allegations it seeks to strike confuse the issues or place an undue burden on it.

Thus, as a general matter, as interpreted in this district and sister districts, Rule 12(f) does not provide an appropriate basis to strike Plaintiffs' class allegations.

## VII.     STRIKING CLASS ALLEGATIONS PRIOR TO DISCOVERY IS USUALLY INAPPROPRIATE AND WOW'S MOTION IS PREMATURE.

Not only are motions to strike generally disfavored, but motions to strike class allegations brought before the completion of class discovery are even more strongly disfavored. *Hackett v. BMW of North Am., LLC*, No. 10-cv-7731 (N.D. Ill. June 30, 2011). The reason for this disfavor is that "class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Gen. Tel. Co. of Sw. v. Falcon*, 457

U.S. 147, 160 (1982) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978) and

*Mercantile Nat. Bank v. Langdeau*, 371 U.S. 555, 558 (1963)).

Here, the parties have not yet even begun class discovery let alone completed it. Thus, "it

is premature to determine whether this suit can proceed as a class action. At this procedural stage,

the Court is not equipped with the information needed to conduct the rigorous analysis required

to determine whether Rule 23's requirements have been satisfied." *Boatwright v. Walgreen Co.*,

10-cv-3902, 2011 LEXIS 22102 (N.D. Ill. March 4, 2011) (citing *Davis v. Hutchins*, 321 F.3d

641, 649 (7th Cir. 2003)). Furthermore, "[a] formal class certification determination plays an

important role in assuring adequate protection to the absent class members." 7B Wright *et al.*,

Federal Practice and Procedure § 1785 (3d ed. 1998).

The touchstone in determining any motion to strike is preventing prejudice. *See Tektel,*

*Inc.*, 813 F. Supp. at 1334. Here, granting WOW's motion to strike would surely prejudice

Plaintiffs and the absent class members because Plaintiffs have not yet had the opportunity to

conduct discovery and present a thorough class certification motion that would allow the Court

to conduct the thorough and "rigorous analysis" required. "If there is *any doubt* as to whether the

allegations might be an issue in the action, courts will deny the motion." *In re 2TheMart.com,*

*Inc. Sec. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000) (emphasis in original).

There looms another issue blocking Defendant's path to strike Plaintiffs' class

allegations: the portions of Rule 23 on which it relies—Rules 23(c)(1) and 23(d)(1)(D)—do not

actually provide a basis for striking class allegations at this procedural posture. *Boatwright*, No.

10-cv-3902 ("[c]ontrary to what [Defendant] asserts, Rule 23(d)(1)(D) does not provide the

Court with a basis to strike class allegations at this procedural stage").

> Moreover, [Defendant's] reliance on Rule 23(d)(1)(D) as a vehicle
> to strike class allegations is misplaced. . . . [T]his Rule can only be

> used once the issue of class certification has been properly
> presented and decided by a court. Because Plaintiffs have not
> moved for class certification, the issue has not been properly
> placed before the Court. Put succinctly, Rule 23(d)(1(D) is useless
> to [Defendant] at this point.

*Id*. The court in *Boatwright* goes on to list no fewer than four cases from various district courts

that came to the same conclusion. *Id*. (citing *In re Sony PS3 Other OS Litig*., No. C 10-1811 RS,

2011 WL 672637, at *6 (N.D. Cal. Feb. 17, 2011); *Martin v. Ford Motor Co.*, No. 10-2203, 2011

WL 570021, at *6-7 (E.D. Pa. Feb. 15, 2011); *Lyons v. Coxcom, Inc*., 718 F. Supp. 2d 1232,

1236 (S.D. Cal. 2009); *Romano v. Motorola, Inc.*, No. 07-Civ-60517, 2007 WL 4199781, at *3

(S.D. Fla. Nov. 26, 2007)).

The ruling in *Boatwright* also finds support in *Korman v. Walking Co.*, 503 F. Supp. 2d

755, 762 (E.D. Pa. 2007), in which the court held that "motions to strike class allegations are

premature and [] the proper avenue is to oppose the plaintiff's motion for class certification."

Ultimately, Defendant's motion to strike Plaintiffs' class allegations lacks support from

the courts in this district, this circuit, the Supreme Court, and sister district courts across the

nation. This case's current procedural posture simply does not present the appropriate time to

entertain Defendant's position. Furthermore, Defendant's chosen vehicle—a motion to strike—is

not even the appropriate means to accomplish its goal of convincing the Court to deny class

certification. As many other courts have ruled, the Court may not properly determine class

certification until after the parties have concluded class discovery and the parties have fully

briefed a motion by Plaintiffs to certify the class. Accordingly, Plaintiffs request that the Court

deny Defendant's motion to strike Plaintiffs' class allegations.

## VIII.   CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court deny Defendant's motion to

strike Plaintiffs' class allegations in full.

15

Dated: July 6, 2012

Respectfully submitted,

KamberLaw, LLC

By:    <u>s/David A. Stampley</u>
David A. Stampley (pro hac vice)
100 Wall Street, 23rd Floor
New York, New York 10005
Telephone:    (212) 920-3071
Facsimile:    (212) 202-6364
dstampley@kamberlaw.com
Attorneys for Plaintiffs

MICHAEL J. ASCHENBRENER
ASCHENBRENER LAW, P.C.
Michael Aschenbrener (SBN 6292306)
10 S Riverside Plaza, Suite 1800
Chicago, IL 60606
Telephone:    (312) 462-4922
Facsimile:    (312) 462-4923
mja@aschenbrenerlaw.com

SCOTT A. KAMBER (pro hac vice)
skamber@kamberlaw.com
KAMBERLAW, LLC
100 Wall Street, 23rd Floor
New York, New York 10005
Telephone:    (212) 920-3072
Facsimile:    (212) 202-6364

GRACE E. TERSIGNI (pro hac vice)
gtersigni@kamberlaw.com
KAMBERLAW, LLC
100 Wall Street, 23rd Floor
New York, New York 10005
Telephone:    (212) 920-3072
Facsimile:    (212) 202-6364

JOSEPH H. MALLEY
malleylaw@gmail.com
LAW OFFICE OF JOSEPH H. MALLEY, P.C.
1045 North Zang Boulevard
Dallas, Texas 75208

16

Telephone:     (214) 943-6100
Facsimile:     (214) 943-6170

BRIAN J. PANISH
panish@psblaw.com
RAHUL RAVIPUDI
ravipudi@psblaw.com
PANISH, SHEA & BOYLE, LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
Telephone:     (310) 477-1700
Facsimile:     (310) 477-1699

I hereby certify that, on July 6, 2012, I electronically filed with the Clerk of the Court the

foregoing document using the CM/ECF system which will send notification of such filing to the

following attorneys for the Defendant and their e-mail addresses on file with the Court:

Giselle Perez de Donado
Paul Hastings LLP
191 North Wacker Drive, 30th Floor
Chicago, IL 60606
(312) 499-6000
giselleperez@paulhastings.com

Kenneth W. Gage
Paul Hastings LLP
191 North Wacker Drive, 30th Floor
Chicago, IL 60606
(312) 499-6046
kennethgage@paulhastings.com

Thomas A. Counts
Paul Hastings LLP
55 Second Street, 24th Floor
San Francisco, CA 94105
(415) 856-7070
tomcounts@paulhastings.com

Ryan C. Nier
Paul Hastings LLP
55 Second Street, 24th Floor
San Francisco, CA 94105
(415) 856-7000
ryannier@paulhastings.com

Kelly Ann Demarchis
Paul Hastings LLP
875 15th Street NW
Washington, DC 20005
(202) 551-1700
kellydemarchis@paulhastings.com

s/David A. Stampley
David A. Stampley