**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**


|  |  |  |
|---|---|---|
| DAN VALENTINE, *et al.*, | ) | |
| | ) | |
| | ) | No. 09 C 7653 |
| Plaintiffs, | ) | |
| | ) | The Hon. Edmond E. Chang |
| v. | ) | |
| | ) | |
| WIDEOPEN WEST FINANCE, LLC, | ) | |
| | ) | |
| Defendant. | ) | |


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S THIRD MOTION TO DISMISS**

## TABLE OF CONTENTS

I. INTRODUCTION ...........................................................................................................1

II. PROCEDURAL HISTORY ........................................................................................1

III. FACTUAL BACKGROUND .....................................................................................3

ARGUMENT ...................................................................................................................6

IV. STANDARD OF REVIEW ........................................................................................6

V. PLAINTIFFS SUFFICIENTLY ALLEGE AN ECPA CLAIM .............................6

VI. PLAINTIFFS SUFFICIENTLY ALLEGE THEY DID NOT CONSENT TO
INTERCEPTION...........................................................................................................9

    A. Plaintiffs Sufficiently Allege WOW Lacked Consent for its Interception...........9

    B. WOW's Letter Commentary of Purported Notice Summaries
    is Irrelevant, Inauthentic, and Unfit for Consideration ......................................10

    C. WOW's Citations to the Exhibit at 60-1 Should Be Stricken .............................14

CONCLUSION ...............................................................................................................15

## I. INTRODUCTION

Dan Valentine and W. Brand Bobosky ("Plaintiffs"), on behalf of themselves and all others similarly situated (the "Class" and each a "Class Member"), seeking the relief requested in the Second Amended Class Action Complaint (the "Complaint"), R. 135 ¶ 12, have alleged were customers who obtained Internet services through WOW's electronic communications services, R. 135 ¶¶ 74, 76, and that, without their consent, WOW intentionally intercepted and used their electronic communications and disclosed those communications to a third party, NebuAd, Inc. ("NebuAd"), in violation of 18 U.S.C., Section 2511(1)(a) and (c). R. 135 ¶¶ 86-87, 89. Accepting as true the allegations of fact made by Plaintiffs in their Complaint and drawing reasonable inferences in Plaintiffs' favor, Plaintiffs have sufficiently stated claims that Defendant intercepted, disclosed, and used their Internet communications in violation of 18 U.S.C. § 2510, *et seq.*, causing Plaintiffs and Class Members to be "aggrieved persons" as defined in that statute, R. 135 ¶ 108, and entitling them to the relief afford by that statute.

## II. PROCEDURAL HISTORY

In *Valentine v. NebuAd,* No. 3:08-cv-05113 (THE) (N.D. Cal.), filed November 10, 2008, Plaintiff Dan Valentine and others brought suit against NebuAd and a number of its ISP clients, including WOW. Claims against WOW and the other ISP defendants were dismissed for lack of personal jurisdiction. In December 2009, Mr. Valentine filed this action against defendant WOW. R. 1.[1]

---

[1] Claims originally been brought in California against other ISPs were subsequently filed in those ISPs' respective jurisdictions. In light of WOW's characterization of these actions, R. 135 at 4; Exhibit A, Plaintiffs note as follows in the interest of completeness and accuracy:

- In *Valentine v. NebuAd*, NebuAd answered as to ECPA, Dkt. 97. Its motion to dismiss two California state claims was denied, Dkt. 223, and the matter was settled. Dkt. 251 (Dec. 19, 2011).

- In *Kirch v. Embarq*, No. 10-2047-JAR (D. Kan.), Embarq answered the complaint and did not file a 12(b)(6) motion. The court granted Embarq's summary judgment motion on plaintiffs' ECPA claim,

In February 2010, WOW first moved to dismiss the Complaint (R. 22; R. 23), a motion that the Honorable Milton I. Shadur continued pending mediation efforts. In September 2010, with no agreement to resolve the matter, Judge Shadur denied WOW's motion to dismiss without prejudice pending limited discovery on certain technology issues. R. 42.[2] In January 2011, this matter was transferred to the Honorable Edmond E. Chang, and a status hearing was held. R. 49.

Dkt. 80 (Aug. 19, 2011), and plaintiffs appealed. Plaintiffs' appeal has been fully briefed and no decision has been issued. Appeal No. 11-3275 (10th Cir.).

– One Montana court reviewed ECPA claims in two cases: In *Mortensen v. Bresnan Communications*, No. 10-cv-13-BLG-RFC (D. Mont.), the court granted Bresnan's 12(b)(6) motion as to plaintiff's ECPA claims and denied it as to CFAA and trespass to chattel claims, Dkt. 30 (Dec. 13, 2010). The court denied Bresnan's motion to compel arbitration and Bresnan appealed. Dkt. 50. In *Deering v. CenturyTel*, No. 10-cv-63-BLG-RFC (D. Mont.), the same court relied on its *Mortensen v. Bresnan* holding in granting CenturyTel's motion to dismiss plaintiff's ECPA claim. Dkt. 46 (May 16, 2011).

– *Green v. Cable One*, No. 10-cv-259-RBP (N.D. Al.) was dismissed on standing grounds and *Reaves v. Cable One*, No. 2:11-cv-00469-JAT (D. Ariz.) was dismissed on jurisdictional grounds.

– In *Manard v. Knology*, No. 10-cv-15-CDL (M.D. Ga.), defendant's motion to dismiss, Dkt. 9, was never fully briefed or ruled on by the court, which granted defendant's subsequent motion to compel arbitration, Dkt. 28 (June 18, 2010) and ultimately dismissed the case without prejudice, retaining jurisdiction to enforce arbitration-related issues.

[2] In that order, almost two years ago, Judge Shadur characterized the motives of Plaintiffs' counsel, using his colorful, "pot of gold" phrase, R. 42 at 1, which WOW has seen fit to quote in subsequent motions, including this one. *See* R. 137 at 1. Regardless of whether or not Judge Shadur's phrase has been fitting when he has employed it in other cases, it was not an appropriate characterization in this matter and had no basis in the record. The "pot of gold" that may lie at the end of this litigation rests on a statutory remedy expressly provided by Congress and carved out for adjudication by WOW in its arbitration clause.

KamberLaw's record bears out its merits-based approach, leading one court to comment on the firm's nationally recognized experience in complex litigation in technology and privacy issues and stating, "The attorneys of KamberLaw have made a showing that they possess experience and expertise in the areas of consumer privacy and technology matters and have professionally represented the interests of the Class . . . ." *Lane v. Facebook*, Case No. C 08-3845 RS (N.D. Cal. Mar. 17, 2010), Findings of Fact, Conclusions of Law, and Order Approving Settlement, Dkt. 123 at 4-5, 7.

Over the past three years, KamberLaw has served as class counsel in cases—including *Valentine v. NebuAd*—that have provided over $13 million in *cy pres* awards to promote consumers' online privacy, security, and safety. Recipients have included three graduate-level technology research programs; ten law schools for projects in privacy, technology, and alternative dispute resolution; and more than 25 nonprofit organizations that include: Center for Democracy and Technology; Computers for Youth; Computers, Freedom & Privacy Conference; Electronic Frontier Foundation–Technology Research & Development Program; Electronic Privacy Information Center (EPIC); Free Press–Open Technology Initiative; International Association of Privacy Professionals; Lamb's Farm of Libertyville, Illinois–Safe Internet Surfing Education; National Consumer Law Center; National Network to End Domestic Violence–SafetyNet (Safe & Strategic Technology Project); One Laptop per Child; The Privacy Projects–Data Privacy Day; Privacy Rights ClearingHouse; Public Knowledge–Open Technology Initiative; School on Wheels, Inc.; SeniorNet; and the Telecommunications Policy Research Conference.

In March 2011, Plaintiff's counsel deposed a WOW technical employee, as ordered by the Court. R. 52; R. 54.

On April 25, 2011, Defendant filed a second motion to dismiss Plaintiff's complaint. R. 59-60. WOW also moved to compel arbitration of six of Plaintiff Dan Valentine's claims and to stay the ECPA claims, which was explicitly exempted under WOW's arbitration provision. R. 69. WOW also filed a second motion to strike Plaintiff's class allegations. R. 74. On March 26, 2012, the Court granted WOW's motion to compel arbitration of non-ECPA claims, stayed the ECPA claim pending resolution of the remaining six arbitrable claims, and held WOW's motion to strike class allegations as moot. R.123.

Plaintiff elected to forgo the arbitrable claims and to pursue the ECPA claim on a class basis, which the Court deemed Plaintiff's voluntary dismissal without prejudice of arbitrable claims. R. 126; R. 127. The Second Amended Class Action Complaint was filed, adding W. Brand Bobosky as a named plaintiff, eliminating arbitrable claims, and refining allegations pertaining to Plaintiffs' ECPA claim. R.135. WOW filed the instant motion to dismiss and a motion to strike class allegations. R. 136-139.

### III. FACTUAL BACKGROUND

WOW is an Internet Services Provider (ISP), providing cable broadband Internet services in several states, including Illinois. R. 135 ¶¶ 1, 21. Through its electronic communications network, functioned as a conduit for the Internet communications of its customers, including Plaintiffs and Class Members. R. 135 ¶¶ 9, 21-23. In or about late 2007, WOW entered into an agreement with NebuAd, a company that served individually targeted online advertisements. R. 135 ¶¶ 2, 25.

Under the agreement, WOW licensed and installed Ultra-Transparent Appliances (each an "Appliance") furnished by NebuAd in all of WOW's Internet services network facilities. R.

135 ¶ 26. From in or about late 2007 to in or about early March 2008, WOW reconfigured its network facilities, installing Appliances facility by facility, starting with its Naperville, Illinois network facility (which WOW confirms, *see* R. 137 at 11), which served customers in the Chicago metropolitan area, including Plaintiffs. R. 135 ¶¶ 14, 26, 28-29, 32.

To install the Appliances, WOW reconfigured the network at each facility, inserting the Appliance "in line" in its customer-Internet communications conduit, continuously funneling all customer Internet communications, in their entirety, outbound and inbound, through the Appliance. R. 135 ¶¶ 4, 30, 75-80, 83, 91. These communications, consisting of the entirety of their unfiltered content, included the personal and confidential substance in their web searches and web pages viewed, web-based email (e.g., Gmail, Hotmail); instant messages; encrypted (HTTPS) communications; file downloads; and certain voice-over-Internet-protocol conversations, such as those using Skype. R. 135 ¶¶ 5, 12, 24, 33-39, 40-45. As WOW maintained the flow of customer communications to and through the Appliances it installed in its networks, NebuAd software on the appliance performed analysis of the contents, using processes such as deep packet inspection ("DPI") to extract substantive, communicative content and techniques to ensure persistent, unique identification of each customer through device fingerprinting and code downloaded to customers' computers. R. 135 ¶¶ 6, 100.

In addition to using these processes to facilitate ad-serving, NebuAd used the information about WOW's subscribers for its own, independent purposes, R. 135 ¶ ¶ 93-94. Further, WOW and NebuAd used the intercepted communications, modifying them to affect the privacy and security controls on Plaintiffs' and Class Members' computers so WOW and NebuAd could continue intercepting and using communications. R. 135 ¶ 99-100. WOW also engaged in device fingerprinting of Plaintiffs and Class Members' computers. R. 135 ¶ 100.

WOW's actions—in installing and operating the Appliance and in diverting communications to the Appliance and, ultimately, to NebuAd—were intentional; they were undertaken in performance of and in fulfillment of the purpose of its agreement with NebuAd and WOW was paid by NebuAd for that performance. R. 135 ¶¶ 46, 48, 89-90, 92. WOW and NebuAd worked together to achieve these results, each playing an ongoing, active part under their agreement. R. 135 ¶¶ 31, 95-97, 101. NebuAd agreed to pay WOW monthly, per customer, for WOW's disclosure of communications to NebuAd for this ongoing access to WOW's customers' Internet communications. R. 135 ¶¶ 7, 27.

Neither WOW nor NebuAd was an originator or recipient of Plaintiffs' and Class Members' Internet communications. R. 135 ¶¶ 8, 84-85. WOW had no business engaging in this interception and disclosure, which was not what Plaintiffs and Class Members could reasonably have expected from the provider of their pipeline to the Internet, R. 135 ¶¶ 9, 50-53, 81-82, nor did WOW at any time provide notice of the nature and scope of its unorthodox and conscience-shocking diversion, disclosure, and use of their communications, R. 135 ¶¶ 54-57, 59, 96, 102-106, nor did Plaintiffs or Class Members consent to such activities. R. 135 ¶¶ 58-59, 98.

WOW seeks to introduce extrinsic evidence it claims deserves judicial notice, R. 137 at 8, 10-12, 17-19, referring to R. 60-1. As discussed in detail in sections VI.B, "WOW's Letter Commentary of Purported Notice Summaries is Irrelevant, Inauthentic, and Unfit for Consideration," page 10, and VI.C, "WOW's Citations to the Exhibit at 60-1 Should Be Stricken," page 14, below, the content of WOW's documentary offering is not suitable for consideration by this Court for numerous reasons. It certainly is not worthy of being received in a motion to dismiss as evidence of what notices or opt-outs WOW may have offered, to whom, when, and whether such notices were received or reasonably comprehensible and whether any purported opt-outs functioned in any manner relevant to the claim raised here.

## ARGUMENT

### IV. Standard of Review

WOW moves to dismiss Plaintiffs' Complaint, alleging it fails to state a claim for relief. R. 136-138. The requirement generally governing review of the sufficiency of a complaint is that it contain a "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009); *see also Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007) (plaintiff must give defendant fair notice of the claim and its grounds). A plaintiff need only summon sufficient facts to state a claim that "is plausible on its face" and that "raise[s] a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A court reviewing a complaint on a motion to dismiss must accept the factual allegations of the complaint as true, *Erickson v. Pardus,* 551 U.S. 89, 94 (2007), construing all reasonable inferences in the light most favorable to the plaintiff. *Bane v. Ferguson*, 890 F.2d 11, 13 (7th Cir. 1989).

### V. Plaintiffs Sufficiently Allege an ECPA Claim

The paramount objective of the Wiretap Act, 18 U.S.C. § 2510, *et seq.*, is effectively to provide for the privacy of communications. *Gelbard v. U.S.*, 408 U.S. 41, 48 (1972); *accord U.S. v. Vest*, 313 F.2d 477, 481 (1st Cir. 1987); *see In re Pharmatrak, Inc.*, 329 F.2d 9, 18 (1st Cir. 2003). The Wiretap Act "expresses a strong purpose to protect individual privacy by strictly limiting the occasions on which interception may lawfully take place." *Watkins v. L.M. Berry & Co.*, 704 F.2d 577, 581 (11th Cir. 1983) (citing *U.S. v. Harpel*, 493 F.2d 346, 351 (10th Cir. 1974)). Under the act, "intercept" is defined as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). "Contents," as used in the act, "includes any information concerning the substance, purport, or meaning of that communication." *In re Pharmatrak*, 329 F.3d at 18

6

("contents" included URLs, or web page address information, that included personally identifiable information); 18 U.S.C. § 2510(8).

WOW specifically reconfigured its networks to accommodate "in-line" installation of the Appliances so that Plaintiffs' and Class Members' communications, instead of flowing to and from the Internet as before, instead flowed through the Appliances in WOW's facilities. R. 135 ¶¶ 4, 30, 75-80, 83, 91. The diversion to the Appliances consisted of the entirety of Plaintiffs' and Class Members' communications and—far more than the URLs at issue in *In re Pharmatrak*—encompassed all content of all Internet communications, unfiltered, substantive, and personal, whether messages, web pages, file transfers, or even certain phone conversations. R. 135 ¶¶ 5, 12, 24, 33-39, 40-45. WOW intercepted Plaintiffs' and Class Members' communications, period.

WOW, declining to accept the allegations of this Complaint as true, argues it was merely a conduit and that, under the reasoning of *Kirch v. Embarq*, 2011 WL 3651379, it cannot be held liable and that, further, it cannot be held secondarily liable. But WOW has it story backwards. Before WOW installed the Appliances, it was a conduit, ferrying Plaintiffs' and Class Members' communications to and from the Internet. R. 135 ¶¶ 9, 21-23. After installation of the Appliance, it became a conduit plus wiretapper. *Id.* at ¶¶ 4, 30, 75-80, 83, 91. Nor was WOW's role secondary in any sense. WOW and NebuAd entered a bilateral agreement under which WOW acquired the Appliances. The Appliances were installed and maintained in WOW's network by WOW. *Id.* at ¶¶ 4, 14, 26, 28-30, 32, 75-80, 83, 91. WOW undertook these actions intentionally, pursuant to its agreement with NebuAd, playing an active role and receiving payment for its part. *Id. at* ¶¶ 7, 27, 31, 46, 48, 89-90, 92, 95-97, 101. *See Menda Biton v. Menda*, 812 F.Supp. 283 (D.P.R. 1993) (defendants, acting in concert, were jointly and severally liable for statutory minimum damages for ECPA violations). Further, as much as WOW looks to *Kirch v. Embarq* decision to buttress its attempt to evade this Complaint's allegations and reasonable inferences, WOW neglects to in-

form this Court that the *Kirch* decision is on appeal. *See supra*, n.1. When another ISP defendant

similarly sought to shift liability to NebuAd, the court held:

> [T]he Class Action Complaint alleges that NebuAd and Bresnan deployed the Appliance on Bresnan's network infrastructure and configured its network to "funnel all User Internet [activity] through the Appliance." Further, the Complaint alleges that Bresnan maintained the Appliance and directed the flow of Plaintiffs' Internet traffic through the Appliance. . . . Based on this, Plaintiffs have pled sufficient facts to establish, for purposes of a 12(b)(6) motion to dismiss, that Bresnan intercepted Plaintiffs' electronic communications in violation of the ECPA. Bresnan's Motion to Dismiss on this ground is DENIED.

*Mortensen*, No. CV 10–13–BLG–RFC, 2010 WL 5140454, at *5 (D. Mont. Dec. 13, 2010).

In addition, the exhibit at 60-1 in this Court's record that WOW urges this Court to re-

view, although hearsay, includes WOW's admissions against interest; specifically, WOW claims

to have notified customers that "***WOW! or someone acting on its behalf may engage in anon-***

***ymous monitoring of your Internet activity***" (emphasis in WOW brief) and "*we use* an advertis-

ing network provider to deliver or facilitate delivery of advertisements . . . based on our Custom-

ers' anonymous surfing behavior . . ." R. 137 ¶¶ 17-18 (emphasis added). Thus, on the facts of

this case, WOW admits its obvious and already clearly alleged active role and responsibility.

In *In re Pharmatrak*, the court noted that automatic routing was consistent with intercep-

tion. 329 F.2d at 22 (discussing *U.S. v. Steiger*, 318 F.3d 1039, 1050 (11th Cir. 2003). In the in-

stant matter, routing of traffic occurred because WOW owned the conduit, acquired the Appli-

ance, reconfigured its network, inserted the Appliance in its network, and rerouted the conduit of

its customers' Internet traffic so the traffic was intercepted by the Appliance. NebuAd could not

have done this without WOW's active and ongoing partnership, which WOW supplied pursuant

to its agreement and for which WOW was compensated. Although WOW now tries to pass re-

sponsibility off to NebuAd, WOW's argument does little more than raise an issue of fact that, it-

self, is contradicted by other arguments offered by WOW. The allegations of the Complaint and

all reasonable inferences show the sufficiency of Plaintiffs' allegations of WOW's active, intentional interception of the content of their electronic communications.

### VI. Plaintiffs Sufficiently Allege They Did Not Consent to Interception

The question of consent under ECPA "may vary with the circumstances of the parties." *United States v. Footman*, 215 F.3d 145, 155 (1st Cir. 2000); *see generally* 18 U.S.C. § 2511(2)(d) (interception with prior consent not unlawful). Not all interceptions are alike, and a court evaluating a consent defense "must inquire into the dimensions of the consent and then ascertain whether the interception exceeded those boundaries.'" *Gilday v. Dubois*, 124 F.3d 277, 297 (1st Cir.1997) (quoting *Griggs-Ryan v. Smith*, 904 F.2d 112, 119 (1st Cir. 1990).

### A.    Plaintiffs Sufficiently Allege WOW Lacked Consent for its Interception

Plaintiffs allege the manner in which WOW siphoned off and rented out the entirety of Plaintiffs' communications was novel, non-standard, complex, and conscience-shocking R. 135 ¶¶ 103-106. WOW's interception, disclosure of intercepted communications to NebuAd, and use of intercepted communications encompassed all of Plaintiffs' and Class Members' communications in their entirety. WOW diverted communications from their accustomed conduit to and from the Internet and subjected the intercepted communications to deep packet inspection of their contents; device fingerprinting analysis; and alteration of the contents of intercepted web page downloads so as to transmit tracking code to Plaintiffs' computers, circumvent Plaintiffs' privacy and security controls, and effect persistent identification of Plaintiffs in their web browsing. R. 135 ¶¶ 99-100.

In civil cases brought under the ECPA, the burden of showing that an exception applies is on the party seeking its benefit. *In re Pharmatrak, Inc. Privacy Litig.*, 329 F.3d 9, 19 (1st Cir. 2003). Consent to interception may be explicit or implied, but it must be actual consent rather than constructive consent. *Williams v. Poulos*, 11 F.3d 271, 281-82 (1st Cir. 1993). "[I]mplied

consent is 'consent in fact' which is inferred 'from surrounding circumstances indicating that the party knowingly agreed to the surveillance.'" *Griggs-Ryan v. Smith*, 904 F.2d 112, 116-17 (1st Cir. 1990) (quoting *U.S. v. Amen*, 831 F.2d 373, 378 (2d Cir. 1987); *see also In re Pharmatrak, Inc.*, 329 F.3d 9, 20 (1st Cir. 2003) ("[*In re DoubleClick Inc. Privacy Litig.*, 154 F.Supp.2d 497 (S.D.N.Y. 2001)] . . . [does] not set up a rule . . . that a consent to interception can be inferred from the mere purchase of a service, regardless of circumstances"). A party may consent to the interception of only part of a communication or to the interception of only a subset of its communications. *Griggs-Ryan,* 904 F.2d at 117-19.

As Plaintiffs have alleged, neither they nor Class Members ever consented to WOW's activities. R. 135 ¶¶ 58-59, 86, 98. Further, they have alleged that only the most robust and explicit notice could have informed them of such radical practices, R. 135 ¶ 104. WOW offers nothing in its motion to address the sufficiency of allegations that it failed to obtain consent, particularly for these specific and specifically excessive practices of interception, disclosure of intercepted information, and use of intercepted information to which Plaintiffs and Class Members were subjected. At best, WOW's failure to accept Plaintiffs' allegations as true creates issues of fact and demonstrates that its motion should be denied.

**B.    WOW's Letter Commentary of Purported Notice Summaries is Irrelevant, Inauthentic, and Unfit for Consideration**

WOW, in support of its motion, repeatedly marshals allegations of its own, citing to its "Response to Congress" exhibit, R. 60-1. R. 137 *passim.* However, as detailed below, the exhibit is not what WOW represents it to be, does not say what WOW represents it to say, and does not warrant the court's consideration under any legal rubric.

A document offered with a motion to dismiss may be considered if referred to in the complaint, central to a plaintiff's claims, and "concededly authentic." *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) (collecting cases). The Seventh Circuit has described this as "a narrow

exception aimed at cases interpreting, for example, a contract." *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998). However, "[w]hat would not be cricket would be for the defendant to submit a document in support of his Rule 12(b)(6) motion that required discovery to authenticate or disambiguate," and where consideration of the document would require conversion to a Rule 56 motion. *Tierney v. Vahle*, 304 F.3d 734, 739 (7th Cir. 2002) (citing *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994); *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir.1991)); *compare Menominee Indian Tribe of Wisc. v. Thompson,* 161 F.3d 449, 456 (7th Cir. 1998) (complaint referred to treaties that the court appropriately considered).

Regarding judicial notice, the mere existence of a document in a matter of public record does not render its assertions worthy of judicial notice as fact. To the contrary, judicial notice of a fact not generally known within the trial court's territorial jurisdiction is permitted only if the fact is not subject to reasonable dispute and it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see Swanson v. Bank of America*, 566 F.Supp.2d 821, 823 (documents were referred to in complaint and their authenticity was not in question); *see also* Fed. R. Evid. 201, Advisory Committee Note ("[a] high degree of indisputability is the essential prerequisite"). For example, in *Hennessy v. Penril Data-comm Networks, Inc.*, the Seventh Circuit found that the district court properly declined to take judicial notice of a party's Securities and Exchange Commission 10-K filing because its contents were disputed. 69 F.3d 1344, 1354-55 (7th Cir. 1995); *cf. Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1151 (9th Cir. 2005) (treating a fact as beyond controversy deprives a party of rebuttal, cross-examination, and argument).

WOW argues this Court should consider the contents of the exhibit at 60-1 in reviewing its motion to dismiss. WOW claims the exhibit's contents are referred to in the Complaint and are central to Plaintiffs' claims. R. 137 at 14. WOW claims the exhibit "conclusively" establishes

that WOW obtained Plaintiffs' consent to the actions alleged in the Complaint. *Id.* at 8, 17. Further, WOW urges that the exhibit's contents warrant judicial notice. *Id.* at 14.

WOW's assertions regarding the exhibit are unsupported by the exhibit itself and WOW's argument for adoption of the exhibit is wholly lacking in merit. The exhibit at 60-1 is a letter and an attachment consisting only of this:

–    The attachment is labeled "Customer Notifications Summary." It consists of undated, typed excerpts of purported notices to customers. R. 60-1 at 7-10.

–    That attachment is appended to a letter that appears on its face to be from WOW's CEO to a congressional committee. R. 60-1 at 2-6. On only one page of that letter, R. 60-1 at 4, the author makes general comments about distribution of text excerpted in the Customer Notifications Summary, such as, "Customer Terms of Service and Internet Privacy Policy . . . have historically been provided . . . as a condition of installation and ongoing service (in addition, customers are periodically referred to this same information online);" "[a]pproximately four weeks prior to full deployment;" and "over a period of two months following deployment . . . ."

Thus, on its face, the exhibit is inauthentic as to any customer notices WOW claims it contains. It includes no copy or image of any notice that WOW alleges were sent to customers. It contains no reliable indicia of when supposed notices were sent, to whom, or how. It is nothing more than a third-hand commentary giving a vague gloss to second-hand accounts of purported notices.

Further, on its face, the exhibit is irrelevant to Plaintiffs' claims and the instant motion:

–    The "historically provided" notice mentioned in the letter, on its face, concerns only WOW's practices in displaying advertising on its own web pages. *See* 60-1 at 4 ¶ 6.A, commenting on 60-1 at 7 ("Use of Third Party Ad Networks"). This is

not relevant. Plaintiffs' claims concern the interception, disclosure, and use of all of Plaintiffs' and Class Members' communications across all of their Internet activity, not what ad services or cookies WOW uses to display ads on a single website that it controls at *www.wowway.com*. With incredible disingenuousness, WOW cites to this supposed notice in its brief, but omits the fact that the "Use of Third Party Ad Networks" language, on its face, applies solely to WOW's practices on its own website. R. 137 at 17-18.

– Other purported notices in the exhibit were supposedly provided starting "approximately four weeks prior to full commercial deployment" and "over a period of two months following deployment. R. 60-1 at 4 ¶¶ 6.B and 6.C. The letter defines "deployment" as starting in March, 2008. R. 60-1 at 2. Plaintiffs, however, have alleged interception, disclosure, and use of their Internet communications beginning in December 2007.[3]

On those bases, alone, Plaintiffs emphatically assert that the exhibit WOW urges this Court to consider deserves no consideration for the purposes for which WOW offers it. Its contents are neither referred to in the complaint nor central to Plaintiffs' claims. The notices WOW claims the exhibit contains are inauthentic and, for whatever the document might be worth, unauthenticated. Far from being merely ambiguous, Plaintiffs question and dispute the accuracy of the matters it asserts. On no basis does it warrant review in this motion and on no basis is it wor-

---

[3] Plaintiffs dispute WOW's euphemistic characterization of "test" and "deployment" periods and the supposed "full deployment" date itself, and believe discovery will reveal inaccuracies in these assertions of the exhibit. However, even taking WOW's purported notices at face value, their timing compares poorly to those provided by the ISPs in *Mortensen v. Bresnan*, *Deering v. CenturyTel*, and *Kirsch v. Embarq*, where notices were provided prior to deployment of the NebuAd Appliance. *Mortensen v. Bresnan*, No. CV 10–13–BLG–RFC, 2010 WL 5140454, at *5 (D. Mont. Dec. 13, 2010); *Kirch v. Embarq*, No. 10–2047–JAR, 2011 WL 3651359, at *9 (D. Kan. August 19, 2011); *Deering v. CenturyTel*, No. CV–10–63–BLG–RFC, 2011 WL 1842859, at *2 (D. Mont. May 16, 2011).

thy of judicial notice. At most, the exhibit at 60-1 indicates that a congressional committee received and posted a letter from WOW, which is of no moment in this motion.

## C.     WOW's Citations to the Exhibit at 60-1 Should Be Stricken

Despite the many infirmities in the exhibit offered by WOW, WOW cites to it no fewer than 26 times in its brief; tellingly, 21 of those citations are merely to the letter portion (R. 137 at 10-13, 17-19) as opposed to five citations to the supposed, actual notices of the "Customer Notifications Summary" (R. 137 ¶¶ 11-12, 17-18). In the process of citing to the exhibit, WOW adds allegations that are not supported by the exhibit itself. For example (and confusingly), WOW assigns a new, collective label ("TOS") to the notices alleged in the exhibit, and then WOW uses its brief to allege a gratuitously broad timing for this "TOS" collection. R. 137 at 10-12, 17-18. Further, in addition to disingenuously claiming the exhibit "conclusively" establishes Plaintiffs' consent to WOW's conduct, *id.* at 8, 17, WOW cites to the exhibit to assert, flatly, that Plaintiffs received its supposed notices, *id.* at 17-18. Even more astonishing, WOW cites to the exhibit to support its assertion that Plaintiffs never opted out, *id.* at 13, 17-18, when, in fact, Plaintiffs have alleged nothing regarding opt-outs, and the exhibit, itself, contains WOW's admission that it possesses no relevant information one way or the other (the exhibit states WOW did not track which customers or even how many individual customers opted out, R. 60-1 at 5, ¶ 8).[4]

Plaintiffs have not alleged receipt of notice, grant of consent, or attempt to exercise opt-outs, and WOW's attempts to craft "conclusive" allegations regarding these issues deserve to be stricken along with the unworthy documentary basis on which WOW predicates those attempts.

Finally, WOW attempts to bootstrap the supposed notices of exhibit at 60-1 to notices that have been adjudicated in the cases of other NebuAd ISP clients. Even taking WOW's sup-

---

[4] Plaintiffs further assert that discovery will show WOW's opt out did not function properly for a time and, when it did function, did not opt customers out of the interception alleged here.

posed notices at face value as to their content, they compare poorly.[5] Only now, in its brief, does WOW move slightly closer to accuracy by characterizing its ad-targeting model as one based on "anonymized," instead of "anonymous" data, tacitly admitting that the data funneled to the appliance included the substantive and even personally identifiable content of Plaintiffs' and Class Members' communications. R. 137 at 5.

One court has observed that the Wiretap Act "expresses a strong purpose to protect individual privacy by strictly limiting the occasions on which interception may lawfully take place" and consent should not be cavalierly implied. *Watkins v. L.M. Berry & Co.*, 704 F.2d 577, 581 (11th Cir. 1983) (citing *U.S. v. Harpel*, 493 F.2d 346, 351 (10th Cir. 1974)); *Poulos*, 11 F.3d at 281 ("[i]n light of the prophylactic purposes of Title III, implied consent should not be casually inferred"). Here, WOW attempts to support a consent defense in a casual manner and invites an analysis that can only charitably be called "cavalier," and so fails in meeting its burden. Plaintiffs and Class Members never consented to the scope of WOW's alleged conduct and, by any measure, WOW far exceeded the boundaries of any consent it might imagine or allege it had.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny WOW's third motion to dismiss in its entirety. Alternatively, Plaintiffs respectfully request that the Court grant Plaintiffs leave to amend under Fed. R. Civ. P. 15(a)(2) in light of facts discovered in this and related cases.

---

[5] Taking WOW's purported notices at face value, WOW did no more than inform Plaintiffs and Class Members of targeted ad delivery based on "anonymous" surfing behavior that it claimed did not capture, transmit, or store any personally identifiable information. *See e.g.*, R. 60 at 7-10. *Compare Mortensen*, 2010 WL 5140454 at *3, *5; *Deering*, 2011 WL 1842859 at *1 (while not approaching disclosure of the scope of interception, disclosure, and use of communications alleged in this matter, defendant ISPs provided notice far exceeding WOW's purported disclosures); *compare also Kirch*, 2011 WL 3651359, at *7 (disclosures referred to "de-identified web browsing" data used by third parties; in granting the defendant ISP's motion for summary judgment, court found disclosures were substantively similar to those made by ISPs in *Bresnan and Deering*). Here, WOW claims only to have told customers, repeatedly, that no such personal identification would beat issue. *See* R. 60-1, at 7-10.

Dated: July 9, 2012

Respectfully submitted,
KAMBERLAW, LLC

By: s/David A. Stampley
    David A. Stampley
    100 Wall Street, 23rd Floor
    New York, New York 10005
    Telephone:(212) 920-3072
    Facsimile: (212) 202-6364
    One of the Attorneys for Plaintiffs, on behalf
    of themselves and all others similarly situated

MICHAEL J. ASCHENBRENER
maschenbrener@edelson.com
EDELSON MCGUIRE, LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Facsimile:  (312) 589-6378

SCOTT A. KAMBER
skamber@kamberlaw.com
KAMBERLAW, LLC
100 Wall Street, 23rd Floor
New York, New York 10005
Telephone: (212) 920-3072
Facsimile:  (212) 202-6364

Grace E. Tersigni
gtersigni@kamberlaw.com
KAMBERLAW, LLC
100 Wall Street, 23rd Floor
New York, New York 10005
Telephone: (212) 920-3072
Facsimile:  (212) 202-6364

BRIAN J. PANISH
panish@psblaw.com
RAHUL RAVIPUDI
ravipudi@psblaw.com
PANISH, SHEA & BOYLE, LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
Telephone: (310) 477-1700
Facsimile:  (310) 477-1699

JOSEPH H. MALLEY
malleylaw@gmail.com
LAW OFFICE OF JOSEPH H. MALLEY, P.C.
1045 North Zang Boulevard
Dallas, Texas 75208
Telephone: (214) 943-6100
Facsimile:  (214) 943-6170

## CERTIFICATE OF SERVICE

I hereby certify that on July 9, 2011, I electronically filed with the Clerk of the Court the foregoing Plaintiffs' Memorandum of Law In Opposition to Defendant's Second Motion to Dismiss using the CM/ECF system which will send notification of such filing to the following attorneys for the Defendant and their e-mail addresses on file with the Court:

**TO:**

Thomas A. Counts
Paul Hastings LLP
55 Second Street, 24th Floor
San Francisco, CA 94105
(415) 856-7070
tomcounts@paulhastings.com

Ryan C. Nier
Paul Hastings LLP
55 Second Street, 24th Floor
San Francisco, CA 94105
(415) 856-7000
ryannier@paulhastings.com

Giselle Perez de Donado
Paul Hastings LLP
191 North Wacker Drive, 30th Floor
Chicago, IL 60606
(312) 499-6000
giselleperez@paulhastings.com

Kelly Ann Demarchis
Paul Hastings LLP
875 15th Street NW
Washington, DC 20005
(202) 551-1700
kellydemarchis@paulhastings.com

Kenneth W. Gage
Paul Hastings LLP
191 North Wacker Drive, 30th Floor
Chicago, IL 60606
(312) 499-6046
kennethgage@paulhastings.com

s/David A. Stampley
David A. Stampley