**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

DAN VALENTINE and W. BRAND )
BOBOSKY, individually and on behalf of )
themselves and all others similarly situated, )
)
        Plaintiffs, )
)     Case No. 09-cv-7653
        v. )
)     July 20, 2012
WIDEOPEN WEST FINANCE, LLC, a )
Delaware Corporation, )     Judge Edmond E. Chang
)
        Defendant. )
————————————————— )

## <u>DEFENDANT WIDEOPENWEST FINANCE, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT</u>

# TABLE OF CONTENTS

**Page**

I.     PLAINTIFFS' ECPA CLAIM FAILS ON ITS FACE BECAUSE PLAINTIFFS NEVER ALLEGE THAT WOW ACQUIRED THE CONTENTS OF ANY COMMUNICATION ................................................................................................ 2

          1.     Interception Requires Acquisition, And Plaintiffs Have Not Alleged That WOW Acquired Any Of Their Communications ............... 3

          2.     None of Plaintiffs' Arguments Cure Their Failure To Allege An Interception ................................................................................................ 5

          3.     Plaintiffs Cannot Hold WOW Secondarily Liable ..................................... 7

II.    PLAINTIFFS' ECPA CLAIM ALSO FAILS BECAUSE, AS A MATTER OF LAW, THEY CONSENTED TO ANY INTERCEPTION ............................................. 8

       A.     WOW's Terms Of Service Prior To December 2007 Are Sufficient To Establish Consent, and Its Subsequent Notifications Strengthen Such A Finding ....................................................................................................... 9

       B.     The Court May Properly Consider WOW's Response To Congress On A Motion To Dismiss ............................................................................... 11

III.   CONCLUSION ............................................................................................................ 13

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*ABN Amro, Inc. v. Capital Int'l Ltd.*,
    No. 04-C-3123, 2007 U.S. Dist. LEXIS 19601 (N.D. Ill. Mar. 16, 2007)..............................13

*Amati v. City of Woodstock*,
    176 F.3d 952 (7th Cir. 1999) .............................................................................................12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).......................................................................................................3, 6

*Crowley v. CyberSource Corp.*,
    166 F. Supp. 2d 1263 (N.D. Cal. 2001) ..............................................................................8

*Deering v. CenturyTel, Inc.*,
    No. CV-10-63, 2011 U.S. Dist. LEXIS 51930 (D. Mont. May 16, 2011)................2, 9, 10, 12

*DirecTV, Inc. v. Barnes*,
    302 F. Supp. 2d 774 (W.D. Mich. 2004) ............................................................................4

*DirecTV, Inc. v. Regall*,
    327 F. Supp. 2d 986 (E.D. Wis. 2004).................................................................................8

*Mason v. Medline Indus.*,
    731 F. Supp. 2d 730 (N.D. Ill. 2010) ..................................................................................5

*Menda Biton v. Menda*,
    812 F. Supp. 283 (D.P.R. 1993)..........................................................................................8

*Mortensen v. Bresnan Commc'n*,
    No. 10-cv-13, 2010 U.S. Dist. LEXIS 131419 (D. Mont. Dec. 13, 2010) ..................... passim

*Peavy v. WFAA-TV, Inc.*,
    221 F.3d 158 (5th Cir. 2000) ...........................................................................................7, 8

*Stone v. INS*,
    514 U.S. 386 (1995)............................................................................................................8

*Tierney v. Vahle*,
    304 F.3d 734 (7th Cir. 2002) .......................................................................................12, 13

*United States v. Smith*,
    155 F.3d 1051 (9th Cir. 1998) ............................................................................................3

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*United States v. Steiger*,
  318 F.3d 1039 (11th Cir. 2003) ................................................................................6

*United States v. Szymuszkiewicz*,
  622 F.3d 701 (7th Cir. 2010) ....................................................................................6

**STATUTES**

18 U.S.C. § 2510(4) ....................................................................................................3

**OTHER AUTHORITIES**

H.R. Rep. No. 99-647 (1986) .......................................................................................8

Seven cases have been filed against NebuAd and various ISPs (all by the same counsel), and this is the only one that remains. Courts across the country have uniformly dismissed parallel ECPA claims – claims based on the same law, the same allegations, the same NebuAd technology, and the same ISP notifications – and in none of those cases have they found an ECPA violation. The three cases to substantively discuss plaintiffs' ECPA claims – *Mortensen, Deering*, and *Kirch* – all dismissed them after considering the content of the notices at issue and holding that they warranted a finding of implied consent to any interception. The *Kirch* court also articulated a second ground for dismissal: that plaintiffs could not establish that the ISP ever acquired plaintiffs' communications. Plaintiffs have given no reason (because they can't) why this case is any different on the facts or the law. Instead, they simply try to plead that they didn't consent (they can't) and avoid discussing the actual content of the notices by disclaiming their past reliance on them (they can't). Accordingly, Plaintiffs' Second Amended Complaint should be dismissed without leave to amend.

First, because the ECPA defines interception as "acquisition," Plaintiffs cannot maintain a claim against WOW unless they that WOW – as opposed to third-party advertiser NebuAd – acquired the contents of any of their communications. At best, Plaintiffs allege that WOW routed information to NebuAd, which is not sufficient to establish that WOW ever had access to or otherwise obtained that information. Boxed in by their inability to allege that WOW ever acquired any of their communications, Plaintiffs attempt to impose secondary liability based on WOW's contractual relationship with NebuAd. This attempt also fails, however, because it is well-established that there is no secondary liability under the ECPA.

Second, Plaintiffs consented to any interception. Plaintiffs do not contest that consent precludes liability under the ECPA. They do not contest that each of the three sister cases to

decide ECPA claims based on the exact same NebuAd technology has dismissed after finding that plaintiffs consented. They do not contest that WOW provided numerous notifications, which are contained in WOW's Response to Congress – a document which Plaintiffs relied upon for years. Plaintiffs do not contest that they never availed themselves of the opportunity to opt out of the NebuAd services. Nor do Plaintiffs contest that the disclosures at issue in this case are substantially identical to those given in *Kirch*, *Mortensen*, and *Deering*. Indeed, nowhere in their 15-page Opposition do Plaintiffs explain how WOW's disclosures are different.

All Plaintiffs offer is a hollow argument, again based on the conclusory assertion that they did not consent, without any factual allegations to support such a conclusion. Moreover, Plaintiffs try to claw back WOW's Response to Congress and prevent the Court from considering it, even though they relied on that document for more than two years, and even though the *Kirch*, *Mortensen*, and *Deering* courts all considered the ISP's notices in deciding the issue of consent.

The Court can dismiss Plaintiffs' ECPA claim if it concludes **either** that Plaintiffs have failed to allege facts sufficient to show that WOW acquired any of their communications **or** that Plaintiffs have failed to allege facts sufficient to establish their lack of consent. Because Plaintiffs' SAC fails on both counts, WOW respectfully requests that this Court dismiss Plaintiffs' ECPA claim without leave to amend.

I. **PLAINTIFFS' ECPA CLAIM FAILS ON ITS FACE BECAUSE PLAINTIFFS NEVER ALLEGE THAT WOW ACQUIRED THE CONTENTS OF ANY COMMUNICATION.**

The Court can dismiss Plaintiffs' SAC without reference to any external documents, because Plaintiffs fail to allege facts sufficient to establish that WOW acquired any of their communications. None of the arguments Plaintiffs raise in their Opposition can overcome this

fundamental deficiency. Thus, Plaintiffs' ECPA claim, and the entire SAC, should be dismissed with prejudice.

### 1. Interception Requires Acquisition, And Plaintiffs Have Not Alleged That WOW Acquired Any Of Their Communications.

Plaintiffs concede that interception is a necessary element of an ECPA claim. (*See* Opp. at 6.) They then conclude, "WOW intercepted Plaintiffs' and Class Members' communications, period." (*Id.* at 7.) But no matter how emphatically they state it, this is just a conclusory allegation that the Court need not accept as true in the absence of supporting factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). Plaintiffs ignore that "intercept" is a term of art, explicitly defined in the ECPA as "the aural or other ***acquisition*** of the contents of any . . . electronic . . . communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4) (emphasis added).[1] And when "the meaning of a word is clearly explained in a statute, courts are not at liberty to look beyond the statutory definition." *United States v. Smith*, 155 F.3d 1051, 1057 (9th Cir. 1998).

The court in the related case *Kirch v. Embarq Management Co.* correctly followed the above canon of statutory interpretation, relying on the statutory definition of "intercept" and holding that plaintiffs' failure to establish that the ISP actually acquired the contents of communications "falls short of creating civil liability under the ECPA, which creates liability for actual interception." No. 10-2047-JAR, 2011 U.S. Dist. LEXIS 92701, at *21 (D. Kan. Aug. 19, 2011). The court in *Kirch* specifically rejected arguments that the ISP intercepted

---

[1]Plaintiffs' disregard for the statutory definition is particularly egregious, given that their Opposition recites § 2510(4). (*See* Opp. at 6.)

communications simply by routing them to NebuAd.[2]  *Id.*  The Court should follow *Kirch* and apply the statutory definition of "intercept" in this case – the the dispositive question is whether WOW acquired the contents of Plaintiffs' communications.

Even reading Plaintiffs' allegations in the light most favorable to them, the answer is no. Plaintiffs never allege that WOW had ***access*** to the information extracted by the NebuAd system or to the user profiles constructed from that information, let alone that WOW acquired such information.  While their Opposition merely repeats the allegations contained in the SAC – *i.e.*, that WOW installed and maintained NebuAd's appliance on its system, the appliance diverted Plaintiffs' communications to NebuAd, and NebuAd paid WOW pursuant to a contractual agreement – none of these allegations constitutes an acquisition.[3]  (*See* Opp at 7.)  This deficiency is sufficient, as a matter of law, to defeat a Wiretap Act claim.  *See Kirch,* 2011 U.S. Dist. LEXIS 92701, at *20; *see also DirecTV, Inc. v. Barnes*, 302 F. Supp. 2d 774, 779 (W.D. Mich. 2004) (a person cannot intercept a communication for purposes of the Wiretap Act "without acquiring, in some way, the contents of the communication")

Plaintiffs argue that they have sufficiently alleged an interception, relying on *Mortensen*, in which the court granted defendant's motion to dismiss but noted in dicta that plaintiffs had adequately alleged an interception by claiming that the ISP configured its network to "funnel" communications to NebuAd.  (Opp. at 8 (citing *Mortensen v. Bresnan Commc'n*, No. 10-cv-13,

---

[2] Although Plaintiffs make much of the fact that *Kirch* is currently on appeal, their Opposition offers no argument as to how the *Kirch* court erred in applying the express statutory definition of "intercept."

[3] Although Plaintiffs define the purported class by reference to customers "whose Internet communications were acquired by WOW" (SAC ¶ 60), the SAC contains no factual allegations that would support a conclusion that Plaintiffs' ***or any users'*** communications were ever acquired by WOW.

2010 U.S. Dist. LEXIS 131419, at *6 (D. Mont. Dec. 13, 2010).)  But Plaintiffs' reliance on

*Mortensen* is misplaced.  The court in *Mortensen* actually dismissed the plaintiff's ECPA claim

on other grounds, holding that the notifications provided by the ISP were sufficient to establish

implied consent.  2010 U.S. Dist. LEXIS 131419, at *13.  As to the question of interception, the

*Mortensen* court never acknowledged or considered the statutory definition of that term.  Rather,

it relied on dicta in *Konop v. Hawaiian Airlines, Inc.* that recited the Webster's Dictionary

definition of "intercept."  *See Mortensen*, 2010 U.S. Dist. LEXIS 131419, at *6 (citing *Konop*,

302 F.3d 868, 878 (9th Cir. 2002).  Moreover, the *Mortensen* court ignored the preceding

sentence in *Konop*, which stated, "[w]e therefore hold that for a website such as Konop's to be

'intercepted' in violation of the Wiretap Act, it must be ***acquired*** during transmission . . ."  302

F.3d at 878 (emphasis added).  Thus, the court in *Mortensen* failed to follow the well-established

canon of statutory interpretation, cited above, that "[s]tatutory definitions control the definition

of statutory words."  *Mason v. Medline Indus.*, 731 F. Supp. 2d 730, 734 (N.D. Ill. 2010).

### 2. None of Plaintiffs' Arguments Cure Their Failure To Allege An Interception.

Because Plaintiffs are unable to allege that WOW ever acquired their communications,

their ECPA claim fails as a matter of law.  Faced with this clear and fatal deficiency, Plaintiffs

unleash a school of red herrings in their Opposition, relying on inflammatory language and

conclusory proclamations.

Plaintiffs rely primarily on *In re Pharmatrak*, a case that is vastly different from this one.

In *Pharmatrak*, the defendant contracted with pharmaceutical companies to track traffic and

usage statistics for those pharmaceutical companies' webpages.  329 F.3d 9, 12 (1st Cir. 2003).

The defendant specifically represented that it would not collect any personal or identifying data

about the pharmaceutical company's website users, but then collected that data anyway.  *Id.*

One key difference in *Pharmatrak* is that the defendant did "not contest[] whether it . . . obtained the contents of an electronic communication." *Id.* at 18. Thus, the Pharmatrak court never had to consider whether the defendant acquired the plaintiffs' communications, because the defendant had already conceded as much. Plaintiffs' argument that the communications WOW allegedly diverted contained "far more [personal content] than the URLs at issue in *In re Pharmatrak*" is wholly irrelevant to the dispositive question here: whether WOW ***acquired*** those communications at all. (Opp. at 9.)

Plaintiffs next claim that the court in *Pharmatrak* "noted that automatic routing was consistent with interception." (Opp. at 10.) But the court in *Pharmatrak* did ***not*** hold that automatic routing equals interception. As noted above, Pharmatrak effectively conceded that it had acquired the contents of users' communications; thus, acquisition under ECPA was not at issue. *See* 329 F.3d at 9. The court's discussion of automatic routing was in the context of whether the acquisition occurred in ***real-time***, which some courts have construed as an ***additional*** element of interception separate and distinct from acquisition. *See Pharmatrak*, 329 F.3d at 22 (quoting *United States v. Steiger*, 318 F.3d 1039, 1050 (11th Cir. 2003).). Moreover, the Seventh Circuit has made clear that the method of transmission "is irrelevant under § 2510," noting that the proper inquiry is whether that method allowed the defendant to acquire the contents of an electronic communication. *United States v. Szymuszkiewicz*, 622 F.3d 701, 705 (7th Cir. 2010).

Finally, Plaintiffs argue that WOW's installation of the Appliance transformed WOW into a "conduit plus wiretapper." (Opp. at 9.) Again, the use of the conclusory label "wiretapper" has no legal significance because Plaintiffs do not allege facts sufficient to establish that WOW acquired the contents of any communication. *Iqbal*, 556 U.S. at 681.

For the reasons stated above, none of Plaintiffs' additional arguments can overcome their failure to allege that WOW acquired their communications, and the Court should dismiss Plaintiffs' ECPA claim.

### 3.       Plaintiffs Cannot Hold WOW Secondarily Liable.

Because Plaintiffs do not allege that WOW itself acquired the communications at issue, they must rely on a theory of secondary liability which, as WOW's motion to dismiss established, is not available in civil actions under the ECPA.  (*See* MTD at 13 (citing *Kirch*, 2011 U.S. Dist. LEXIS 92701, at \*22 n.30).)  Recognizing this, Plaintiffs disclaim any reliance on secondary liability, arguing, "[n]or was WOW's role secondary in any sense."  (Opp. at 7.)  But the theory of their case – that WOW is liable for interception because the NebuAd appliance was installed on its network pursuant to a contractual agreement with NebuAd – is ***premised*** on secondary liability.  Plaintiffs assert, in essence, that the contractual relationship between WOW and NebuAd allows WOW to be held liable for alleged interceptions carried out, if at all, by NebuAd.

The court in the related *Kirch* case expressly rejected this approach, holding that "[t]he civil liability provision of the ECPA . . . does not provide for secondary liability, as liability attaches ***only to the party that actually intercepted a communication***."  2011 U.S. Dist. LEXIS 92701, at \*22 (emphasis added).  In so holding, the court in *Kirch* specifically considered and rejected the plaintiffs' theory that the ISP could be liable based on its contractual relationship with NebuAd.  Furthermore, numerous courts have refused to apply secondary civil liability to defendants that did not themselves acquire communications, ***even where*** those defendants allowed, enabled, or procured other parties to intercept those communications.  *See, e.g.*, *Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 168-69 (5th Cir. 2000) (no liability under § 2520 for

-7-

"procuring" an interception); *DirecTV, Inc. v. Regall*, 327 F. Supp. 2d 986, 989 (E.D. Wis. 2004) (same); *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1269 (N.D. Cal. 2001) (same).[4]

Plaintiffs offer only one thing in response: a citation to a case that did not even involve secondary liability. *Menda Biton v. Menda*, 812 F. Supp. 283 (D.P.R. 1993), is inapposite. In *Menda*, the court held two defendants jointly and severally liable where they ***both*** secretly recorded (and thereby acquired) telephone conversations with the plaintiff. *Id.* at 283. *Menda* did not even involve a question of secondary liability.

## II.   PLAINTIFFS' ECPA CLAIM ALSO FAILS BECAUSE, AS A MATTER OF LAW, THEY CONSENTED TO ANY INTERCEPTION.

WOW's Response to Congress makes clear that well before the NebuAd appliance was installed on WOW's system, WOW's Terms of Service disclosed the use of targeted advertising, explained that targeted advertisement involved the collection of customer information, and provided a chance for customers to opt out. Under *Kirch*, this disclosure is sufficient to establish consent, and Plaintiffs offer no argument otherwise. WOW's subsequent disclosures, including updates to its Terms of Service and letter and email notifications, further reinforce a finding of consent. Plaintiffs cannot avoid dismissal simply by remaining silent as to whether they individually received notice.

Furthermore, WOW's Response to Congress is properly before the Court because its contents are alleged in the SAC, the notifications discussed therein are central to Plaintiffs'

---

[4]This conclusion is further supported by Congress's 1986 amendment to § 2520, the civil liability provision of the ECPA. Until 1986, that provision ***did*** allow a civil cause of action against any person who "procures any other person to intercept, disclose, or use such communications," but Congress chose to delete that phrase. H.R. Rep. No. 99-647, at 98-99 (1986) (comparing the pre-1986 statutory language with the amended language). And "[w]hen Congress acts to amend a statute, [courts] presume it intends its amendments to have real and substantial effect." *Stone v. INS*, 514 U.S. 386, 397 (1995); *see Peavy*, 221 F.3d at 169.

ECPA claim, and Plaintiffs cannot reasonably question the document's authenticity after relying heavily on it in their previous two complaints.

A.  **WOW's Terms Of Service Prior To December 2007 Are Sufficient To Establish Consent, and Its Subsequent Notifications Strengthen Such A Finding.**

WOW's motion to dismiss established that Plaintiffs impliedly consented to any interception, and Plaintiffs do not address any of WOW's arguments except with conclusory assertions of law or evasive side arguments. First, Plaintiffs must admit that, even before the NebuAd technology was identified or selected for deployment, they received and approved WOW's Terms of Service, which unambiguously provided that as a condition of installation and receipt of service, third-party ad servers and persistent cookies would be utilized. *See* Dkt. No. 123 at 3 ("Plaintiffs do not dispute that they agreed to the Terms of Service. . . ."); (*See also* WOW Response to Congress (WOW RTC), Dkt. No. 60-1, Customer Notifications Summary, at 1.) These three factors were sufficient to establish consent in *Kirch*, even in the absence of any reference to NebuAd. 2011 U.S. Dist. LEXIS 92701, at *28-29. WOW's subsequent letter and email notifications, as well as updates to its Terms of Service that expressly disclosed NebuAd's involvement, are substantially identical to those found sufficient to establish consent in the related *Mortensen* and *Deering* cases. *See Mortensen,* 2010 U.S. Dist. LEXIS 121419 at *7; *Deering v. CenturyTel, Inc.*, No. CV-10-63, 2011 U.S. Dist. LEXIS 51930, at *7 (D. Mont. May 16, 2011).

Plaintiffs relied on WOW's Response to Congress – a document summarizing all of these forms of notice – for years in this case, quoting and citing to the document numerous times in their two previous complaints. They also have ***never*** claimed that they didn't receive the notices WOW sent to all its customers, or that they opted out. Instead, Plaintiffs continued to use

WOW's Internet services. As the court in *Kirch* held, "plaintiffs consented to monitoring by using [the ISP's] Internet service after notice, and that notice and consent defeats their ECPA claim." 2011 U.S. Dist. LEXIS 92701, at *26.

Plaintiffs attempt to muddy these waters in several ways, but none overcomes their consent. First, Plaintiffs once again baldly state that "neither they nor Class Members ever consented to WOW's activities." (Opp. at 10.) But saying it does not make it so. Implied consent is a ***legal*** concept, and sister courts in other NebuAd cases (as noted above) have provided ample guidance regarding the level of notice sufficient to establish such consent. Plaintiffs cannot deny that they received the notifications identified by WOW. They only argue, without citation to any authority, that "only the most robust and explicit notice could have informed them" of the alleged interceptions, but do not explain how the contents of WOW's notifications meaningfully differ from those found sufficient in *Kirch*, *Mortensen*, or *Deering*.[5] (Opp. at 10.) The reason is that they don't.

Next, rather than addressing the legal sufficiency of the disclosures contained in WOW's Response to Congress, Plaintiffs attempt to plead around these facts by omitting references to the notifications contained in the previous two complaints and ignoring that WOW provided multiple notifications, and those notifications sufficiently disclosed the collection of user information in support of targeted advertising. Plaintiffs concede they received and agreed to Plaintiffs' original Terms of Service that contained nearly identical disclosures to those found sufficient in *Kirch*. Moreover, Plaintiffs' original and first amended complaints allege that WOW (1) disclosed that third-party advertisers could collect user information, (2) provided an

---

[5] Plaintiffs address the issue in cursory manner a footnote, which does not address any of the key factors outlined in WOW's opening brief. (*Compare* Opp. at 15 n.5 *with* MTD at 7-9, 14-15.)

opportunity for customers to opt out, even before it updated its Terms of Service , (3) updated its privacy policy and Terms of Service within two months of the initial test run of the NebuAd appliance, and (4) provided further notification via letter and e-mail by approximately February 2008. (Dkt. Nos. 1 and 101-1 ¶¶ 55-56.) These allegations belie any argument that Plaintiffs were unaware of WOW's multiple notifications, yet they are mysteriously absent from Plaintiffs' SAC. Plaintiffs purposefully omitted them in an attempt to stave off the inevitable dismissal of their ECPA claim due to consent. Finally, Plaintiffs falsely claim that the notice contained in WOW's original Terms of Service "concerns only WOW's practices in displaying advertising on its own web pages." (Opp. at 14.) But the "Use of Third Party Ad Networks" section contains no such limitation (*see* WOW RTC, Customer Notifications Summary, at 1), and Plaintiffs' assertion is wholly unsupported by the plain language of WOW's Response to Congress cited by Plaintiffs, which in its entirety reads, "Customer Terms of Service and Internet Privacy Policy (see attached excerpts) specifically describing the use of tailored Internet advertising accompanied by opt out exercise instructions have been historically provided to WOW's HSD customers as a condition to installation and ongoing service (in addition, customers are periodically referred to this same information online" (WOW RTC at 4 § 6.A).

Plaintiffs simply cannot evade a finding of consent through silence. WOW provided numerous forms of notification. Plaintiffs have never denied receiving such notification, and indeed have previously alleged the form and timing of such notifications. Plaintiffs have also never alleged that they opted out. Nor have they denied that the notifications WOW provided contained the language excerpted in WOW's Response to Congress. Therefore, the Court should dismiss Plaintiffs' ECPA claim based on their consent to any alleged interception.

**B.** **The Court May Properly Consider WOW's Response To Congress On A Motion To Dismiss.**

Plaintiffs' sudden attempts to distance themselves from a document they cited and relied upon for years are transparent, legally flawed, and ultimately meritless.[6] This Court can properly consider WOW's Response to Congress (a document submitted under oath to Congress by WOW's General Counsel) on a motion to dismiss. As Plaintiffs and the Court[7] correctly note, "[a] document offered with a motion to dismiss may be considered if referred to in the complaint, central to a plaintiff's claims, and 'concededly authentic.'" (Opp. at 10 (citing *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).)

The contents of WOW's Response to Congress are referred to in the SAC. (*See* SAC ¶¶ 52, 54-59, 102 (challenging the sufficiency of the notice WOW provided to its customers).) The notices contained therein are also central to Plaintiffs' ECPA claim because, as they do not dispute, a finding of consent defeats such a claim. *Mortensen*, 2010 U.S. Dist. LEXIS 121419 at *7; *Deering*, 2011 U.S. Dist. LEXIS 51930, at *7; *Kirch*, 2011 U.S. Dist. LEXIS 92701, at *28-29; *Amati v. City of Woodstock*, 176 F.3d 952, 955 (7th Cir. 1999).

Nor do Plaintiffs dispute the authenticity of WOW's Response to Congress itself. Indeed, they cannot reasonably do so, given that their previous two complaints repeatedly quote from (*see* Dkt. Nos. 1 and 101-1 ¶¶ 14, 26, 30, 39) and paraphrase (*see id.* ¶¶ 14, 24, 26, 29, 39)

---

[6] Multiple opportunities to amend a complaint, such as those Plaintiffs have enjoyed here, typically lead to more focused and detailed amended complaints, as the parties identify the key legal issues and provide more detailed and focused pleadings related to those disputed issues. Here, Plaintiffs have cynically adopted the opposite approach by attempting to systematically remove from the SAC the details and documents relied upon in their prior complaints that establish the basis for WOW's defenses. The point of motion practice is not to allow the Plaintiffs to use the defendant's motion as a roadmap to remove critical allegations in the hope of avoiding dismissal.

[7] *See* Dkt. No. 147 at 4-5 (stating "I don't think [amendment] will harm [WOW's] motion to dismiss" and noting that the Court can consider documents that are central to the allegations or that are subject to judicial notice").

it. Rather, they argue that the exhibit "is inauthentic as to any customer notices WOW claims it contains." (Opp. at 12.) Thus, Plaintiffs concede *the authenticity of* the document itself, but challenge the *interpretation* of the notifications contained therein. In such a circumstance, the Court is not precluded from considering the document; rather, the Court is free to review and decide for itself the meaning of the document's terms. *See Menominee Indian Tribe of Wisc.*, 161 F.3d 449, 456 (7th Cir. 1998) (after properly considering treaties referred to in plaintiffs' complaint, court interpreted their terms).

As established above, Plaintiffs' reference to WOW's Response to Congress in their SAC is sufficient to allow the Court to consider that document on WOW's motion to dismiss. In the alternative, because Plaintiffs cannot reasonably question the authenticity of WOW's Response to Congress, and because the document is publicly available, the document is also properly subject to judicial notice. *ABN Amro, Inc. v. Capital Int'l Ltd.*, No. 04-C-3123, 2007 U.S. Dist. LEXIS 19601, at *25 (N.D. Ill. Mar. 16, 2007).

## III.    CONCLUSION

As Plaintiffs' own authority regarding the consideration of outside documents on a motion to dismiss recognizes, "[a]t a practical level the exception doubtless reflects the pressure on judges in a busy court to dispose of meritless cases at the earlier opportunity." *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002). Plaintiffs, recognizing that WOW's Response to Congress is fatal to their ECPA claim, seek to forestall the Court's consideration of its contents. This serves no purpose other than to delay the inevitable finding that Plaintiffs, by continuing to use WOW's Internet services, impliedly consented to any interception. Moreover, even without considering WOW's Response to Congress, this Court can dismiss Plaintiffs' ECPA claim against WOW, because they do not allege that WOW ever acquired the contents of any

-13-

communication.  Accordingly, WOW respectfully requests that the Court dismiss Plaintiffs'

SAC without leave to amend.


Dated:  July 20, 2012                          Respectfully submitted,


                                        _____/s/ *Thomas A. Counts*_____
                                        Thomas A. Counts (*Pro Hac Vice*)
                                        Bar Registration No. CA 148051
                                        PAUL HASTINGS LLP
                                        55 Second Street
                                        Twenty-Fourth Floor
                                        San Francisco, CA  94105
                                        Telephone:  (415) 856-7000
                                        Facsimile:  (415) 856-7100

                                        Counsel for Defendant
                                        WIDEOPENWEST FINANCE, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on July 20, 2012, I electronically filed the foregoing DEFENDANT WIDEOPENWEST FINANCE, LLC'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following attorneys for Plaintiffs and their e-mail addresses on file with the Court.

Michael J. Aschenbrener, Esq.
ASCHENBRENER LAW, P.C.
10 South Riverside Plaza, Suite 1800
Chicago, IL 60606
Telephone: (312) 462-4922
Facsimile: (312) 462-4923
Email: mja@aschenbrenerlaw.com

Scott A. Kamber, Esq. (*pro hac vice*)
David A. Stampley, Esq. (*pro hac vice*)
Grace E. Parasmo, Esq. (*pro hac vice*)
KAMBERLAW, LLC
100 Wall Street, 23rd Floor
New York, NY 10005
Telephone: (212) 920-3072
Facsimile: (212) 920-3081
Email: skamber@kamberlaw.com;
dstampley@kamberlaw.com;
gparasmo@kamberlaw.com

Brian Panish, Esq. (*pro hac vice*)
Rahul Ravipudi, Esq. (*pro hac vice*)
Panish, Shea & Boyle, LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, CA 90025
Telephone: (310) 477-1700
Facsimile: (310) 477-1699
Email: panish@psblaw.com;
ravipudi@psblaw.com

The following non-CM/ECF participant (counsel for Plaintiffs) will be served by United States Postal Service, Certified Mail/Return Receipt via First Class Mail, postage prepaid, as follows:

Joseph H. Malley, Esq. (*pro hac vice*)
Law Office of Joseph H. Malley, P.C.
1045 North Zang Boulevard
Dallas, TX 75208
Telephone: (214) 943-6100
Facsimile: (214) 943-6170
Email: malleylaw@gmail.com

/s/ *Thomas A. Counts*
Thomas A. Counts

Counsel for Defendant
WIDEOPENWEST FINANCE, LLC