**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DAN VALENTINE and W. BRAND BOBOSKY, individually and (proposed) behalf of themselves and all others similarly situated, ) ) ) ) ) | No. 09 C 7653 |
| Plaintiffs, ) ) | |
| v. ) ) | Judge Edmond E. Chang |
| WIDEOPEN WEST FINANCE, LLC, ) ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Dan Valentine and W. Brand Bobosky bring this proposed class action against their Internet service provider (ISP), Defendant WideOpen West Finance, LLC (which does business as WOW!, but the opinion will lower the volume and drop the exclamation point), alleging that WOW intercepted their electronic communications in violation of the Electronic Communications Privacy Act (ECPA), 18 U.S.C. § 2510 *et seq.*[1] Specifically, Plaintiffs allege that WOW contracted with NebuAd, Inc., a third-party advertising service, to divert WOW's customers' Internet communications to a NebuAd device installed on WOW's network. NebuAd then used this information to serve targeted advertisements to WOW's customers. Plaintiffs allege that WOW's diversion of their electronic communications without their consent constitutes a direct violation of §§ 2511(1)(a), 2511(1)(c), and 2511(1)(d) of the ECPA. In the alternative, Plaintiffs allege that WOW and NebuAd acted jointly and severally to intercept

---

[1]Jurisdiction is proper under 28 U.S.C. § 1331.

Plaintiffs' electronic communications in violation of the ECPA. WOW now moves to dismiss Plaintiffs' second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), as well as to strike the class allegations under Federal Rule of Civil Procedure 23(d)(1)(D). For the following reasons, WOW's motion to dismiss [R. 136] is granted as to the § 2511(1)(a) interception claim, but the parties have not addressed the disclosure and use claims under, respectively, §§ 2511(1)(c) and (d). WOW's motion to strike Plaintiffs' class allegations [R. 139] is denied.

## I. Background

In evaluating a motion to dismiss, the Court must accept as true the complaint's factual allegations and draw reasonable inferences in the Plaintiffs' favor. *Ashcroft v. al-Kidd*, ––– U.S. –––, 131 S. Ct. 2074, 2079 (2011). Plaintiffs Dan Valentine and W. Brand Bobosky are Illinois residents who contracted with WOW to receive Internet service. R. 135, 2d Am. Compl. ¶¶ 13, 14. WOW is a commercial provider of high-speed, broadband Internet services to over 300,000 customers in several major metropolitan areas in Illinois, Indiana, Michigan, and Ohio. *Id.* ¶ 15. Plaintiffs allege that, in around late 2007, WOW entered into an agreement with NebuAd, Inc., a company that serves targeted online advertisements. *Id.* ¶ 25. The agreement required WOW to license and install a NebuAd Ultra-Transparent Appliance in each of WOW's broadband network facility locations, a process which WOW completed by early March 2008. *Id.* ¶¶ 26, 32. WOW diverted its customers' Internet traffic—including their navigation activity, file downloads, email messages, instant messages, and certain voice-over-Internet-protocol conversations—to the Appliance, which allowed NebuAd to access and analyze the

2

information to serve targeted advertisements to WOW customers. *Id.* ¶¶ 45, 93. In exchange, WOW received monthly payments from NebuAd for ongoing access to its customers' information. *Id.* ¶ 7. Plaintiffs, who claim to be WOW customers whose communications were intercepted pursuant to WOW's agreement with NebuAd, brought this proposed class action against WOW, alleging that WOW's interception of customers' electronic communications violated § 2511(1)(a) of the ECPA. *Id.* ¶¶ 12, 87, 88, 107. As discussed later, Plaintiffs also allege that WOW disclosed and used their electronic communications to NebuAd in violation of § 2511(1)(c) and § 2511(1)(d) of the ECPA. *Id.* ¶¶ 48, 52, 56, 58, 59, 64(i), 64(j), 89 (citing 2511(1)(c)), 92, 95, 98 (those preceding paragraphs all allege disclosure); *id.* ¶ 107 (citing 2511(1)(d), use).

By way of background, this lawsuit originates from a proposed class action filed by Plaintiff Valentine and others in the United States District Court for the Northern District of California in November 2008. R. 137, Def.'s Br. at 2. In that proceeding, Plaintiffs sued WOW and five other ISPs who had contracted with NebuAd, claiming that the ISPs had violated the ECPA by installing hardware on their network facilities that intercepted their online communications. *Id.* at 3. In October 2008, the ISPs were dismissed for lack of personal jurisdiction, forcing the Plaintiffs to file individual actions against each of the six ISPs in various federal courts. *Id.*; *see also Valentine v. NebuAd, Inc.*, No. 08-5113, 2009 WL 8186130, at *1 (N.D. Cal. Oct. 6, 2009). In this District, Valentine brought the present lawsuit against WOW in December 2009, asserting seven claims under both federal and Illinois state law. Def.'s Br. at 3. In April 2011, this Court determined that the six non-ECPA claims were subject to WOW's

3

mandatory arbitration clause, and stayed the ECPA claim pending the resolution of the arbitration. *Id.* Plaintiffs subsequently announced their intent to abandon the arbitrable claims and to proceed solely on the ECPA claim. *Id.* This Court thus dismissed the arbitrable claims and allowed Plaintiffs to file the present second amended complaint. *Id.*

## II. Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation and citation omitted). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555-56); *McGowan v. Hulick*, 612 F.3d 636, 638 (7th Cir. 2010) (courts accept factual allegations as true and draw all reasonable inferences in plaintiff's favor). "[A]

4

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

### III. Analysis

WOW advances two theories in support of its motion to dismiss. First, WOW contends that Plaintiffs failed to plead a valid interception claim under the ECPA because they do not allege that WOW actually acquired the contents of any customer communications. Second, and in the alternative, WOW asserts that Plaintiffs consented to any interception of their Internet activity. The Court addresses each of these arguments in turn.

### A. Interception & Secondary Liability

WOW first contends that Plaintiffs' second amended complaint must be dismissed because Plaintiffs have failed to plead a valid ECPA claim. Specifically, WOW asserts that Plaintiffs' complaint must fail because they do not allege that WOW ever acquired the contents of any intercepted communications. R. 136, Def.'s Mot. Dismiss at 1. The ECPA, which amended the Federal Wiretap Act of 1968, 18 U.S.C. § 2510 *et seq.*, was designed to "protect against the unauthorized interception of electronic communications." *Ameritech Corp. v. McCann*, 297 F.3d 582, 583 (7th Cir. 2002). Plaintiffs allege that WOW intentionally intercepted and diverted their Internet

5

communications to the NebuAd Appliance in violation of § 2511(1)(a) of the ECPA, which prohibits the intentional interception of any electronic communication. 2d Am. Compl. ¶ 87; *see also* 18 U.S.C. § 2511(1)(a).

The only issue in dispute is whether Plaintiffs have sufficiently pled that WOW "intercepted" their electronic communications within the meaning of the ECPA. The ECPA defines "intercept" as the "aural or other *acquisition* of the contents of any . . . electronic . . . communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4) (emphasis added). "Contents" include "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8).

WOW contends that because Plaintiffs have not alleged that WOW itself acquired the contents of Plaintiffs' communications, they have failed to state a valid claim under 18 U.S.C. § 2511(1)(a). Def.'s Br. at 12. To make out a valid interception claim under the ECPA, a plaintiff must allege that the defendant "acqui[red]" the contents of his or her electronic communications. § 2510(4) (defining interception as "acquisition"); *see, e.g.*, *Kirch v. Embarq Mgmt. Co.*, 2011 WL 3651359, at *6 (D. Kan. Aug. 19, 2011). In *Kirch,* the district court granted summary judgment for the defendant ISP where the plaintiff had failed to plead that the ISP had actually acquired the plaintiff's electronic communications. *Id.* Like this case, *Kirch* was an ECPA action brought against an ISP for diverting its customers' Internet communications through the NebuAd Appliance. There, the court noted that although the term "acquisition" is not defined in the ECPA, "to acquire" commonly means "to

6

come into possession, control, or power of disposal." *Id.* Thus, the court reasoned that in order to "intercept" a communication, one must come into possession or control of its contents. *Id.* Because there was nothing in the record alleging that the ISP itself had acquired the contents of any communications, the defendant could not have intercepted the communications within the meaning of the ECPA. *Id.*

Here, the Plaintiffs have not alleged sufficient facts to support a valid ECPA interception claim. The complaint asserts that "[t]he scope of WOW's *wholesale acquisition* of Internet traffic and diversion of that traffic to the Appliance encompassed all of Plaintiffs' and Class Members' web navigation activity and other Internet transactions," 2d Am. Compl. ¶ 45 (emphasis added), and that the "Defendant's network facility resources together with the Appliance were devices used *to acquire the 'contents' of communications* . . . in that Defendant used its network facility resources and the Appliance to divert and transfer the substance, purport, and meaning of the communications to the Appliance." *Id.* ¶ 78 (emphasis added). Although these assertions contain the proper buzzwords, they are mere legal conclusions that do not count as *factual* allegations. *See Iqbal*, 556 U.S. at 678-79 ("Although for purposes of a motion to dismiss [the court] must take all of the factual allegations in the complaint as true, [courts] are not bound to accept as true a legal conclusion couched as a factual allegation.") (internal citations and quotations omitted). Here, setting aside the legal conclusions, the *facts* that Plaintiffs allege in detailing the nature of WOW and NebuAd's relationship, recited above, make it clear from the face of the complaint that WOW merely facilitated *NebuAd*'s acquisition of Plaintiffs' information. Yes,

7

WOW diverted the communications to NebuAd, but it was NebuAd that actually acquired the communications in the sense of the statute, meaning it was NebuAd that actually accessed the communications when it analyzed them to fashion targeted ads. *Id.* ¶¶ 45, 93. Because the complaint does not adequately allege that WOW acquired Plaintiffs' electronic communications, Plaintiffs have failed to state a claim for direct ECPA liability under 18 U.S.C. § 2511(1)(a).

In the absence of sufficient factual allegations to support a *direct* liability claim under § 2511(1)(a), the next question is whether there is some other basis for ECPA liability—namely, whether the complaint supports some form of *secondary* liability against WOW. As a general matter, courts have declined to find a private cause of action against those who aid and abet or conspire with others to intercept, disclose, or use electronic communications in violation of the ECPA. *See, e.g., Doe v. GTE* Corp., 347 F.3d 655, 658-69 (7th Cir. 2003); *Freeman v. DirecTV*, 457 F.3d 1001, 1004 (9th Cir. 2006); *Kirch*, 2011 WL 3651359, at *7; *In re Toys R Us Privacy Litigation*, 2001 WL 34517252, at *7 (N.D. Cal. Oct. 9, 2001). This is because federal courts normally refrain from creating secondary liability that is not specified by Congress in the statute's text. *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 184 (1994). Although a statute's structure may show that secondary liability has been established implicitly, *see Boim v. Quranic Literacy Institute*, 291 F.3d 1000, 1019-1020 (7th Cir. 2002), the Seventh Circuit has declined to read 18 U.S.C. § 2511 in that way, *Doe*, 347 F.3d at 659. 18 U.S.C. § 2511(1)(a) criminally punishes anyone who "intentionally intercepts, endeavors to intercept, or procures any other person to

8

intercept or endeavor to intercept, any . . . electronic communication." The civil provision of the ECPA provides that "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity . . . which engaged in that violation." 18 U.S.C. § 2520(a). These provisions do not explicitly impose secondary civil liability on those who conspire with or aid and abet others in intercepting electronic communications.[2] Nor does a structural reading of the ECPA implicitly establish secondary liability. Because "[a] statute that is this precise about who, other than the primary interceptor, can be liable, should not be read to create a penumbra of additional but unspecified liability," *Doe*, 347 F.3d at 659, this Court declines to read

---

[2] In criminal cases, conspiracy and aiding-and-abetting liability are generally created by 18 U.S.C. § 371 and 18 U.S.C. § 2, respectively, for Title 18 offenses.

a private cause of action for secondary liability into the ECPA.[3] Accordingly, WOW's motion to dismiss is granted as to the interception claim under 18 U.S.C. § 2511(1)(a).

The question remains, however, on what to do with Plaintiffs' claims under 18 U.S.C. §§ 2511(1)(c) (disclosure of communications) and (d) (use of communications). Plaintiffs do allege in the second amended complaint that WOW illegally disclosed and used their electronic communications in violation of §§ 2511(1)(c) and (d). 2d Am. Compl. ¶¶ 48, 52, 56, 58, 59, 64(i), 64(j), 89 (citing 2511(1)(c)), 92, 95, 98, 107. But neither party appears to have addressed these claims in their briefs. On the one hand,

---

[3]The Court notes that the Fifth Circuit in *Peavy v. WFAA-TV*, 221 F.3d 158 (5th Cir. 2000), arrived at the same conclusion by comparing the textual differences between the criminal and civil provisions of the ECPA. 18 U.S.C. §§ 2511(1)(a) (criminal), 2520(a) (civil). *Peavy* reasoned that because the "procures any other person to intercept . . ." language had been amended out of the civil provision but not the criminal provision of the ECPA, Congress must have intended to limit the class of persons who may be held civilly liable under the ECPA. *Peavy*, 221 F.3d at 169. *Peavy* thus held that § 2511(1)(a)'s prohibition on the procurement of interceptions can only be enforced in criminal proceedings. *Id.* at 169.

Although this Court agrees with the ultimate holding of *Peavy* (that is, there is no secondary civil liability under the ECPA), this Court does not rely on the combination of the presence of the "procures" language in § 2511(1)(a) and its absence in § 2520(a). Indeed, in the Court's view, the text of § 2520(a) actually does authorize civil actions against those who "procure" a banned interception. Section 2511(1)(a) imposes liability on anyone who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any . . . electronic communication." 18 U.S.C. § 2511(1)(a). Section 2520 permits "any person whose . . . electronic communication is intercepted, disclosed, or intentionally used *in violation of this chapter*" to pursue a civil action against "the person or entity, other than the United States, *which engaged in that violation.*" 18 U.S.C. 2520 (emphases added). The first part of the provision describes the *plaintiff* in the civil ECPA suit (namely, any person whose communication is intercepted, disclosed or used); that first half does nothing to limit who may be sued as a *defendant* under § 2520. It is the second part of the provision that describes the defendant (namely, the person or entity which engaged in that violation). The procurer of an interception has indeed engaged in a violation of § 2511(a), and may thus be sued by the person whose communication was intercepted. This interpretation also makes sense because the procurer of a violation—the one who brings about the violation— is not secondarily liable as that term is usually understood; the procurer is the *principal*, not the merely secondary actor.

10

WOW does not seem to mention those liability theories in its motion to dismiss or its reply brief; on the other hand, Plaintiffs do not mention in their response that those liability theories must survive because WOW did not challenge those theories. On the third hand, perhaps the parties assumed that the decision on the interception liability theory would control the decision on the other two. In any event, in advance of the next status hearing, the parties shall file concise position papers on this topic: first, on or before December 28, 2013, Plaintiffs shall file a position paper stating whether Plaintiffs wish to pursue §§ 2511(1)(c) and (d) claims, and if so, what Plaintiffs propose as the next step in the litigation. On or before January 10, 2013, WOW shall file a responsive paper setting forth its position.

### B. Consent to Interception

WOW argues in the alternative that dismissal of Plaintiffs' § 2511(1)(a) claim is warranted because Plaintiffs consented to the interception of their Internet communications. Specifically, WOW contends that it conditioned its service on the use of third-party advertising, which was made explicit in its Terms of Service. Def.'s Br. at 13. Moreover, WOW claims that it separately notified customers of its deployment of the NebuAd service and gave customers an opportunity to opt out. *Id.* at 13-14. WOW asserts that Plaintiffs' failure to opt out and continued use of WOW's services amounted to consent that serves as a bar to ECPA liability. Although the Court has already held that dismissal of the § 2511(1)(a) interception claim is warranted under

11

Rule 12(b)(6), for the sake of completeness (and because the status of the disclosure and use claims is unclear), the Court will address the consent argument.

WOW is correct that consent is an exception to ECPA liability. *See* 18 U.S.C. § 2511(2)(d). However, consent is an affirmative defense to an ECPA claim that need not be anticipated by Plaintiffs in the pleadings. *Doe v. Smith*, 429 F.3d 706, 709 (7th Cir. 2005) (noting that one participant had obviously consented to the recording, but that does not justify dismissing the suit at the motion to dismiss stage because "[c]omplaints need not anticipate or attempt to defuse potential defenses."). Here, discovery might very well reveal that Plaintiffs did consent to NebuAd's interception, but the Court may only consider the pleadings at this stage of the litigation. Plaintiffs flatly deny receiving notice of or giving consent to the alleged interception in their complaint. 2d Am. Compl. ¶¶ 54-59. And because the Court must accept as true all factual allegations contained in a complaint when evaluating a motion to dismiss, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citations omitted), a determination of consent at this time is premature.

Even if it were permissible to go beyond the pleadings at this stage, WOW's consent argument would also fail because the facts it submits in support of the motion are contestable. WOW contends that it notified its customers on three separate occasions that third-party advertisements may be used. Def.'s Br. at 13-14. WOW claims that these notices are outlined in a letter from WOW's CEO to Congressman John Dingell of the Committee on Energy and Commerce, in which WOW responded

to Congressional inquiries about its relationship with NebuAd. R. 23-1, 60-1 ("Response to Congress"). WOW contends that because this document is part of the public record and is "undisputedly authentic," the Court may take judicial notice of the fact that WOW obtained consent from its customers. Def.'s Br. at 11. This argument must be rejected. Although a court may take judicial notice of matters of public record when ruling on a motion to dismiss, *Anderson v. Simon*, 217 F.3d 472, 474 (7th Cir. 2000), it may not take judicial notice of underlying facts that may be subject to reasonable dispute. *See Ennenga v. Starns*, 677 F.3d 766, 773-74 (7th Cir. 2012); *see also Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1430 n.6 (7th Cir. 1996) (finding that the "admissions" of plaintiffs in a joint status report filed by airline were not a matter of public record of which district court could take judicial notice without converting airline's 12(b)(6) motion to dismiss into a motion for summary judgment). Here, the only fact that may be judicially noticed by the Court is the fact that WOW submitted the Response to Congress. The underlying facts asserted in the Response itself cannot be judicially noticed because they are subject to reasonable dispute. Accordingly, the Court cannot take judicial notice of Plaintiffs' alleged consent, and dismissal is not warranted on the basis of consent.

### IV. Motion to Strike Class Allegations

Because it is possible that Plaintiffs' claims under §§ 2511(1)(c) and (d) still survive, the Court will now address the merits of WOW's motion to strike the class allegations from the complaint. WOW brings a separate motion to strike Plaintiffs'

13

class allegations under Federal Rules of Civil Procedure 12(f), 23(c)(1)(A), and 23(d)(1)(D). R. 139, Mot. Strike. WOW argues that Plaintiffs' decision not to pursue the six non-ECPA claims in arbitration constitutes impermissible claim-splitting, and precludes the absent members from being able to pursue these claims in the future under the doctrine of res judicata (that is, claim preclusion). *Id.* at 1. WOW further asserts that striking the class allegations is warranted because Plaintiffs' interests are antagonistic to the class, and thus Plaintiffs cannot be adequate class representatives. *Id.* For the reasons explained more fully below, WOW's motion to strike Plaintiffs' class allegations is denied.

Rule 23(c)(1)(A) provides that the court, "[a]t an early practicable time . . . must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). Rule 23(d)(1)(D) provides that, "[i]n conducting an action under this rule, the court may issue orders that . . . require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1)(D). Courts in this district have held that a motion to strike class allegations, made pursuant to these provisions, can be an appropriate device to determine whether a case will proceed as a class action. *See, e.g.*, *Muehlbauer v. General Motors Corp.*, 431 F.Supp.2d 847, 870 (N.D. Ill. 2006). Moreover, in the right circumstances, such motions may properly be filed before plaintiffs move for class certification and before class discovery has been conducted. *See, e.g.*, *Wright v. Family Dollar, Inc.*, 2010 WL 4962838, at *1 (N.D. Ill. Nov. 30, 2010) ("[G]iven that Rule

14

23(c)(1)(A) instructs courts to determine whether a class may be certified '[a]t an early practicable time,' courts may—and should—address the plaintiff's class allegations when the pleadings are facially defective and definitively establish that a class action cannot be maintained."); *Bd. of Educ. of Tp. High Sch. v. Climatemp, Inc.*, 1981 WL 2033, at *2, *5 (N.D. Ill. Feb. 20, 1981) (rejecting plaintiff's argument that it would be procedurally improper to entertain defendant's motion to strike class action allegations prior to a motion by plaintiff to certify class).

The standard for evaluating whether class allegations should be stricken is the same as that for class certification, and is laid out in Rule 23(a). Under Rule 23(a), class certification is not warranted unless the named plaintiff satisfies four requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a); *see also Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). Here, the only issue in dispute (at this stage) is whether Plaintiffs meet the fourth requirement of adequacy.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement is satisfied where the named representative (1) has retained competent counsel; (2) has a sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) does not have interests antagonistic to those of the class. *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 480 (N.D. Ill. 2009) (internal citations omitted). Here, WOW argues that Plaintiffs' class allegations must be stricken because their interests are antagonistic

15

to those of the class. Specifically, WOW contends that Plaintiffs' decision to forgo the six non-ECPA claims constitutes "claim-splitting," and precludes the absent class members from later pursuing these claims under the doctrine of claim preclusion. R. 140 at 5. This, WOW argues, creates a conflict of interest with the putative class, and renders Plaintiffs unable to serve as adequate class representatives.

Not so. Plaintiffs' decision not to pursue the six arbitrable claims has no bearing on their ability to represent the class for three independent reasons: First, Plaintiffs have not engaged in impermissible claim-splitting. Second, even if they did, there is a class action exception in the rule against claim-splitting. And finally, even if the class action exception does not apply, claim preclusion simply does not attach to the proposed class members' non-ECPA claims.

WOW mistakenly characterizes Plaintiffs' decision to abandon the non-ECPA claims as claim-splitting. Under the rule against claim-splitting, a plaintiff must allege in one proceeding all claims for relief arising out of a single nucleus of operative facts, or be precluded from raising those claims in the future. *Shaver v. F.W. Woolworth Co.*, 840 F.2d 1361, 1365 (7th Cir. 1988). Here, there is no question that all seven of Plaintiffs' original claims arose from the same nucleus of operative facts. But Plaintiffs have not impermissibly split their claims because they are not reserving the non-ECPA claims for a later *court* proceeding. Rather, Plaintiffs are simply abandoning their non-ECPA claims and pursuing the ECPA claim exclusively in federal court. Accordingly, the rule against claim-splitting does not apply to Plaintiffs in this case.

Second, as Plaintiffs point out in their response brief, "the doctrine of claim splitting generally does not apply to class actions." *Makor Issues & Rights v. Tellabs, Inc.*, 256 F.R.D. 586, 597 (N.D. Ill. 2009) (internal citations omitted). This is because class actions inherently involve the representation of unnamed class members in abstentia and without notice, which limits both the claims that can be subject to class treatment as well as the the types of recovery available. *Id.* (internal citations omitted) Because of the "special nature of class actions," the rule against claim-splitting does not apply to class actions, *id.*, and parties remain able to pursue separately those claims that could not be adjudicated within the class action, including those that arise from the same nucleus of operative facts. The logic behind this class-action exception is grounded in § 26(1)(c) of the Second Restatement of Judgments, which describes the exceptions to the general rule against claim splitting. *See id.* Section 26(1)(c) states that the rule against claim-splitting does not apply to extinguish a subsequent claim when

> [t]he plaintiff [is] unable to rely on a certain theory of the case or seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain multiple theories or demands for multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action to rely on that theory or seek that remedy or form of relief . . . .

Restatement (2d) of Judgments § 26(1)(c) (1982).

The same logic that animates § 26(1)(c) is applicable here. Plaintiffs originally brought all seven of their claims against WOW in federal court. However, because

17

WOW's Terms of Service contains an arbitration clause that subjects six of the Plaintiffs' claims to mandatory arbitration, this Court granted WOW's motion to compel arbitration of the six non-ECPA claims. *See generally* R. 123. Thus, Plaintiffs did not "split" their claims, because this Court, under the Federal Arbitration Act and WOW's arbitration agreement, was unable to entertain Plaintiffs' other theories of relief in the same action. Accordingly, under the class-action exception to the rule against claim-splitting, Plaintiffs and class members are not precluded from pursuing those remaining claims in a separate action down the road.

Third, even if the class-action exception does not apply, WOW is simply incorrect that Plaintiffs' decision to forgo the non-ECPA claims triggers claim-preclusion effects on the absent class members. As a threshold matter, claim-preclusion attaches in class actions only once a class has been certified, *Smith v. Bayer Corp.*, —— U.S. ——, 131 S. Ct. 2368, 2376 (2011), and any action taken by the named plaintiffs before class certification does not have preclusive effects on the rest of the class. Here, because Plaintiffs abandoned their non-ECPA claims before class certification, claim preclusion has not yet attached and the absent class members are not precluded from pursuing these claims later in a separate action.

Moreover, claim preclusion is simply inapplicable to the situation at hand. WOW contends that by not pursuing their non-ECPA claims in arbitration, the Plaintiffs have precluded the remaining class members from litigating those claims in any future proceeding. WOW mis-applies claim preclusion on two fronts: First, claim preclusion

only prevents parties from re-litigating claims that were or *could have been litigated* during an earlier proceeding. *Hayes v. City of Chicago*, 670 F.3d 810, 813 (7th Cir. 2012) (internal citations omitted) (emphasis added). It does not operate to preclude a second suit that is based on a claim that could not have been asserted in the first suit. *Alvear-Velez v. Mukasey*, 540 F.3d 672, 678 (7th Cir. 2008). As explained above, the non-ECPA claims could not have been litigated in the present proceeding because of WOW's arbitration agreement. Second, even if Plaintiffs had gone ahead with the arbitration, WOW's arbitration clause prohibits Plaintiffs from pursuing the six non-ECPA claims as a class claim. *See* R. 72-1, WOW Terms of Service (prohibiting class claims in arbitration). Because Plaintiffs could not have pursued their non-ECPA claims in a class arbitration anyway, it does not matter, for purposes of claim preclusion, whether Plaintiffs chose to abandon them here. If the absent class members decide at some point in the future to pursue the non-ECPA claims, they would have to arbitrate those claims separately and individually anyway. Accordingly, Plaintiffs' decision to abandon the six arbitrable claims has no claim preclusion effect on the absent class members, and WOW's motion to strike Plaintiffs' class allegations is denied.

## V. Conclusion

For the reasons stated above, WOW's motion to dismiss [R. 136] is granted as to the interception claim under 18 U.S.C. § 2511(1)(a). WOW's motion to strike class allegations [R. 139] is denied.

As discussed above, Plaintiffs shall file a position paper on the §§ 2511(1)(c) and (d) claims on or before December 28, 2012. WOW shall file a response by January 10, 2013, and the next status hearing will be held on January 24, 2013, at 10:30 a.m.

ENTERED:

*Edmond E. Chang*
_____
Honorable Edmond E. Chang
United States District Judge

DATE: December 20, 2012