**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| DAN VALENTINE, *et al*., | ) | |
| Plaintiffs, | ) | No. 09 C 7653 |
| v. | ) | The Hon. Edmond E. Chang |
| WIDEOPEN WEST FINANCE, LLC, | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION PURSUANT TO RULE 54(b) FOR RECONSIDERATION OF DISMISSAL OF 18 U.S.C § 2511(1)(a) CLAIMS**

## TABLE OF CONTENTS


**TABLE OF AUTHORITIES** .......... iii

**I. INTRODUCTION** .......... 1

**II. BACKGROUND** .......... 2

**III. ARGUMENT** .......... 3

**A. The Court Has Authority to Reconsider its Decision** .......... 3

**B. The Finding that WOW did not Acquire the Contents of Communications within the Meaning of the ECPA was in Error** .......... 5

1. Acquisition of a Communication Constitutes Acquisition of its Contents .......... 5

2. A Communication Need Not Be Read or Heard to Be Acquired .......... 6

3. Subsequent Reading or Listening by Another Does Not Relieve the Acquirer of Liability .......... 8

4. WOW and NebuAd Acquired Communications .......... 9

**C. The Conclusion that WOW did not Violate the ECPA Interception Prohibition was in Error** .......... 10

**IV. CONCLUSION** .......... 11

# TABLE OF AUTHORITIES

## Cases

*Amati v. City of Woodstock*, 829 F.Supp. 998 (N.D. Ill. 1993) .......... 6, 7

*Arizona v. California*, 460 U.S. 605 (1983) .......... 4

*Ashcroft v. Iqbal*, 556 U.S. 556 U.S. 662 (2009) .......... 2, 10

*Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185 (7th Cir.1990) .......... 4

*Berger v. New York*, 388 U.S. 41 (1967) .......... 8

*Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264 (7th Cir. 1996) .......... 4

*Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800 (1988) .......... 4

*Galvan v. Norberg*, 678 F.3d 581 (7th Cir. 2012) .......... 3

*Hall v. Earthlink*, 396 F.3d 500 (2d Cir. 1995) .......... 5, 6

*Hepting v. AT&T Corp.*, 439 F.Supp.2d 974 (N.D. Cal. 2006) .......... 8

*In Re Innovatio IP Ventures, LLC Patent Litig.*, 2012 WL 3594400 (N.D. Ill. Aug. 22, 2012) 6, 7

*Jacobson v. Rose*, 592 F.2d 515 (9th Cir. 1978) .......... 7, 8

*Katz v. U.S.*, 389 U.S. 347 (1967) .......... 9

*Keene Corp. v. Int'l Fidelity Ins. Co.*, 561 F.Supp. 656 (N.D. Ill. 1982) .......... 4

*Kirch v. Embarq*, 2011 WL 3651359 (D. Kan. 2011) .......... 9

*Kirch v. Embarq*, 702 F.3d 1245 (10th Cir. Dec. 28, 2012) .......... 10

*Marconi Wireless v. U.S.*, 320 U.S. 1, 47-48 (1943) .......... 3

*Menda Biton v. Menda*, 812 F.Supp. 283 (D.P.R. 1993) .......... 9

*Minch v. City of Chicago*, 486 F.3d 294 (7th Cir. 2007) .......... 3

*Noel v. Hall*, 568 F.3d 743 (9th Cir. 2009) .......... 5

*Pickett v. Prince*, 207 F.3d 402 (7th Cir. 2000) .......... 3

*U.S. v. Kazarian*, 2012 WL 1810214 (S.D.N.Y. May 18, 2012) .......... 8

*U.S. v. Lewis*, 406 F. 3d 11 (1st Cir. 2005) .......... 8

*U.S. v. Nelson*, 837 F.2d 1519 (11th Cir.) .......... 7

U.S. v. Rodriguez, 968 F.2d 130 (2d Cir. 1992) .......... 5, 6, 8, 11

*U.S. v. Szymuszkiewicz*, 2009 WL 1873657 (E.D. Wisc. 2009) .......... 5, 7

*U.S. v. Turk*, 526 F.2d 654 (5th Cir.) .......... 7

*Wiegel v. Stork Craft Mfg., Inc.*, 2012 WL 2130910 (N.D. Ill. June 6, 2012) .......... 4

**Statutes**

18 U.S.C. § 2510 (2)(d) .......... 11

18 U.S.C. § 2510, *et seq.* .......... *passim*

18 U.S.C. § 2510(2)(a)(i) .......... 11

18 U.S.C. § 2510(4) .......... 5

18 U.S.C. § 2510(5)(a)(ii) .......... 10

18 U.S.C. § 2510(8). .......... 5

18 U.S.C. section 2511(1)(a) .......... *passim*

**Rules**

Fed. R. Civ. P. 54(b) .......... 3

## I. INTRODUCTION

Plaintiffs respectfully urge this Court to reconsider its order dismissing Plaintiffs' claims against WOW under the ECPA's interception prong, 18 U.S.C. section 2511(1)(a). [R. 157] In dismissing the claims, the Court found that "WOW diverted the communications to NebuAd, but it was NebuAd that actually acquired the communications in the sense of the statute, meaning it was NebuAd that actually accessed the communications when it analyzed them to fashion targeted ads." [R. 157 at 7-8]

As detailed in the argument below, this finding is not supported as a matter of law under the ECPA, under which the capture or redirection of a communication constitutes acquisition and interception of its contents, whether or not the communication is "accessed" by reading it or listening to it. Further, the Court's finding was not argued by WOW in its motion to dismiss.

Accordingly, Plaintiffs respectfully submit that the Court's holding that WOW did not acquire the contents of Plaintiffs' and Class Members' communications and did not violate section 2511(1)(a) by intercepting their communications constituted misapprehensions of the record and manifest errors of law, and Plaintiffs request that the Court reconsider the dismissal decision.

This Court is authorized under Rule 54(b) to grant the relief requested, which is vital to Plaintiffs' and Class Members' interests of justice. In addition, the interests of justice would be served because the novel and complex factual and legal issues in this case, arising under an important federal statute, will arise in future cases. The dispositions of those cases will be affected by the precedential and persuasive value of the decision here. For these reasons and the compelling reasons articulated below, Plaintiffs pray that this Court grant the relief requested and reconsider its dismissal of their section 2511(1)(a) interception claims against WOW.

## II. BACKGROUND

In the Court's December 12, 2012 opinion and order in this matter [R. 157], WOW's motion to dismiss [R. 138] was granted as to Plaintiffs' interception claims under 18 U.S.C. § 2511(1)(a) in their second amended complaint. [R. 136] No judgment was entered. The Court stated in its memorandum and order:

> Here, the Plaintiffs have not alleged sufficient facts to support a valid ECPA interception claim. The complaint asserts that "[t]he scope of *WOWs wholesale acquisition* of Internet traffic and diversion of that traffic to the Appliance encompassed all of Plaintiffs' and Class Members' web navigation activity and other Internet transactions," 2d Am. Compl. ¶ 45 (emphasis added), and that the "Defendant's network facility resources together with the Appliance were devices used *to acquire the 'contents' of communications* . . . in that Defendant used its network facility resources and the Appliance to divert and transfer the substance, purport, and meaning of the communications to the Appliance." *Id.* ¶ 78 (emphasis added). Although these assertions contain the proper buzzwords, they are mere legal conclusions that do not count as *factual* allegations. *See Iqbal,* 556 U.S. at 678-79 ("Although for purposes of a motion to dismiss [the court] must take all of the factual allegations in the complaint as true, [courts] are not bound to accept as true a legal conclusion couched as a factual allegation.") (internal citations and quotations omitted). Here, setting aside the legal conclusions, the *facts* that Plaintiffs allege in detailing the nature of WOW and NebuAd's relationship, recited above, make it clear from the face of the complaint that WOW merely facilitated *NebuAd's* acquisition of Plaintiffs' information. Yes, WOW diverted the communications to NebuAd, but it was NebuAd that actually acquired the communications in the sense of the statute, meaning it was NebuAd that actually accessed the communications when it analyzed them to fashion targeted ads. *Id.* ¶¶ 45, 93. Because the complaint does not adequately allege that WOW acquired Plaintiffs' electronic communications, Plaintiffs have failed to state a claim for direct ECPA liability under 18 U.S.C. § 2511(1)(a) .

[R. 157 at 7-8 (emphasis in original)]

Pursuant to the order, Plaintiffs filed a statement indicating their proposals for next steps in this litigation. [R. 158] Plaintiffs' statement included the proposals that the Court entertain a motion to reconsider its dismissal and permit Plaintiffs to amend the complaint. [R. 158 at 3] Plaintiffs, upon reviewing their initial position statement [R. 158] in preparing for filing their

supplement position state as required by the Court, believe their initial proposal for reconsideration requires clarification, particularly regarding NebuAd's acquisition of Plaintiffs' and Class Members' communications. [R. 158 at 3 n.2] For this reason, and in light of the Court's finding on that issue, Plaintiffs respectfully submit this memorandum of law in support of their motion for reconsideration.

## III. ARGUMENT

### A. The Court Has Authority to Reconsider its Decision

The Federal Rules authorize a court to revise a non-final order at any time prior to a final and full adjudication in a matter:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b); *see also Marconi Wireless v. U.S.*, 320 U.S. 1, 47-48 (1943) ("the court did not lack power at any time prior to entry of its final judgment . . . to reconsider any portion of its decision and reopen any part of the case"); *Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012). Application of this rule is affected by the law of the case doctrine, which is "highly flexible, especially when a judge is being asked to reconsider his own ruling." *Pickett v. Prince*, 207 F.3d 402, 407 (7th Cir. 2000).

Notwithstanding the doctrine's general presumption against reopening already decided matters, *Minch v. City of Chicago*, 486 F.3d 294, 301 (7th Cir. 2007), reconsideration is proper when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th

Cir.1990); *.cf Keene Corp. v. Int'l Fidelity Ins. Co*., 561 F.Supp. 656, 665 (N.D. Ill. 1982), *aff'd*, 736 F.2d 388 (7th Cir. 1984) ("[m]otions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence"), *quoted in Caisse Nationale de Credit Agricole v. CBI Indus., Inc*., 90 F.3d 1264, 1269 (7th Cir. 1996); *Wiegel v. Stork Craft Mfg., Inc*., 2012 WL 2130910, at *2 (N.D. Ill. June 6, 2012) (collecting cases). In addition, reconsideration is warranted where the initial decision was "clearly erroneous and would work a manifest injustice." *Christianson v. Colt Industries Operating Corp*., 486 U.S. 800, 817 (1988), quoting *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983).

The issues with which the Court framed its dismissal were not raised by WOW in the briefing on its motion to dismiss. Rather, on the issue of acquisition, WOW declined to accept the highly detailed allegations of the complaint as true and merely issued repeated, conclusory denials that it ever accessed content. It cited no relevant authority on this issue, relying only on *Kirch v. Embarq* which, as further discussed below (*see* p. 6 n.1; p. 9 n.3), focused inappositely on whether the Embarq had access to data *from* NebuAd. 2011 WL 3651359 at *6 (D. Kan. 2011). As to the Court's finding that NebuAd's analysis of communications constituted the moment of interception, the *Embarq* courts specifically declined to reach this issue, *see Kirch v. Embarq*, 702 F.3d 1245, 1249. (10th Cir. Dec. 28, 2012), and WOW did not raise it.

A court's finality concerns are "less compelling" in granting reconsideration to address a question that was not previously contested. *Arizona v. California*, 460 U.S. at 644. Given the procedural posture of the case and the points raised in argument below, the Court's exercise of its authority to reconsider is especially warranted.

**B. The Finding that WOW did not Acquire the Contents of Communications within the Meaning of the ECPA was in Error**

**1. Acquisition of a Communication Constitutes Acquisition of its Contents**

Section 2511(1)(a) of the Electronic Communications Privacy Act (the "ECPA") prohibits, *inter alia*, the intentional interception of any electronic communication. 18 U.S.C. § 2511(1)(a). The statute defines "intercept," in relevant part, as "the aural or other acquisition of the contents of any . . . electronic or oral communication through the use of any electronic, mechanical, or other device" 18 U.S.C. § 2510(4) and defines "contents" as "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8).

A party has acquired a communication's contents within the meaning of the statute when it acquires the communication. In *U.S. v. Rodriguez*, the Second Circuit explained:

> [W]hen the contents of a wire communication are captured or redirected in any way, an interception occurs at that time. Such an interception plainly occurs at or near the situs of the telephone itself, *for the contents of the conversation . . . are transmitted in one additional direction*. . . . Redirection presupposes interception.

968 F.2d 130, 136 (2d Cir. 1992) (emphasis added); *see also U.S. v. Szymuszkiewicz*, 2009 WL 1873657 at *13 (E.D. Wisc. 2009) (defendant intercepted his supervisor's e-mails at the time of their transmission when he caused them to be automatically forwarded to him); *compare Noel v. Hall*, 568 F.3d 743, 748-49 (9th Cir. 2009) (acquisition occurs "when the contents of a wire communication are captured or redirected in any way," however, acquisition of pager numbers, alone, did not constitute acquisition of communicative content), quoting *Rodriguez*, 968 F.2d at 136.

In a case in which an Internet services provider was accused of intercepting a former customer's e-mail *messages*, the Second Circuit explicitly found that the ISP acquired the contents of messages that it processed. *Hall v. Earthlink*, 396 F.3d 500, 503-04 (2d Cir. 1995) (ISP not li-

able under ECPA where messages to canceled e-mail account continued to be received and stored on its server in its ordinary course of business).[1]

The rule that capture or redirection of a communication necessarily means its contents have been acquired applies whether the ECPA is being prosecuted criminally or civilly. For example, in a patent litigation in this district, the language of *Rodriguez* was recently cited by Judge Holderman in evaluating whether a party's protocol for evidence collection would violate the Wiretap Act. *In Re Innovatio IP Ventures, LLC Patent Litig.*, 2012 WL 3594400 at *3 (N.D. Ill. Aug. 22, 2012), citing *Rodriguez*, 968 F.2d at 136; *id.* at *5 (use of wireless sniffing technology not in violation of section 2511(1)(a) where acquired communications are readily accessible to the general public).

**2. A Communication Need Not Be Read or Heard to Be Acquired**

Inasmuch as capture or redirection constitutes acquisition of the contents of communications under the ECPA, hearing or reading a communication is not necessary for acquisition to have taken place under the ECPA.

In a case arising from the recording of phone conversations, *Amati v. City of Woodstock*, 829 F.Supp. 998 (N.D. Ill. 1993), the court stated, "the term 'intercept' as it relates to an 'acquisition' refers to the place where a communication is initially obtained. Whether the communication is heard by the human ear is irrelevant." *Id.* at 1008. The court reasoned that the privacy interests protected by the ECPA are offended merely by the acquisition of contents by means of the wiretap:

---

[1] Ironically, *Hall v. Earthlink* was relied on by the Tenth Circuit in *Kirch v. Embarq*, 702 F.3d 1245, 1250-51 (10th Cir. Dec. 28, 2012). The court acknowledged the *Earthlink* court's finding that an ISP necessarily acquires the contents of communications. *Id.* at 1251 n.3. However, the court found that, because *Embarq* was not shown to have *accessed* the communications in question, its acquisition was in the ordinary course of business. *Id.* As shown by the authorities cited throughout this brief, the court's addition of an "access" element is unsupported by longstanding ECPA jurisprudence in this and other circuits.

> If a wiretap is placed on an individual's telephone and the conversation is recorded yet never listened to, the individual's conversations would be chilled if he knew of the wiretap. This would be so even if the individual was assured *no one* would listen to his conversations, because the individual's privacy interests are no longer autonomous. Rather, his privacy interests are subject to another's power. Thus, the policy interests behind the Federal Wiretapping Act are best served by the court's interpretation of "intercept."

*Id.* (emphasis in original), citing *U.S. v. Nelson*, 837 F.2d 1519, 1527 (11th Cir.), *cert. denied*, *Waldhart v. U.S.*, 488 U.S. 829 (1988); *U.S. v. Turk*, 526 F.2d 654, 658 (5th Cir.), *cert. denied*, 429 U.S. 823 (1976); *and cited in Innovatio*, 2012 WL 3594400 at *3 (N.D. Ill. Aug. 22, 2012).

In *Jacobson v. Rose*, 592 F.2d 515 (9th Cir. 1978), *cert. denied* (442 U.S. 930, 1979), the court underscored the statutory purpose of protecting privacy of the communication, not whether its interception included listening to what was intercepted. The court stated:

> When many individuals together take the steps necessary for the recording of telephone conversations, the victim's privacy is violated, regardless of which particular individuals actually listen to the tapes. Additionally, we do not believe that Congress meant to allow those tapping phones to determine the possible scope of civil liability by their limiting who among them would listen to the tapes.

*Id.* at 522 (where Nevada Bell claimed that it was not liable for wiretapping because none of its employees had listened to intercepted conversations).

Liability for redirection without reading the communication is borne out in *U.S. v. Szymuszkiewicz*, 2009 WL 1873657 (E.D. Wisc. 2009), where the defendant set up a rule on his supervisor's computer that caused her e-mail messages to be automatically forwarded to him. After a jury found defendant guilty of violations of section 2511(1)(a), the court adjudicated the defendant's post-jury-verdict challenge to sufficiency of evidence and stated, "The evidence showed that defendant intercepted Infusino's e-mails *at the time of transmission*, and via the rule he created did so in an ongoing, prospective fashion." *Id.* at 13 (emphasis added). Regarding testimony that defendant had opened the auto-forwarded messages, the court did not cite this as ev-

idence of interception but, rather, as support the jury's finding defendant possessed the requisite intent. *See id.* at *12. *See also U.S. v. Lewis*, 406 F. 3d 11, 19 n.5 (1st Cir. 2005) (collecting cases) (inmate phone conversation was intercepted when department of corrections recorded it, not when police later listened to it); *cf. U.S. v. Kazarian*, 2012 WL 1810214 at *3 (S.D.N.Y. May 18, 2012) (government has wiretap jurisdiction where tapped phone is located as well as where redirected communication contents are first heard), citing *U.S. v. Rodriguez,* 968 F.2d 130, 136 (2d Cir.1992).

### 3. Subsequent Reading or Listening by Another Does Not Relieve the Acquirer of Liability

Under the ECPA, the party that redirects a communication to facilitate another party's listening to or reading the communication does more than aid and abet, it is itself an acquirer of the communication and cannot escape liability for wiretapping by merely handing off the communication to another.

In *Hepting v. AT&T Corp.*, where plaintiffs brought claims under section 2511(1)(a) and other statutes, they alleged that AT&T facilitated the National Security Administration's interception of their communications. 439 F.Supp.2d 974, 978-79 (N.D. Cal. 2006) (decision relating to state secrets and immunity issues). Even though AT&T was not the recipient of the intercepted communications, it was AT&T's actions that the court characterized as creating a "dragnet," 439 F.Supp.2d at 1001.[2] *See also Jacobson v. Rose*, 592 F.2d at 522 ("we do not believe that Congress meant to allow those tapping phones to determine the possible scope of civil liability by

---

[2] The "dragnet" descriptor was applied to wiretapping in *Berger v. N.Y.*, when Justice Douglas stated:

> The traditional wiretap or electronic eavesdropping device constitutes a dragnet, sweeping in all conversations within its scope—without regard to the participants or the nature of the conversations. It intrudes upon the privacy of those not even suspected of crime and intercepts the most intimate of conversations.

388 U.S. 41, 65 (1967) (Douglas, J. concurring)

their limiting who among them would listen to the tapes"); *Menda Biton v. Menda*, 812 F.Supp. 283, 284-85 (D.P.R. 1993) (where defendants acted in concert, court awarded section 2520 damages based on number of acts, not number of defendants).

As evidenced by the above-cited cases, the scope of conduct considered interception includes the initial capture or redirection of a communication and ascribes liability to the persons who perform the initial capture or redirection. This is consistent with the requirement for the government to obtain a warrant not just to process wiretapped communications, but for the placement of a wiretap device itself. *See, e.g.*, *Katz v. U.S.*, 389 U.S. 347, 358-59 (1967) (warrant required for surveillance by placing wiretap on outside of phone booth).

**4. WOW and NebuAd Acquired Communications**

Despite Plaintiffs' numerous and detailed allegations and arguments asserting that WOW acquired and diverted the communications in their entirety, WOW declined to accept the highly detailed allegations of the complaint as true and merely issued repeated, conclusory denials that it ever "accessed" content. It cited no relevant authority on this issue, relying only on *Kirch v. Embarq* which, inappositely, focused on whether the Embarq had access to data *from* NebuAd. 2011 WL 3651359 at *6 (D. Kan. 2011),[3] and whether Embarq had aided and abetted NebuAd's interception. *Id.* at *6-7. As to whether NebuAd's analysis of communications constituted the moment of interception, WOW did not raise this issue, and both *Embarq* courts declined to reach it. *See Kirch v. Embarq*, 702 F.3d 1245, 1249 (10th Cir. Dec. 28, 2012). The Court, itself, citing

[3] This misdirected focus carried over to the subsequent Tenth Circuit decision in that matter, issued after this Court issued its order. In analyzing interception, the Tenth Circuit stated, "The Court agrees with Embarq that regardless of what information the NebuAd System extracted from the communications traversing through the UTA, it is undisputed that Embarq had no access to that information or to the profiles constructed from that information." *Kirch v. Embarq*, 702 F.3d 1245, 1248-49 (10th Cir. Dec. 28, 2012). Not only did the court err in neglecting the information flowing in the direction of Embarq, which first captured it, to NebuAd, but the court erred in adding an "access" element not found in the ECPA. *See* page 5 n.1, above.

*Ashcroft v. Iqbal*, 556 U.S. 556 U.S. 662, 678-79 (2009), stated that Plaintiffs' allegations regarding acquisition of content by WOW were conclusory. [R. 157 at 7]

However, Plaintiffs alleged and argued in substantial detail that WOW, in its role as a conduit providing Internet connectivity services to Plaintiffs and Class Members, acquired their communications in their entirety [*e.g.*, RR. 135 at 5, 22, 33-45, 78; 146 at 4, 6, 7] and purposefully diverted those communications [*e.g.*, RR. 135 at 29-32, 53, 79, 96; 146 at 4, 7].

In light of Plaintiffs' allegations and the authorities cited above, Plaintiffs respectfully urge that the Court undertake reconsideration and find that WOW, merely by virtue of its business function and certainly by, as the Court found, having redirected or diverted Plaintiffs' and Class Members' communications, acquired those communications within the meaning of the ECPA.[4]

**C. The Conclusion that WOW did not Violate the ECPA Interception Prohibition was in Error**

Since WOW's conduct constituted the acquisition of the contents of communications under the ECPA, the only question remaining is whether some other statutory basis precludes WOW's liability for interception. The answer is no.

Conduct is not deemed "interception" under the statute if the device used to acquire communications is "being used by a provider of wire or electronic communication service in the ordinary course of its business . . . ." 18 U.S.C. § 2510(5)(a)(ii) and is not unlawful if a service provider intercepts a communication "in the normal course of his employment while engaged in any activity which is a necessary incident to the rendition of his service . . . ." 18 U.S.C. §

[4] As noted above, p. 2, and based on the authorities cited herein, Plaintiffs wish to clarify the assertion in their Position Statement [R. 158 at 3 n.2] that NebuAd's acquisition took place post-interception. Plaintiffs' position is that, whether individually or taken together, WOW and NebuAd both engaged in interception under the ECPA.

2510(2)(a)(i). In addition, a communication may be intercepted with the consent of one of the parties to the communication. 18 U.S.C. § 2510 (2)(d).

As noted above, page 5, "Redirection presupposes interception." *Rodriguez*, 968 F.2d at 136. This Court has already found that WOW diverted Plaintiffs' and Class Members' communications to NebuAd [R. 157 at 7-8] and that it would not adjudicate WOW's claimed consent defense at this point in the litigation. [R. 157 at 12-13] Further, Plaintiffs have alleged that WOW's conduct was not undertaken in the ordinary course of business [R. 135 at ¶81] At this point in the litigation, WOW has not sought to establish that its diversion of customer communications to NebuAd instead of their intended recipient was in its ordinary course of business.

Because, manifestly, under the law and the facts of this matter, WOW acquired Plaintiffs' and Class Members' communications and diverted them to NebuAd, and because, at this point, WOW cannot or has not demonstrated any exception or defense to liability, Plaintiffs respectfully submit that it was error for the Court to conclude that Plaintiffs did not sufficiently allege a section 2511(1)(a) claim against WOW and ask for the Court's reconsideration. Plaintiffs further submit that, taking the allegations as true, such a finding is premature and that discovery will bear out in even greater detail the technical aspects of WOW's full acquisition and diversion of Plaintiffs' and Class Members' Internet communications and the lack of any basis to conclude that its conduct was anything other than illegal interception.

## IV. CONCLUSION

Wherefore, Plaintiffs pray that this Court grant the relief requested and reconsider its dismissal of their section 2511(1)(a) interception claims against WOW.

Dated: February 19, 2013

Respectfully submitted,
KAMBERLAW, LLC

By: s/David A. Stampley

David A. Stampley (*pro hac vice*)
100 Wall Street, 23rd Floor
New York, New York 10005
Telephone:(212) 920-3072
Facsimile: (212) 202-6364

One of the Attorneys for Plaintiffs, on behalf of themselves and all others similarly situated

MICHAEL ASCHENBRENER
mja@aschenbrenerlaw.com
ASCHENBRENER LAW, P.C.
10 South Riverside Plaza, Suite 1800
Chicago, IL 60606
Telephone: (312) 462-4922
Facsimile: (312) 462-4923

SCOTT A. KAMBER (*pro hac vice*)
skamber@kamberlaw.com
KAMBERLAW, LLC
100 Wall Street, 23rd Floor
New York, New York 10005
Telephone: (212) 920-3072
Facsimile: (212) 202-6364

Grace E. Tersigni (*pro hac vice*)
gtersigni@kamberlaw.com
KAMBERLAW, LLC
100 Wall Street, 23rd Floor
New York, New York 10005
Telephone: (212) 920-3072
Facsimile: (212) 202-6364

BRIAN J. PANISH
panish@psblaw.com
RAHUL RAVIPUDI
ravipudi@psblaw.com
PANISH, SHEA & BOYLE, LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
Telephone: (310) 477-1700
Facsimile: (310) 477-1699

JOSEPH H. MALLEY
malleylaw@gmail.com
LAW OFFICE OF JOSEPH H. MALLEY, P.C.
1045 North Zang Boulevard
Dallas, Texas 75208
Telephone: (214) 943-6100
Facsimile: (214) 943-6170

**CERTIFICATE OF SERVICE**

I hereby certify that on February 19, 2013, I electronically filed with the Clerk of the Court the foregoing Plaintiffs' Memorandum of Law In Opposition to Defendant's Second Motion to Dismiss using the CM/ECF system which will send notification of such filing to the following attorneys for the Defendant and their e-mail addresses on file with the Court:

**TO:**

Thomas A. Counts
Paul Hastings LLP
55 Second Street, 24th Floor
San Francisco, CA 94105
(415) 856-7070
tomcounts@paulhastings.com

Ryan C. Nier
Paul Hastings LLP
55 Second Street, 24th Floor
San Francisco, CA 94105
(415) 856-7000
ryannier@paulhastings.com

Giselle Perez de Donado
Paul Hastings LLP
191 North Wacker Drive, 30th Floor
Chicago, IL 60606
(312) 499-6000
giselleperez@paulhastings.com

Kelly Ann Demarchis
Paul Hastings LLP
875 15th Street NW
Washington, DC 20005
(202) 551-1700
kellydemarchis@paulhastings.com

Kenneth W. Gage
Paul Hastings LLP
191 North Wacker Drive, 30th Floor
Chicago, IL 60606
(312) 499-6046
kennethgage@paulhastings.com

s/David A. Stampley
David A. Stampley