**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DAN VALENTINE and W. BRAND BOBOSKY, individually and on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 09-cv-7653 |
| v. | ) ) | March 6, 2013 |
| WIDEOPEN WEST FINANCE, LLC, a Delaware Corporation, | ) ) ) | Judge Edmond E. Chang |
| Defendant. | ) ) | |

**DEFENDANT WIDEOPENWEST FINANCE, LLC'S OPPOSITION TO**
**PLAINTIFFS' MOTION PURSUANT TO RULE 54(b)**
**FOR RECONSIDERATION OF DISMISSAL OF 18 U.S.C. § 2511(1)(a) CLAIMS**

## TABLE OF CONTENTS

I.    BACKGROUND ................................................................................................. 2

II.   ARGUMENT ..................................................................................................... 4

      A.    Motions for Reconsideration Are Disfavored, Should Be Granted Only In
            Extraordinary Circumstances, and Are Not Appropriate Vehicles To
            Relitigate Issues That Were Already Raised. ......................................................... 5

      B.    Plaintiffs' Motion Merely Seeks To Argue Issues That Either Were Raised
            In The Briefing On The Motion To Dismiss Or Should Have Been. .................... 7

      C.    The Motion For Reconsideration Should Be Denied Because Plaintiffs Do
            Not Identify Any Manifest Errors In Law That Would Change The
            Outcome Of The Court's Ruling ......................................................................... 10

            (1)    Cases Regarding The Time And Place Of Interception Do Not
                  Dictate A Different Result In This Case. ................................................. 10

            (2)    Cases Regarding Secondary Liability Under the ECPA Do Not
                  Change The Outcome Of The Court's Order ........................................... 13

            (3)    Plaintiffs Conflate An ISP's Processing Of Communications With
                  The Type Of Acquisition That Is Unlawful Under The ECPA. .............. 14

III.  CONCLUSION ................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Amati v. City of Woodstock*,
  829 F. Supp. 998 (N.D. Ill. 1993) ...................................................................................11, 12

*Bank of Waunakee v. Rochester Cheese Sales, Inc.*,
  906 F.2d 1185 (7th Cir. 1990) ............................................................................................5, 6

*Caine v. Burge*,
  --- F. Supp. 2d ----, 2012 WL 4061213 (N.D. Ill. Sept. 14, 2012) ......................................5, 6

*Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*,
  90 F.3d 1264 (7th Cir. 1996) .........................................................................................5, 6, 10

*Doe v. GTE Corp.*,
  347 F.3d 655 (7th Cir. 2003) .................................................................................................14

*Freeman v. DirecTV*,
  457 F.3d 1001 (9th Cir. 2006) ...............................................................................................14

*Galvan v. Norberg*,
  678 F.3d 581 (7th Cir. 2012) ...............................................................................................6, 7

*Hall v. Earthlink*,
  396 F.3d 500 (2d Cir. 1995).............................................................................................14, 15

*Hepting v. AT&T Corp.*,
  439 F Supp. 2d 974 (N.D. Cal. 2006) ....................................................................................14

*In re Innovatio IP Ventures, LLC Patent Litig.*,
  --- F. Supp. 2d ----, 2012 WL 3594400 (N.D. Ill. Aug. 22, 2012).........................................12

*In re Pharmatrak, Inc.*,
  329 F.2d 9 (1st Cir. 2003)............................................................................................... 3, 4, 9

*In re Toys R Us Privacy Litig.*,
  2001 WL 34517252 (N.D. Cal. Oct. 9, 2001).........................................................................14

*Jacobson v. Rose*,
  592 F.2d 515 (9th Cir. 1978) .................................................................................................13

*Keene Corp. v. Int'l Fidelity Ins. Co.*,
  561 F. Supp. 656 (N.D. Ill. 1983) ...........................................................................................6

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Kirch v. Embarq*,
    702 F.3d 1245 (10th Cir. 2012) ...............................................................................3, 9, 14, 15

*Kirch v. Embarq Mgmt. Co.*,
    No. 10-2047-JAR, 2011 U.S. Dist. LEXIS 92701 (D. Kan. Aug. 19, 2011)................... *passim*

*Mortensen v. Bresnan Communication*,
    No. 10-cv-13, 2010 U.S. Dist. LEXIS 131419 (D. Mont. Dec. 13, 2010) ........................2, 3, 9

*Noel v. Hall*,
    568 F.3d 743 (9th Cir. 2009) .............................................................................................11

*Rothwell Cotton Co. v. Rosenthal & Co.*,
    827 F.2d 246 (7th Cir. 1987) ............................................................................................5, 9

*Sedrak v. Callahan*,
    987 F.Supp. 1063 (N.D. Ill. 1997) ........................................................................................5

*United States v. Nelson*,
    837 F.2d 1519 (11th Cir. 1988) ...........................................................................................12

*United States v. Rodriquez*,
    968 F.2d 130 (2d Cir. 1992).........................................................................................11, 12

*United States v. Szymuszkiewicz*,
    622 F.3d 701 (7th Cir. 2010) ..............................................................................................12

*United States v. Szymuszkiewicz*,
    Case No. 07-CR-171, 2009 WL 1873657 (E.D. Wisc., June 30, 2009) ................................12

*United States v. Turk*,
    526 F.2d 654 (5th Cir. 1976) ..............................................................................................12

*Wiegel v. Stork Craft Mfg., Inc.*,
    2012 WL 2130910 (N.D. Ill. June 6, 2012) ..........................................................................5

### STATUTES

18 U.S.C. § 2510(4) ...................................................................................................................14

18 U.S.C. § 2511(1)(a)..................................................................................................1, 11, 14, 15

### OTHER AUTHORITIES

Fed. R. Civ. P. 54(b) ..........................................................................................................1, 5, 6, 15

Fed. R. Civ. P. 59(e) ....................................................................................................................6

A motion for reconsideration is ***not*** a vehicle by which a party can simply relitigate issues that have previously been raised and considered by the Court. Rather, motions for reconsideration – and, in particular, motions to reconsider interlocutory orders under Fed. R. Civ. P. 54(b) – are granted only under truly exceptional circumstances. They serve the limited purpose of correcting manifest errors of law or fact or allowing a party to present newly-discovered evidence. This is not such a case. WOW[1] opposes Plaintiffs' Motion Pursuant to Rule 54(b) for Reconsideration of Dismissal of 18 U.S.C. § 2511(1)(a).

Plaintiffs lost. And they obviously do not agree with the Court's Order dismissing their claim for interception under the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511(1)(a). Now their gut instinct is to simply re-argue the Motion to Dismiss under the guise of a Motion for Reconsideration. That Motion is nothing more than an attempt to rehash and augment an argument they already made in their Opposition to WOW's Motion to Dismiss Plaintiffs' Second Amended Complaint – that WOW's role as a conduit constitutes acquisition and subjects WOW to liability for interception under the ECPA. But the parties already briefed this argument, and the Court dismissed Plaintiffs' claim for interception on the grounds that the Complaint failed to allege that WOW ever acquired ***any*** of Plaintiffs' communications. Indeed, Plaintiffs' Motion even claims that they argued the point "in substantial detail." This admission is fatal to Plaintiffs' request for reconsideration. Plaintiffs' prior failure to adequately brief the issue of acquisition does not entitle them to rehash old arguments now.

Furthermore, ***even if*** the Court considers the authorities cited in support of Plaintiffs' improperly raised argument, none overcome the deficiency that was dispositive of their

---

[1] "WOW" refers to Defendant WideOpen West Finance, LLC.

interception claim: the Complaint simply does not allege facts to support the conclusion that WOW ever acquired the contents of Plaintiffs' communications. None of the cases on which Plaintiffs rely – which mostly deal with the **_timing_** and **_location_** of interceptions – hold that an entity that redirects communications to a third party is deemed to have also acquired those communications as a matter of law.

Thus, WOW respectfully requests that the Court deny Plaintiffs' Motion.

## I.    BACKGROUND

As set forth in WOW's Motion to Dismiss, Plaintiffs' Complaint failed to state a claim against WOW for interception because WOW's alleged role as a conduit, without more, did not establish that WOW acquired the contents of Plaintiffs' communications. (Dkt. No. 137 at 12.) WOW's Motion to Dismiss relied on *Kirch v. Embarq Mgmt. Co.*, No. 10-2047-JAR, 2011 U.S. Dist. LEXIS 92701 (D. Kan. Aug. 19, 2011)), which held that "because the ISP itself did not acquire the contents of any communication, it did not 'intercept' any communication, and therefore could not be liable under the ECPA." (Dkt. No. 137 at 13.) WOW reasoned that the Complaint should be dismissed because it "**_never_** allege[d] what is necessary to state a claim under the ECPA: that **_WOW_** itself ever acquired the contents of Plaintiffs' communications." (*Id.* at 12 (emphasis in original).) Separately, WOW argued that Plaintiffs had consented to any interception, citing a document upon which Plaintiffs had heavily relied in the first two iterations of their complaint, but which they omitted completely from their Second Amended Complaint. (*See id.* at 13-15.)

In their Opposition to the Motion to Dismiss, Plaintiffs baldly argued that "WOW intercepted Plaintiffs' and Class Members' communications, period." (Dkt. No. 146 at 7.) In support they relied on *Mortensen v. Bresnan Communication*, No. 10-cv-13, 2010 U.S. Dist. LEXIS 131419 (D. Mont. Dec. 13, 2010), for the proposition that an allegation of "funneling" is

sufficient to allege interception. (Dkt. No. 146 at 8.) Plaintiffs also cited *In re Pharmatrak, Inc.*,

329 F.2d 9 (1st Cir. 2003), for the proposition that "automatic routing [is] consistent with

interception." (*Id.*) They made no effort to distinguish *Kirch* or argue that it was inapposite.

(*See id.*) Indeed, their Opposition essentially conceded that *Kirch* was applicable, arguing

instead that the Court should ignore that decision because the case was on appeal. (*See id.* at 8.)[2]

Separately, Plaintiffs also argued that WOW should be secondarily liable for NebuAd's alleged

interceptions. (Dkt. No. 146 at 7 (citing *Menda Biton v. Menda*, 812 F. Supp. 283 (D.P.R.

1993).) However, Plaintiffs chose to largely focus their Opposition brief on excluding the

evidence of consent that they had carefully scrubbed from their Second Amended Complaint.

(*Id.* at 5, 9-15.)

      WOW's Reply in support of its Motion to Dismiss again noted that the District of Kansas

in *Kirch* held that a "plaintiff's failure to establish that the ISP actually acquired the contents of

communication 'falls short of creating civil liability under the ECPA, which creates liability for

actual interception.'" (Dkt. No. 148 at 3 (citing 2011 U.S. Dist. LEXIS 92701, at *21).) WOW

also distinguished *Mortensen* as a case that disposed of the plaintiff's ECPA claim after finding

consent and did not specifically grapple with the statutory definition equating interception with

acquisition (*id.* at 4-5), and *Pharmatrak* as a case in which the defendant did not contest that it

---

[2] That appeal has since been resolved, and not in Plaintiffs' favor. The Tenth Circuit in *Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245 (10th Cir. 2012), affirmed the district court's dismissal of the plaintiffs' interception claim. *Id.* at 1245. The court held that the NebuAd device did not allow the ISP to acquire any data to which it did not otherwise have lawful access, and that the ISP could not be liable merely for aiding and abetting NebuAd's interception of the plaintiffs' communications. *Id.* at 1249-51. As outlined in more detail in Section II.C.3, below, such an outcome is entirely consistent with the Court's Order, despite Plaintiffs' attempts to distinguish *Kirch*.

had obtained the contents of the electronic communications at issue (*id.* at 6). WOW also

disposed of Plaintiffs' secondary liability argument with a long line of cases holding that there is

no secondary liability for civil claims under the ECPA. (*Id.* at 8.)

The Court agreed with WOW. It held that Plaintiffs had merely alleged "mere legal

conclusions that do not count as ***factual*** allegations" in support of their claim that WOW ever

acquired the contents of Plaintiffs' communications. (Dkt. No. 157 at 7 (emphasis in original).)

The Court held that "the ***facts*** that Plaintiffs allege . . . make it clear from the face of the

complaint that WOW merely facilitated ***NebuAd's*** acquisition of Plaintiffs' information" and

that "[y]es, WOW diverted the communications to NebuAd, but it was NebuAd that actually

acquired the communications in the sense of the statute." (*Id.* at 7-8 (emphasis in original).)

Although not critical to its holding that WOW did not acquire the contents of any

communications, the Court also noted that ***NebuAd*** accessed the communications "when it

analyzed them to fashion targeted ads." (*Id.* at 8.) In reaching this conclusion, the Court did not

cite to or rely on the Tenth Circuit's opinion affirming *Kirch*. The Court also held that there is

no secondary liability under the ECPA. (*Id.* at 8-10.) Separately, because of Plaintiffs'

deliberate deletion of all reference to the document summarizing WOW's disclosures to its users,

the Court declined to consider it because it was "beyond the pleadings." (*Id.* at 12.)

## II.    ARGUMENT

Motions for reconsideration should be denied where they only seek to make arguments

that were already raised, or should have already been raised in support of the previous motion.

Plaintiffs' Motion for Reconsideration should be denied for two reasons. First, a motion for

reconsideration is not an appropriate vehicle for Plaintiffs to reiterate and expand on an argument

they already made in their Opposition to WOW's Motion to Dismiss. Second, none of the

authorities Plaintiffs present demonstrates a manifest error in the Court's dismissal of the interception claim.

A. **Motions for Reconsideration Are Disfavored, Should Be Granted Only In Extraordinary Circumstances, and Are Not Appropriate Vehicles To Relitigate Issues That Were Already Raised.**

It is axiomatic that motions to reconsider "should be granted only in rare circumstances," and "[a] party moving for reconsideration bears a heavy burden." *Caine v. Burge*, --- F. Supp. 2d ----, 2012 WL 4061213, at *1 (N.D. Ill. Sept. 14, 2012) (citing *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) and *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996).) Furthermore, "[i]t is well-settled that a motion to reconsider is not an appropriate vehicle for relitigating arguments that the Court previously rejected or for arguing issues that could have been raised during the consideration of the motion presently under reconsideration." *Caine*, 2012 WL 4061213, at *2. Thus, "[r]econsideration is not appropriate where a party seeks to raise arguments that could have been raised in the original briefing." *Wiegel v. Stork Craft Mfg., Inc.*, 2012 WL 2130910, at *2 (N.D. Ill. June 6, 2012) (citing *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987)).

The Seventh Circuit has held – and Plaintiffs' Motion concedes – that motions to reconsider interlocutory orders "serve a *limited function*: to correct *manifest errors* of law or fact or to present newly discovered evidence." *Rothwell*, 827 F.2d at 251 (emphases added). (*See also* Mot. for Reconsid. at 4 (citing *Keene Corp. v. Int'l Fidelity Ins. Co.*, 561 F. Supp. 656, 665 (N.D. Ill. 1983) for the same proposition).)

A "manifest error" does not occur every time a party disagrees with the Court's decision. *Sedrak v. Callahan*, 987 F.Supp. 1063, 1069 (N.D. Ill. 1997) ("A 'manifest error' is *not* demonstrated by the disappointment of the losing party."). Rather, courts will find a "manifest

error" only when "the Court has patently misunderstood a party, or has made a decision outside

the adversarial issues presented to the Court by the parties, or has made an error not of reasoning

but of apprehension." *Bank of Waunakee*, 906 F.2d at 1191.

The cases cited in Plaintiffs' motion illustrate the high burden a party faces when seeking

reconsideration. Plaintiffs only cite one case involving a Rule 54(b) motion following the

court's ruling on a motion to dismiss, and in that case the court denied the motion to reconsider

based on the fact that the party bringing the motion "[did] not raise any arguments that it did not

raise or could not have raised in its briefing on its original motion to dismiss." 2012 WL

2130910, at *3. In nearly all of the other cases cited by Plaintiffs – most of which involved

motions brought under Fed. R. Civ. P. 59(e) – the courts either ***denied*** reconsideration or

affirmed lower court rulings denying the requests for reconsideration.[3]

The lone case cited by Plaintiffs in which a court actually ***granted*** a motion for

reconsideration is *Galvan v. Norberg*, 678 F.3d 581 (7th Cir. 2012), but the facts of that case

only serve to underscore the truly exceptional circumstances that must be present to support

reconsideration under Rule 54(b). In *Galvan*, the original judge granted the plaintiff's motion for

a new trial after the jury returned a verdict in favor of the defendants in a § 1983 action, without

even giving defendants an opportunity to respond to the motion. *Id.* at 582. The original judge

---

[3] *See, e.g., Caine,* 2012 WL 4061213, at *7 (denying Rule 54(b) motion for reconsideration and
declining to find an intervening change in the law); *Bank of Waunakee*, 906 F.2d at 1192
(denying motion for reconsideration); *Keene Corp.*, 561 F.Supp. at 666 n.6 (rejecting attempt to
use motion for reconsideration to reargue points previously raised in opposition to summary
judgment); *Caisse Nationale*, 90 F.3d at 1269-70 (affirming district court's denial of a motion for
reconsideration as an improper attempt to introduce "new" evidence that could have been
adduced earlier).

then recused himself and the case was transferred to a new judge. *Id.* at 585-86. The defendants

then brought a motion to reconsider the new trial order, at which time the case was transferred

yet again to this Court. *Id.* at 586. This Court granted the motion to reconsider, but only after

noting "case law cautioning judges to revise decisions only in extraordinary circumstances" and

relying heavily on the fact that the defendants had not been given ***any*** opportunity to respond to

the original motion for a new trial. *Id.* The Seventh Circuit affirmed, again citing the fact that

defendants had ***no*** opportunity to oppose the underlying motion. *Id.*

> **B.** **Plaintiffs' Motion Merely Seeks To Argue Issues That Either Were Raised In The Briefing On The Motion To Dismiss Or Should Have Been.**

Plaintiffs' Motion should be seen for what it is: an attempt to repeat or augment an

argument that was already made in Plaintiffs' Opposition to WOW's Motion to Dismiss.

Though it approaches the argument from several different angles, Plaintiffs' Motion essentially

seeks to relitigate the issue of whether WOW's status as a conduit, without more, establishes as a

matter of law that WOW acquired the contents of communications. Because that issue was

specifically addressed in the briefs and considered by the Court, Plaintiffs' Motion should be

denied.

Plaintiffs' brief presents various iterations of the argument that an entity that redirects a

communication should be deemed to have acquired that communication. In Section B.1 of their

brief, Plaintiffs argue that "acquisition of a communication constitutes acquisition of its

contents," advocating for a rule that "capture or redirection of a communication necessarily

means its contents have been acquired." (Mot. for Reconsid. at 5-6.) The next two sections of

the brief present variations on the same theme. In Section B.2, Plaintiffs present cases that they

argue establish that redirection constitutes acquisition even when the defendant does not hear or

read the communication. (*Id.* at 6-8.) In Section B.3, Plaintiffs argue again that "the party that

redirects a communication . . . is itself an acquirer of the communication," even if another party later listens to or reads that communication.  (Mot. for Reconsid. at 8.)[4]

Plaintiffs already raised these arguments, at least according to their Motion, which argues that "Plaintiffs alleged and ***argued in substantial detail*** that WOW, in its role as a conduit providing Internet connectivity services to Plaintiffs and Class Members, acquired their communications in their entirety and purposefully diverted those communications."  (Mot. for Reconsid. at 10 (internal citations omitted, emphasis added).)  While WOW disagrees that Plaintiffs presented such an argument in "substantial detail," [5] it does agree that Plaintiffs had the chance to fully litigate the issue of whether routing constitutes acquisition.  Having failed to convince the Court in their previous attempt, Plaintiffs cannot make another one now.

WOW's Motion to Dismiss properly teed up the issue by establishing that its alleged role as a "conduit" did not constitute acquisition, including when it allegedly "diverted" data to NebuAd, absent a separate showing the WOW acquired the contents of Plaintiffs' communications.  (Dkt. No. 137 at 12.)  Thus, as set forth in WOW's Motion to Dismiss, the Complaint "***never*** allege[d] what is necessary to state a claim under the ECPA:  that ***WOW*** itself

---

[4] As set forth in more detail in Section II.C.2, below, Plaintiffs' Motion cites to cases involving issues of secondary liability under the ECPA.  Plaintiffs' Motion does not expressly argue that WOW secondarily liable by virtue of its role as a conduit, but even if it did, that argument would be in appropriate in a motion for reconsideration because it too was already raised.  (*See* Dkt. No. 146 at 7 (citing *Menda Biton v. Menda*, 812 F. Supp. 283 (D.P.R. 1993)).)

[5] Substantively, WOW disagrees with this characterization.  In support of this statement, Plaintiffs point to a series of conclusory allegations in the Complaint and arguments from their opposition to the motion to dismiss that the Court already found insufficient to cure the deficiencies in the Complaint.

ever acquired the contents of Plaintiffs' communications." (Dkt. No. 137 at 12 (emphasis in original).)[6]

Plaintiffs' Opposition contested this issue, albeit in a conclusory manner. Plaintiffs cited to *Mortensen* for the proposition that an allegation of "funneling" was sufficient to state a claim against an ISP, and *Pharmatrak* for the proposition that "automatic routing [is] consistent with interception." (Dkt. No. 146 at 8.) Although Plaintiffs had the opportunity, they did not present *any other cases* – including those cases cited in their Motion for Reconsideration – to support this argument.[7] WOW effectively distinguished *Mortensen* in its reply (*see* Dkt. No. 148 at 4-5) and the Court ultimately held that WOW's role as a conduit did not change the fact that "it was NebuAd that actually acquired the communications in the sense of the statute." (Dkt. No. 157 at 8.)

Because *all* of Plaintiffs' arguments either restate or attempt to expand on an argument raised in Plaintiffs' Opposition to the Motion to Dismiss, the Court need not delve into the substance of Plaintiffs' arguments in order to deny their Motion for Reconsideration. *See Rothwell*, 827 F.2d at 252 ("Absent a showing that [defendant's failure to raise an argument]

_____

[6] In its reply, WOW also argued that "Plaintiffs never allege that WOW had *access* to the information extracted by the NebuAd system or to the user profiles constructed from that information, *let alone that WOW acquired such information*." (Dkt. No. 148 at 4 (emphasis added).) Plaintiffs now try to characterize this as the sole basis of WOW's argument that it never acquired the contents of the communication. Read in context, Plaintiffs' interpretation makes no sense. Furthermore, the Court did not cite this reasoning anywhere in its Order.

[7] Separately, WOW notes that *all* of the cases cited in support of Plaintiffs' substantive arguments were decided before Plaintiffs' Opposition to WOW's Motion to Dismiss was filed – in most cases, decades before. As noted above in FN 2, while the Tenth Circuit's opinion in *Kirch* was decided in the interim, Plaintiffs do not rely on that opinion but instead seek to distinguish it.

resulted for reasons other than a lack of due diligence on the part of [defendant], [defendant] may not relitigate a motion it already had a chance to contest, and lost."); *Caisse Nationale*, 90 F.3d at 1270 ("Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion.").

    **C.**    **The Motion For Reconsideration Should Be Denied Because Plaintiffs Do Not Identify Any Manifest Errors In Law That Would Change The Outcome Of The Court's Ruling.**

Because Plaintiffs are merely attempting to relitigate the Motion to Dismiss, the Court need not consider the new authorities Plaintiffs put forth in support of their Motion for Reconsideration. However, were the Court to consider these authorities, none provide a proper basis for reconsideration. The cases on which Plaintiffs rely generally fall into three categories: (1) cases discussing the time and place that interceptions are deemed to take place; (2) cases regarding secondary liability under the ECPA; and (3) a case that discusses ECPA's exception to liability for an ISP's acquisition of its users' communications in the "ordinary course of business." As noted above, *all* of these cases were available to Plaintiffs well before they filed their Opposition to WOW's Motion to Dismiss. Regardless, for the reasons set forth below, Plaintiffs fail to meet the threshold required to justify reconsideration because none of their authorities identify any manifest errors in the Court's holding that the Complaint failed to allege that WOW unlawfully acquired the contents of Plaintiffs' communications.

    **(1)**    **Cases Regarding The Time And Place Of Interception Do Not Dictate A Different Result In This Case.**

First, Plaintiffs identify several inapposite cases that seek to answer the questions of *when* and *where* an interception occurs when a redirection is involved. However, none of these cases answer the question that is dispositive here – whether an entity that merely acts as a

-10-

conduit should be deemed, as a matter of law, to have acquired the contents of the redirected communications.

In *United States v. Rodriquez*, 968 F.2d 130 (2d Cir. 1992), for example, the Second Circuit determined that a court had territorial jurisdiction to authorize a wiretap governing government wiretapping, determining that the interception occurred at or near the point of redirection. *Id.* at 136. The Ninth Circuit in *Noel v. Hall*, 568 F.3d 743 (9th Cir. 2009), cited *Rodriquez* for a similar proposition. *Id.* at 749. This is a logical outcome, because once a redirection occurs, the communication is ***en route*** to the entity that will ultimately acquire it. The court in *Rodriquez* did ***not*** hold that a telephone company that allows a wiretap to be installed is deemed, as a matter of law, to have acquired the contents of every communication that is redirected through that wiretap. Indeed, the court did not opine on whether ***any*** entity would be civilly liable for an interception under 18 U.S.C. § 2511(1)(a). *Noel* is also inapposite because it dealt with the replaying of tapes containing recorded telephone conversations, and ***not*** the redirection of any communication, and the court also declined to find that a Wiretap Act violation had even occurred. *Id.* at 748-49.[8]

In *Amati v. City of Woodstock*, 829 F. Supp. 998 (N.D. Ill. 1993), cited later in the brief for the same proposition as *Rodriguez*, the court held that an acquisition occurs at "the place

---

[8] Separately, the second half of Plaintiffs's parenthetical purporting to summarize *Noel* appears fabricated out of thin air. Plaintiffs state that, in *Noel*, "acquisition of pager numbers, alone, did not constitute acquisition of communicative content." (Mot. for Reconsid. At 5.) The Ninth Circuit's opinion in *Noel* does not even ***mention*** pagers, let alone opine on whether the acquisition of pager numbers constituted "acquisition of communicative content." Whether oversight or intentional, this misstatement of the law undermines Plaintiffs' credibility with respect to their analysis of any other precedent.

where a communication is initially obtained." *Id.* at 1008. In that case, however, the court

assigned liability to the individuals who allegedly recorded – and therefore acquired – the

intercepted conversations on the other end of the phone tap. *Id.* at 1007-08. None of the string

of cases cited after *Amati* dictates a different result.[9]

Plaintiffs also cite to *United States v. Szymuszkiewicz*, Case No. 07-CR-171, 2009 WL

1873657 (E.D. Wisc., June 30, 2009). In that case, an employee set up a "rule" on his

supervisor's computer to auto-forward emails to the employee's email account. *Id.*, at *13. The

court held that he had violated the ECPA because "he ***received*** the e-mail simultaneous with

their transmission." *Id.*, at *14 (emphasis added). Thus, the defendant's liability was not

premised on the act of redirection, but on the ***fact*** that he acquired the contents of the

communications when he received the forwarded messages. Indeed, the Seventh Circuit's

opinion affirming Szymuszkiewicz's conviction bears out this distinction. *See United States v.*

*Szymuszkiewicz*, 622 F.3d 701 (7th Cir. 2010). In that opinion, the Seventh Circuit noted that,

because the email server was set to forward a copy to the defendant each time an email was sent,

"[t]he copying at the server was the unlawful interception." *Id.* at 704. Yet the court did not

conclude that the entity that controlled the server (which actually performed the redirection) was

automatically liable for the interception. Rather, the court affirmed the district court's holding

---

[9] *See United States v. Nelson*, 837 F.2d 1519, 1526-27 (11th Cir. 1988) (like *Rodriquez*, dealt
with questions of federal court jurisdiction to authorize a wiretap, rather than whether any entity
would be liable for communications intercepted using the wiretap); *United States v. Turk*, 526
F.2d 654, 657-58 (5th Cir. 1976) (in dicta, declining to find that a tape recording must be heard
to constitute an interception, but holding that no unlawful interception occurred); *and In re*
*Innovatio IP Ventures, LLC Patent Litig.*, --- F. Supp. 2d ----, 2012 WL 3594400, at *3 (N.D. Ill.
Aug. 22, 2012) (though hesitating to hold that recording is necessary for interception, deciding
that "[t]he court need not, however, construe the term 'intercept' in this case . . . .").

that the sole entity responsible for the interception was Szymuszkiewicz, the person who ultimately acquired those emails. *Id.* at 706.

### (2) Cases Regarding Secondary Liability Under the ECPA Do Not Change The Outcome Of The Court's Order.

As set forth in WOW's Motion to Dismiss and the Court's Order, there is no secondary liability under the ECPA. (*See* Dkt. No. 157 at 8 (holding that a long line of recent cases "have declined to find a private cause of action against those who aid and abet or conspire with others to intercept, disclose, or use electronic communications in violation of the ECPA").) As above, this issue was properly before the Court on WOW's Motion to Dismiss and Plaintiffs should not be allowed to relitigate it here.

Although they do not directly raise a new secondary liability argument,[10] Plaintiffs cite to *Jacobson v. Rose*, 592 F.2d 515 (9th Cir. 1978) a case in which the Ninth Circuit found liability against a telephone company that had set up a wiretap and taped plaintiffs' conversations pursuant to a court order. *Id.* at 518, 522. The underlying facts of the complaint in *Jacobson* are unclear – it may be that the telephone company itself actively taped (and therefore acquired) the conversations, though it did not listen to them. *Id.* at 522. Regardless, the opinion does **not** hold that the telephone company's act of diverting communications through a wiretap constituted an "acquisition." Instead, it contains dicta that could be read to impose secondary liability on the telephone company for its role in the wiretapping scheme. *See id.* at 522. To the extent *Jacobson*

---

[10] Plaintiffs **do** attempt to retract their previous representation that NebuAd's acquisition took place post-interception. (Mot. for Reconsid. at 10 n.4 (citing Dkt. No. 158 at 3 n.2).) In light of the Court's holding that the Complaint alleges facts to support the conclusion that NebuAd was the entity that intercepted Plaintiffs' communications, this retraction appears appropriate. With respect to Plaintiffs' position that "whether individually or taken together, WOW and NebuAd both engaged in interception," Plaintiffs provide no authority to support such a conclusion.

purports to stand for the proposition that secondary liability is available under the ECPA, a long line of courts has declined to follow that approach, and it does not warrant reconsideration of the Court's order here. *See Doe v. GTE Corp.*, 347 F.3d 655, 658-69 (7th Cir. 2003); *Freeman v. DirecTV*, 457 F.3d 1001, 1004 (9th Cir. 2006); *Kirch*, 2011 WL 3651359, at *7; *and In re Toys R Us Privacy Litig.*, 2001 WL 34517252, at *7 (N.D. Cal. Oct. 9, 2001)).)[11]

### (3) Plaintiffs Conflate An ISP's Processing Of Communications With The Type Of Acquisition That Is Unlawful Under The ECPA.

In the middle of their brief, Plaintiffs cite *Hall v. Earthlink*, 396 F.3d 500 (2d Cir. 1995), for the proposition that "the Second Circuit explicitly found that the ISP acquired the contents of messages that it processed." (Mot. for Reconsid. at 5-6.) This finding has no significance whatsoever in this case. In *Hall*, a plaintiff sought to impose liability under Section 2511(1)(a) against the ISP that hosted his email account for continuing to process and store emails after he no longer had access to the account. 396 F.3d at 502. The "ordinary course of business" exception exempts from liability ISPs and other service providers whose services consist of acquiring and passing on the contents of electronic communications. *See id.* at 504-05. *See also* 18 U.S.C. § 2510(4). Because the ISP in *Hall* was simply continuing to process the Plaintiff's emails in the same manner as its other email, the court held that the "ordinary course of business" exception applied. *Id.*at 505.

---

[11] Plaintiffs also cite to *Hepting v. AT&T Corp.*, 439 F Supp. 2d 974, 978-79 (N.D. Cal. 2006), noting that the court's opinion referred to a telephone company's actions in facilitating the interception of communications as a "dragnet." (*See* Mot. for Reconsid. At 8 (citing 439 F. Supp. 2d at 1001).) However, the *Hepting* court did not hold that the telephone company had acquired the contents of any communications, or that the telephone company faced any liability, including secondary liability, under 18 U.S.C. § 2511(1)(a). Rather, the opinion dealt with complicated issues regarding state secrets and immunities. 439 F. Supp. 2d at 1011.

Plaintiffs read *Hall* as creating a conflict with the Tenth Circuit's recent opinion in *Kirch v. Embarq*, 702 F.3d 1245 (10th Cir. 2012). (*See* Mot. for Reconsid. at 6 n.1.) No such conflict exists. As the Tenth Circuit observed in *Kirch*, under the reasoning of *Hall*, the defendant ISP could not be liable for the level of access it had to its users' communications in the ordinary course of its business. 702 F.3d at 1251. The court came to the reasonable conclusion that the installation of the NebuAd device in the ISP's network did not automatically convert communications it lawfully acquired at that level into ECPA violations, and that the NebuAd device *only* transmitted communications ***to NebuAd*** and ***not*** to the ISP. *Id.* at 1249, 1251. The court reasoned that the ISP could not be held liable under § 2511(1)(a) unless the plaintiffs could establish that the NebuAd device allowed the ISP to acquire additional communications other than those it lawfully acquired. This does not add an additional "access" element to an ECPA claim, as Plaintiffs suggest. Rather, it merely requires a plaintiff attempting to state a claim against an ISP under § 2511(1)(a) to allege (and ultimately prove) that the ISP acquired the contents of communications other than those it lawfully processed on its customers' behalf.

As in *Kirch*, Plaintiffs have not alleged that WOW acquired the contents of any of the Plaintiffs' communications other than in the ordinary course of its business. Plaintiffs never argued, and cannot argue for the first time on a motion for reconsideration, that WOW (as opposed to NebuAd) acquired the contents of ***any*** communications that had passed through the NebuAd device. Accordingly, Plaintiffs have not identified any manifest error that arises from *Hall* or the Tenth Circuit's reading of *Hall* in *Kirch*.

## III.  CONCLUSION

For the reasons set out above, WOW respectfully requests that the Court deny Plaintiffs' Motion Pursuant To Rule 54(b) For Reconsideration Of Dismissal Of 18 U.S.C. § 2511(1)(a) Claims.

Dated:  March 6, 2012                       Respectfully submitted,

                                          s/ Thomas A. Counts
                                          Thomas A. Counts (*Pro Hac Vice*)
                                          Bar Registration No. CA 148051
                                          PAUL, HASTINGS, JANOFSKY & WALKER LLP
                                          55 Second Street
                                          Twenty-Fourth Floor
                                          San Francisco, CA  94105
                                          Telephone:  (415) 856-7000
                                          Facsimile:   (415) 856-7100

                                          Counsel for Defendant,
                                          WIDEOPENWEST FINANCE, LLC

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on March 6, 2013, I electronically filed the foregoing DEFENDANT

WIDEOPENWEST FINANCE, LLC'S OPPOSITION TO PLAINTIFFS' MOTION

PURSUANT TO RULE 54(b) FOR RECONSIDERATION OF DISMISSAL OF 18 U.S.C.

§ 2511(1)(a) CLAIMS with the Clerk of the Court using the CM/ECF system which will send

notification of such filing to the following attorneys for Plaintiffs and their e-mail addresses on

file with the Court.

Michael J. Aschenbrener, Esq.
ASCHENBRENER LAW, P.C.
10 South Riverside Plaza, Suite 1800
Chicago, IL 60606
Telephone: (312) 462-4922
Facsimile: (312) 462-4923
Email: mja@aschenbrenerlaw.com

Scott A. Kamber, Esq. (*pro hac vice*)
David A. Stampley, Esq. (*pro hac vice*)
Grace E. Parasmo, Esq. (*pro hac vice*)
KAMBERLAW, LLC
100 Wall Street, 23rd Floor
New York, NY 10005
Telephone: (212) 920-3072
Facsimile: (212) 920-3081
Email: skamber@kamberlaw.com;
dstampley@kamberlaw.com;
gparasmo@kamberlaw.com

Brian Panish, Esq. (*pro hac vice*)
Rahul Ravipudi, Esq. (*pro hac vice*)
Panish, Shea & Boyle, LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, CA 90025
Telephone: (310) 477-1700
Facsimile: (310) 477-1699
Email: panish@psblaw.com;
ravipudi@psblaw.com

The following non-CM/ECF participant (counsel for Plaintiffs) will be served by

United States Postal Service, Certified Mail/Return Receipt via First Class Mail, postage prepaid,

as follows:

Joseph H. Malley, Esq. (*pro hac vice*)
Law Office of Joseph H. Malley, P.C.
1045 North Zang Boulevard
Dallas, TX 72508
Telephone: (214) 943-6100
Facsimile: (214) 943-6170
Email: malleylaw@gmail.com

                                        _____s/ Thomas A. Counts_____
                                            Thomas A. Counts

                                            Counsel for Defendant
                                            WIDEOPENWEST FINANCE, LLC