**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| DAN VALENTINE, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) No. 09 C 7653 |
| | ) |
| v. | ) The Hon. Edmond E. Chang |
| | ) |
| WIDEOPEN WEST FINANCE, LLC, | ) |
| | ) |
| Defendant. | ) |

**REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION PURSUANT TO RULE 54(b) FOR
RECONSIDERATION OF DISMISSAL OF 18 U.S.C § 2511(1)(a) CLAIMS**

# TABLE OF CONTENTS

I.  Overview ....................................................................................................................1

II. Argument ...................................................................................................................2

    A.  Parties Did Not Previously Litigate Legal Basis of Court's Dismissal ....................2

    B.  Defendant Fails to Rebut Plaintiffs' Substantive Legal Arguments.........................3

    C.  In the Seventh Circuit and Others, "Acquisition" Means Obtaining
        Communication with Contents, Regardless of Access ..................................................4

        1.  *U.S. v. Szymuszkiewicz*, 2009 WL 1873657 (E.D. Wisc. June 30, 2009),
            *aff'd.*, 622 F.3d 701 (7th Cir. 2010) ............................................................4

        2.  *Hall v. EarthLink*, 396 F.3d 500 (2d Cir. 1995)........................................6

        3.  *Kirch v. Embarq*, 702 F.3d 1245 (10th Cir. 2012),
            *affirming* 2011 WL 3651359 (D.Kan. Aug. 19, 2011),
            *cert. petition filed*,  81 U.S.L.W. 3567 (U.S. Mar. 28, 2013) (12-1181)....................7

        4.  *U.S. v. Rodriguez*, 968 F.2d 130 (2d Cir. 1992)' ......................................8

        5.  *Amati v. City of Woodstock*, 829 F.Supp. 998 (N.D. Ill. 1993)..............10

        6.  *U.S. v. Turk*, 526 F.2d 654, 58-59 (5th Cir. 1976) ...................................11

    D.  Carrier Participating in Interception is Primarily Liable.........................................11

        1.  *Mortensen v. Bresnan*, 2010 WL 5140454 (D.Mont. Dec. 13, 2010).....................11

        2.  *Jacobson v. Rose*, 592 F.2d 515 (9th Cir. 1978) ......................................12

        3.  *Hepting v. AT&T Corp.*, 439 F Supp. 2d 974 (N.D. Cal. 2006)...............................14

        4.  *Menda Biton v. Menda*, 812 F.Supp. 283 (D.P.R. 1993) ........................14

    E.  Other Cases...........................................................................................................14

    F.  Reconsideration is in the Interest of Justice .........................................................15

III. Conclusion................................................................................................................15

**TABLE OF AUTHORITIES**

**CASES**

*Arizona v. California*, 460 U.S. 605, 644 (1983) .......................................................................... 15

*Berger v. New York*, 388 U.S. 41 (1967) ..................................................................................... 14

*Christianson v. Colt Ind. Operating Corp.,* 486 U.S. 800 (1988) ............................................... 15

*Hall v. EarthLink*, 396 F.3d 500 (2d Cir. 1995) ...................................................................... 6, 7

*Hepting v. AT&T Corp.*, 439 F Supp. 2d 974 (N.D. Cal. 2006) ................................................. 14

*In Re Innovatio IP Ventures, LLC Patent Litig.*, 2012 WL 3594400

    (N.D. Ill. Aug. 22, 2012) ..................................................................................................... 10

*Jacobson v. Rose*, 592 F.2d 515 (9th Cir. 1978) ................................................................... 12, 13

*Katz v. U.S.*, 389 U.S. 347 (1967) ............................................................................................... 14

*Keene Corp. v. Int'l Fidelity Ins. Co.*, 561 F.Supp. 656 (N.D. Ill. 1982),

    *aff'd,* 736 F.2d 388 (7th Cir. 1984) ..................................................................................... 15

*Kirch v. Embarq*, 2011 WL 3651359 (D.Kan. Aug. 19, 2011) ..................................................... 7

*Kirch v. Embarq*, 702 F.3d 1245 (10th Cir. 2012), *cert. petition filed*,

    81 U.S.L.W. 3567 (U.S. Mar. 28, 2013) (12-1181) .......................................................... 7, 8

*Menda Biton v. Menda*, 812 F.Supp. 283 (D.P.R. 1993) ............................................................. 14

*Mortensen v. Bresnan*, 2010 WL 4716744 (D.Mont. Dec. 13, 2010) ........................ 2, 10, 11, 12

*Pickett v. Prince*, 207 F.3d 402 (7th Cir. 2000) ......................................................................... 15

*Tate v. Showboat Marina Casino Partnership*, 431 F.3d 580 (7th Cir. 2005) ............................ 12

*U.S. v. Kazarian*, 2012 WL 1810214 (S.D.N.Y. May 18, 2012) ................................................. 14

*U.S. v. Lewis*, 406 F. 3d 11 (1st Cir. 2005) ................................................................................. 14

*U.S. v. Nelson*, 837 F.2d 1519 (11th Cir. 1988) .......................................................................... 11

*U.S. v. New York Telephone Co.*, 434 U.S. 159 (1977) ................................................................. 9

*U.S. v. Rodriguez*, 968 F.2d 130 (2d Cir. 1992) ............................................................. 7, 8, 9, 10

*U.S. v. Szymuszkiewicz*, 2009 WL 1873657 (E.D. Wisc. June 30, 2009),

    *aff'd,* 622 F.3d 701 (7th Cir. 2010) ............................................................... 1, 4, 5, 7

*U.S. v. Turk,* 526 F.2d 654 (5th Cir. 1976) ................................................................ 11

## STATUTES

18 U.S.C. § 2510, et seq. ............................................................................... passim

18 U.S.C. § 2510(4) ......................................................................................... 4, 6, 9, 13

18 U.S.C. § 2511(1)(a) .................................................................................... 4, 15

18 U.S.C. § 2701, et seq. ................................................................................. 5

18 U.S.C. § 3123 ............................................................................................. 9

## RULES

Fed. R. Civ. P. 54(b) ...................................................................................... 15

## COURT DOCUMENTS

Mortenson v. Bresnan, 2010 WL 5140454, Defendant's Brief in Support of Motion to Dismiss,

    Doc. No. 11 (CV-10-13-BLG-RFC [1:10-cv-00013-RFC]) (D. Mont. Apr. 23, 2010) .......... 12

## I.   OVERVIEW

WOW asks this Court to ignore binding Seventh Circuit authority. It asks the Court to adopt an outlier jurisdiction's definition of interception that is unsupported in any other jurisdiction and that WOW never raised until its reply brief on its motion to dismiss. Following Defendant's misleading path would likely result in a waste of time and resources that Plaintiffs seek to avoid with their motion for reconsideration. Here, the Court has an opportunity to allow this case to move forward on settled legal grounds.

WOW is so willing to mislead this Court that it distorts or misconstrues nearly every authority Plaintiffs cite. Its gamesmanship shows in its treatment of the controlling Seventh Circuit authority of *U.S. v. Szymuszkiewicz*, 2009 WL 1873657 (E.D. Wisc. June 30, 2009), *aff'd,* 622 F.3d 701 (7th Cir. 2010). In *Szymuszkiewicz*, the defendant caused his supervisor's e-mail messages to be automatically forwarded to him. WOW's brief claims to quote an interception holding that does not exist in the lower court's opinion. WOW concocted it by cutting and pasting language from a different section of the opinion. WOW's version, with emphasis added by WOW, is: "The court held that [defendant] had violated the ECPA because 'he ***received*** the e-mail simultaneous with their transmission.'" Def. Opposition Brief, R. 171 at 12. The real holding, affirmed by the Seventh Circuit, says the opposite: "The evidence showed that defendant intercepted [his supervisor's] e-mails <u>at the time of transmission</u> and via the rule he created did so in an ongoing, prospective fashion." *Szymuszkiewicz*, 2009 WL 1873657 at *12 (emphasis added). Under  this case, WOW intercepted Plaintiffs' communications when it diverted them using the new cabling and network resources it put in place for that purpose.

Another case that suffers at WOW's hands is *Mortensen v. Bresnan*, involving ISP interception claims much like those here. The court held they were sufficiently pled. WOW dismisses

the court's analysis as "dicta." It was not dicta. The opinion contains the court's full discussion and holding denying the defendant's 12(b)(6) motion to dismiss the Wiretap Act claims. WOW further accuses the *Mortensen* court of ignoring the acquisition component of interception as defined in the ECPA. The court did not ignore it. WOW just ignores the ISP defendant's *admission* that acquiring the plaintiffs' communications was a necessary part of its job as an ISP. *See Mortensen v. Bresnan*, 2010 WL 5140454 (D.Mont. Dec. 13, 2010).

There is a pattern to WOW's advocacy. First, WOW tries to redefine interception as starting somewhere at "the other end of the phone tap," *after* the kind of redirection WOW engaged in. In WOW's efforts to get itself off the hook, it refuses to let the plain language of any case stand in its way, not even controlling Seventh Circuit authority.

Second, WOW tries to obscure the litigation record in this case, urging over and over that Plaintiffs are merely raising the already-litigated issue of "acquisition." WOW cannot afford to admit that an "access" requirement *was not* litigated in WOW's motion to dismiss, *was* a key issue in the Court's Order, *is not* supported by reliable authority.

Plaintiffs respectfully urge this Court to reconsider its Order because of manifest error in disposing of Plaintiffs' claims on un-litigated and legally infirm grounds.

## II.  ARGUMENT

### A.  Parties Did Not Previously Litigate Legal Basis of Court's Dismissal

At no point in WOW's motion to dismiss opening brief did it argue that an allegation of "access" was required under the Wiretap Act. *See* R. 137. In a footnote in its opposition brief here, WOW admits *it was not until its reply brief that it first brought up the argument that acquisition of contents requires access*. *See* R. 171 ("Def. Opp.") at 9 n.6. WOW conveniently ignores this prior failure to raise *access to* or *of contents*.

Now that Plaintiffs have pointed out that this issue was not litigated, WOW simply repeats over and over again that *acquisition* has already been litigated. WOW claims it "teed up" the issue of *acquisition* in its motion to dismiss brief. *See, e.g.*, Def. Opp. at 8.[1] WOW repeatedly states Plaintiffs are trying to relitigate whether its role as a "conduit, without more" establishes *acquisition* as a matter of law. Def. Opp. at 1, 2, 7-9, 11. (This theme is a double ploy, because "acquisition" is not the question and Plaintiffs have successfully alleged WOW was much more than a mere conduit).

WOW even argues that the access concept is not critical to the Court's holding. Def. Opp. at 4. However, the language of the Order speaks for itself:

> WOW diverted the communications to NebuAd, but it was NebuAd that actually acquired the communications in the sense of the statute, meaning it was NebuAd that actually accessed the communications when it analyzed them to fashion targeted ads.

Order at 7-8. Clearly, the meaning of "acquisition" in "the sense of the statute" was critical to the holding that NebuAd did intercept communications and to the holding that WOW did not.

**B. Defendant Fails to Rebut Plaintiffs' Substantive Legal Arguments**

WOW's effort to undermine Plaintiffs' supporting authorities is legally unsound and should not be credited by this Court. Plaintiffs have already cited several examples of the unreliability of WOW's legal analysis. *See supra* pp. 1-2. and *infra* Sections C and D of this Argument*, infra*, demonstrate in detail how, for every case, WOW's legal analysis is tainted by distinctions without differences, cherry-picking, ignoring the proposition for which Plaintiffs cited the case, and blatant mischaracterization.

WOW attempts to dismiss Plaintiffs' authorities *en masse* with a generalization—that they are inapposite because they deal with questions about when and where interception happens.

---

[1] WOW even complains because Plaintiffs took the time to rebut the disingenuous consent argument that took up two-thirds of WOW's 12(b)(6) brief. *See* Def. Opp. at 2-4. WOW seems to suggest that, instead, Plaintiffs should have taken the time to address an access argument that WOW, itself, chose not to raise.

*See* Def. Opp. at 2,10. It is difficult to see how this is a distinction. Defendant is correct, howev-er, that Plaintiffs approach their argument from several angles, Def. Opp. at 7, all of which show that acquisition of contents does not require access. The authorities Plaintiffs cited (and that WOW failed to rebut in any availing way) show this: (i) acquisition of contents, within the meaning of the statute, first occurs with the initial obtaining or capture or redirection of a com-munication (including its contents, as opposed to a communication, such as a pen register cap-ture, that does not include communicative content); presumptively, ISPs acquire contents in the course of providing their services; (ii) acquisition of the contents does not require accessing the contents of a communication; and (iii) a service provider that participates in interception is not a mere facilitator, it has primary liability for interception, along with its co-actors. From each an-gle represented by the authorities Plaintiffs cite, a showing that the contents of a communication were accessed is not required for wiretap liability. Rather, all that ECPA requires is that the communications were "acquired" in the sense of possessing, controlling, or having the power to dispose of the whole communication, including its contents.

### C. In the Seventh Circuit and Others, "Acquisition" Means Obtaining Communication with Contents, Regardless of Access

#### 1. *U.S. v. Szymuszkiewicz*, 2009 WL 1873657 (E.D. Wisc. June 30, 2009), *aff'd.*, 622 F.3d 701 (7th Cir. 2010)

As discussed above at p. 1, *infra*, WOW recites a "holding" for the interception claim in this binding Seventh Circuit case that directly contradicts the real holding. Following a jury con-viction on three counts of § 2511(1)(a) violations, the *Szymuszkiewicz* trial court adjudicated the defendant's motion for an acquittal. 2009 WL 1873657 at *1. In their opening brief, Plaintiffs quoted the lower court's language describing how the defendant set up an e-mail rule on his su-pervisor's computer, so that her messages were automatically forwarded to him. The court held:

The evidence showed that defendant **intercepted** Infusino's e-mails <u>at the time of transmission</u>, and via the rule he created did so in an ongoing, prospective fashion.

*Id.* at *13, cited in Pltfs. MFR at 7 (boldface emphasis in original, underscore added). The *Szymuszkiewicz* facts bear striking similarities to WOW's funneling of messages to NebuAd.

As noted *supra*, p. 1, WOW stated an opposite holding: "The court <u>held that [the defendant] had violated the ECPA</u> because 'he **received** the e-mail simultaneously with their transmission.'" Def. Opp. at 12, *Id.*, at *14 (emphasis added by WOW). WOW goes even further, adding:

Thus, the defendant's liability was not premised on the act of redirection, but on the ***fact*** that he acquired the contents of the communications when he received the forwarded messages.

Def. Opp. at 12 (boldface in WOW's brief, underscore added). Further still, WOW claims the Seventh Circuit affirmance supports WOW's manufactured holding. *See* Def. Opp. at 12-13.

Comparing the real holding to what WOW represents, WOW's version is revealed as fiction. The snip quoted by WOW is from the court's rule of lenity holding, *not* its interception holding. *Compare* 2009 WL 1873657 at *14 and *id.* at *7-13. Further, although WOW's claims its interpretation is supported by the Seventh Circuit, the opinion language does not bear that out. The language WOW references is from the court's a Stored Communications Act analysis.[2] *See* 622 F.3d at 704. WOW's argument that liability in *Szymuszkiewicz* was not premised on redirection should be rejected.

---

[2] In the Seventh Circuit's closing sentence, it explained the full scope of interception in the case—nothing in that scope supports WOW's attempt to fix a starting point somewhere beyond redirection:

It is better to follow the statute than to make up limitations to avert imaginary problems. Thus Szymuszkiewicz acquired the emails by using at least three devices: Infusino's computer (where the rule was set up), the Kansas City server (where the rule caused each message to be duplicated and sent his way), and his own computer (where the messages were received, read, and sometimes stored).).

*Id.* at 707. For purposes of this motion: the fact that the arc of an interception includes activity after redirection does not change the fact that the Seventh Circuit's analysis holds that setting the interception in motion and redirecting communications is, statutorily, an act of interception—and that is where WOW's conduct falls.

### 2. *Hall v. EarthLink*, 396 F.3d 500 (2d Cir. 1995)

In *Hall v. EarthLink*, although the ISP defendant never accessed the contents of communications, the Second Circuit held that "[ISPs'] basic services involve the 'acquisition of the contents' of electronic communications." 396 F.3d at 505 (emphasis added). Because ISPs do, in the course of business, acquire the contents of communications they handle, the court found it necessary to determine whether there was a material issue of fact as to whether EarthLink's particular conduct fell within the ordinary course of business.

WOW's response is only: "This finding has no significance whatsoever in this case." Def. Opp. at 4. However, *EarthLink* is significant. The court found that, presumptively, an ISP acquires the contents of communications without accessing those contents. WOW's failure to address this issue should be deemed a concession because its declaration of irrelevance is unfounded.

But WOW's reason for neglecting the threshold issue is made clear in its treatment of the next issue raised by the *EarthLink* court. The court, after finding acquisition, stated: "We must next determine, therefore, if there is a material issue of fact as to whether or not EarthLink was acting within the ordinary course of business . . . ." 396 F.3d at *505. The court also observed:

> If ISPs were not covered by the ordinary course of business exception, ISPs would constantly be intercepting communications under ECPA because their basic services involve the "acquisition of the contents" of electronic communication.

*Id.* at 503-04 (2d Cir. 1995) (citing the § 2510(4) definition of "intercept") (emphasis added). WOW seizes on this language and incorrectly interprets it as ISP immunity:

> The "ordinary course of business" exception exempts from liability ISPs and other service providers whose services consist of acquiring and passing on the contents of electronic communications.

Obviously, WOW has it backwards, and its misstatement of the *EarthLink* holding would make for poor public policy, given the trusted role ISPs play. *EarthLink* does not express an exemption

for purveyors of electronic communications. *EarthLink* states that the exemption covers ISPs if, as it required EarthLink to show, they are acting in the ordinary course of business.

WOW's effort to cherry-pick and then distort language from a case should be rejected. *EarthLink* says an ISP, such as WOW, acquires the contents of communications in the ordinary course of its business. Whether a challenged acquisition meets the exemption is a question of fact. Plaintiffs have alleged WOW cannot make that ordinary course of business showing here.

### 3. *Kirch v. Embarq*, 702 F.3d 1245 (10th Cir. 2012), *affirming* 2011 WL 3651359 (D.Kan. Aug. 19, 2011), *cert. petition filed*, 81 U.S.L.W. 3567 (U.S. Mar. 28, 2013) (12-1181)

WOW cites the Tenth Circuit decision in *Kirch v. Embarq* to support an interpretation of *EarthLink* as conferring some sort of immunity—which *EarthLink* does not. Other than that, WOW makes no mention of the Tenth Circuit decision, with good reason.

In *Kirch*, the Tenth Circuit court focused on whether Embarq received communications *from* NebuAd and appears to have considered only the NebuAd device as the wiretap device:

> NebuAd's use of the UTA gave Embarq access to no more of its users' electronic communications than it had in the ordinary course of its business as an ISP. Embarq is therefore protected from liability by the statutory exemption for activities conducted in the ordinary course of a service provider's business.

702 F.3d at 1249-50. Ignoring where the wiretap transmissions start cannot be reconciled with *U.S. v. Szymuszkiewicz*, 622 F.3d 701 (7th Cir. 2010), *U.S. v. Rodriguez*, 968 F.2d 130, 136 (2d Circ. 1992) ("[r]edirection presupposes interception"), *see infra* p. 7, or other authorities cited herein. In addition, the Tenth Circuit's scope of its analysis limited to the NebuAd appliance is materially distinguishable on the facts of the instant matter. Here, Plaintiffs specifically alleged that WOW's network resources were part of the wiretapping device or devices, when WOW re-cabled its network environment and created a physical diversion route to the NebuAd appliance. *See* Second Amended Class Action Complaint, Doc. No. 130-1 ¶ 30, 78-80, *Valentine v. Wideo-*

*pen West* (No. 09 C 7653 [1:09-cv-07653]); *see generally*, *id.* ¶¶ 28-32, 47, 78-80, 91.  Further, while the Tenth Circuit found that Embarq received no data *from* the NebuAd device, Plaintiffs here have specifically alleged: "WOW maintained the flow of Plaintiffs' and Class Members' Internet traffic *to and from* the Appliances and provided ongoing network environment resources and services." *Id.* ¶ 31 (emphasis added).

To the extent the Tenth Circuit adopted the lower court's inference of a new "access" element, that, too, is wholly inconsistent with the *Szymuszkiewicz* decision and the other authorities by Plaintiffs in this brief.[3]

### 4.  *U.S. v. Rodriguez*, 968 F.2d 130 (2d Cir. 1992)[4,5]

The Second Circuit's language *Rodriguez* language, is particularly applicable to WOW:

> The statute does not specify precisely where an interception is deemed to occur. <u>It seems clear that when the contents of a wire communication are captured or redirected in any way, an interception occurs at that time.</u> Such an interception plainly occurs at or near the situs of the telephone itself, for the contents of the conversation, whether bilateral as is usually the case, or multilateral as is the case with a conference call, are transmitted <u>in one additional direction. Redirection presupposes interception.</u>"

968 F.2d at 136 (emphasis added).

---

[3] The *Kirch* lower court looked at the dictionary definition of "acquisition." The court inferred that "possession, control, or power of disposal" of contents meant "access to" or perhaps "access of" contents. The court did not explain why it excluded the possibility that one may be able to possess, control, or dispose of a communication and its contents without having access to or engaged in access of its contents (by analogy, such as misdelivering a sealed envelope or throwing away a locked box to which one never had the combination). *See* 2011 WL 3651359 at *6, n.27.

Further, the Tenth Circuit *Kirch* decision stands in stark contrast to the authority of this Circuit and other more persuasively reasoned authorities cited herein. This can be seen where the Tenth Circuit observed that the acquisition element under ECPA might call for a distinction between "access to" and "acquisition of," but that it did not need to draw that line because it deemed the ordinary course of business exemption applicable. 702 F.3d at 1249.

[4] The defendant is "Rodriguez." WOW refers to this case as "*U.S. v. Rodriquez*" or "*Rodriquez*."

[5] WOW correctly notes that, in Plaintiffs' reference to one of the cases that relied on *Rodriguez*, *Noel v. Hall*, 568 F.3d 743 (9th Cir. 2009), Plaintiffs' citation contained a misplaced parenthetical statement summarizing a point for which *Noel* does not stand. Setting aside the irony of WOW's indignation, the misplaced language related to a *compare* citation that Plaintiffs will not attempt to introduce now.

Of the *Rodriguez* holding, WOW states: "This is a logical outcome, because once a redirection occurs, the communication is ***en route*** to the entity that will ultimately acquire it." Def. Opp. at 11 (emphasis in original). That does not make sense. The ECPA defines interception *as* acquisition. *Rodriguez* defines redirection or capture *as* interception. It does not say that redirection *precedes* interception, but that redirection *presupposes* interception, *i.e.*, if WOW redirected, it intercepted. WOW, in its continuing attempt to push redirection somewhere outside the zone of liability, tries to split redirection off as a preceding event, followed by some not-yet-acquired, *en route* stage, after which acquisition (and, by definition, interception) take place. WOW's interpretation makes sense only in a universe where "acquisition" requires "access," but such a universe is inconsistent with *Rodriguez*. Taking *Rodriguez* at its word and applying it to WOW is simple: interception starts when an ISP like WOW acquires the whole of a communication, contents included, and redirects that whole communication, contents included, or redirects communications in one additional direction that the parties did not intend them to go.

WOW offers this straw distinction: "The court in [*Rodriguez*] did ***not*** hold that a telephone company that allows a wiretap to be installed is deemed, as a matter of law, to have acquired the contents of every communication that is redirected through that wiretap." Def. Opp. at 11 (emphasis added). But acquisition (*i.e.*, capture or redirection) of contents is the very issue the *Rodriguez* court was addressing. The court even used the capture of contents as a point of comparison in its discussion of the pen registers in the case; the court pointed out that, unlike wiretaps, pen registers merely record phone numbers dialed and so do not capture contents. 968 F.2d at 135, citing *U.S. v. New York Telephone Co.*, 434 U.S. 159, 161 n. 1 (1977); 18 U.S.C. § 3123.

Further, WOW's attempted distinction fails because WOW did not merely "allow" a wiretap to be installed. WOW installed it, which required modifications by WOW to its own

physical network resources. Bresnan tried the same "passive bystander" defense and the *Morten-sen* court rejected it. 2010 WL 5140454 at *2. Elsewhere in its brief, WOW makes a stronger statement, asserting: "None of the cases on which Plaintiffs rely . . . hold that an entity that redi-rects communications to a third party is deemed to have also acquired those communications as a matter of law." Def. Opp. at 2 (emphasis in original). Plaintiffs' contend *Rodriguez* does that.

WOW's final word on *Rodriguez* is another straw distinction: "Indeed, the court did not opine on whether **any** entity would be civilly liable for an interception under 18 U.S.C. § 2511(1)(a)." *See* Def. Opp. at 11 (emphasis in original). That is correct. Plaintiffs cited another case for the proposition that criminal and civil proceedings rely on the same "intercept" defini-tion. *See* Pltf. MFR at 6, citing *See In Re Innovatio IP Ventures, LLC Patent Litig.*, 2012 WL 3594400 at *3 (N.D. Ill. Aug. 22, 2012). WOW ignored that argument, and it should be deemed that WOW has conceded it.

### 5. *Amati v. City of Woodstock*, 829 F.Supp. 998 (N.D. Ill. 1993)

In *Amati*, police department lines were wiretapped and calls recorded. The interception question analyzed by the court was whether acquisition requires listening: "This court agrees with the Eleventh Circuit that the term 'intercept' as it relates to an 'acquisition' refers to the place where a communication is initially obtained." *Id.* at 1008 (emphasis added).

WOW creates this unsupportable interpretation: "In [*Amati*], however, the court assigned liability to the individuals who allegedly recorded—and therefore acquired—the intercepted conversations on the other end of the phone tap." Def. Opp. at 11-12 (emphasis added).

Plaintiffs cited this case as support for the proposition that acquisition of contents does not require listening—it does not require accessing of content. WOW offers no rebuttal to that. It is unclear what point WOW is trying to make. Perhaps WOW seeks to equate "recording" with "acquisition" so that WOW can position itself at some pre-fixed-in-a-tangible-medium location.

That concept has no support in the ECPA. Regardless, whatever WOW sees at the other end of the phone tap, that phone tap has a beginning, and that is WOW's bailiwick.

### 6. *U.S. v. Turk*, 526 F.2d 654, 58-59 (5th Cir. 1976)

*Turk* is one of several case cited by Plaintiffs for the proposition that a communication can be intercepted without anyone ever listening to it. Pltfs. MFR at 7-8. WOW parenthetically discounts the relevant *Turk* language as dictum. Def. Opp. at 12 and n.9. Nonetheless, the relevant language in *Turk* has been approvingly cited by other authorities, including courts in this district. *See, e.g.*, *Amati*, 829 F.Supp at 1007-08.

*U.S. v. Nelson*, 837 F.2d 1519, 1526-27 (11th Cir. 1988) relied on *Turk*'s reasoning. WOW attempted to distinguish *Nelson* as a case that "dealt with questions of federal court jurisdiction to authorize a wiretap, rather than whether any entity would be liable for communications intercepted using the wiretap." Def. Opp. at 12. This is a straw distinction. On a suppression motion, the *Nelson* court analyzed the same definition of "intercept" in § 2510(4) at issue in the instant case. *Nelson*, 837 F.2d at 1527, citing *Turk*, 526 F.2d at 658-59.

### D. Carrier Participating in Interception is Primarily Liable

### 1. *Mortensen v. Bresnan*, 2010 WL 5140454 (D.Mont. Dec. 13, 2010)

As discussed *supra*, p. 1, this case, involving an ISP that partnered with NebuAd, is one that WOW claims to have distinguished. In *Mortensen*, Plaintiffs sued an Internet services provider, Bresnan, making interception allegations substantially similar to those here. *See Mortensen*, 2010 WL 4716744 at *1-*2. Bresnan moved to dismiss plaintiffs' Wiretap Act claims, alleging that plaintiffs did not sufficiently allege interception. Bresnan argued, like WOW, that "it was nothing more than a passive conduit for NebuAd's interception of Plaintiffs' personal information." The *Mortensen* court noted that Bresnan had changed its network and configuration to

accomplish the diversion of communications, and had funneled the communications through the reconfigured path and into the NebuAd device. The court held:

> Plaintiffs have pled sufficient facts to establish, for purposes of a 12(b)(6) motion to dismiss, that Bresnan intercepted Plaintiffs' electronic communications in violation of the ECPA. Bresnan's Motion to Dismiss on this ground is DENIED.

*Id*. at *2. WOW called the court's interception analysis dicta. *See* Def. Opp. at 3, 9. Obviously, that is not correct.[6] If WOW calls this holding "dicta" because the court ultimately dismissed the interception claims based on Bresnan's alternative consent defense, WOW is mistaken. *See* Def. Opp. at 3; Mortensen, 2010 WL 5140454 at *3-4 (consent raised as alternative ground and plaintiffs did not contest having agreed to some interception). Bresnan's success on the alternate ground of consent does not change the court's threshold interception analysis.

WOW also accuses the *Mortensen* court of failing to "grapple with the statutory definition equating interception with acquisition." Def. Opp. at 21. But Bresnan, itself, admitted that, as an ISP, communications were accessible to it. *See Mortensen*, 2010 WL 5140454 at *2-4; Defendant's Brief in Support of its Motion to Dismiss, Doc. No. 11 at 17, *Mortensen v. Bresnan*, 2010 WL 5140454 (CV-10-13-BLG-RFC [1:10-cv-00013-RFC]) (D. Mont.). Acquisition was not at issue.

### 2. *Jacobson v. Rose*, 592 F.2d 515 (9th Cir. 1978)

Contrary to WOW's suggestion, Def. Opp. at 13, none of these are secondary liability cases. In the *Jacobson* case, Nevada Bell argued that, because no employees actually listened to tapped conversations, it should not be held liable. *Id.* at 522 (citations omitted). The court, how-

---

[6] WOW attempts to rely on a "dicta" distinction several times in its brief, but without ever explaining how the court's statement is dictum and not the holding. *See Tate v. Showboat Marina Casino Partnership*, 431 F.3d 580, 582 (7th Cir. 2005) (the holding of a case includes, "besides the facts and the outcome, the reasoning essential to that outcome").

ever, held that listening, *i.e.*, *accessing communication contents*, was not the issue, tapping of phones was. *Id.* The court found a violation for interception and held:

> When many individuals together take the steps necessary for the recording of telephone conversations, the victim's privacy is violated, regardless of which particular individuals actually listen to the tapes. Additionally, we do not believe that Congress meant to allow those tapping phones to determine the possible scope of civil liability by their limiting who among them would listen to the tapes.

adding that "[w]here two or more persons act in concert, it is well settled . . . that each will be liable for the entire result," and, "Because Nevada Bell joined with the Washoe officials in the wiretapping, its failure to listen to the tapes should not insulate it from liability for the invasion of privacy it helped to occasion." *Id.*

WOW attempts to frame the liability as based on Nevada Bell's active taping of calls, Def. Opp. at 13, but also claims it is unclear from the underlying facts whether liability was premised on actual taping. *Id.* It is clear, and the answer is no. Nevada Bell was liable for "tak[ing] the steps necessary for the recording," 592 F.2d at 522. The court noted: "In our case Bell was involved in the *setting up* of the recording devices." *Id.* at 522 n.12 (emphasis added).

Incredibly, WOW states, "Regardless, the opinion does ***not*** hold that the telephone company's act of diverting communications through a wiretap constituted an "acquisition."" *Id.* at 13. Perhaps, it is true that the court does not discuss which actor turned on the tap, but this is of no help to WOW, since the opinion makes clear that, at some point, it got turned on, and Nevada Bell was held liable for setting it up in the first place. If WOW is focusing this version of its straw holding on a claim that the court's holding did not specifically use the word "acquisition," WOW is wrong. The court's analysis begins with a citation to the § 2510(4) language defining "intercept" as the "acquisition of contents."

Further, WOW makes the unsupported assertion that the opinion "contains dicta that could be read to impose secondary liability on the telephone company for its role in the wiretap-

ping scheme." *Id.* at 13. To the contrary, this case stands for the proposition that hands-on, direct participants in the wiretapping are directly liable for interception.

### 3. *Hepting v. AT&T Corp.*, 439 F Supp. 2d 974 (N.D. Cal. 2006)

WOW again narrowly characterizes what the court did or did not hold. The *Hepting* court denied AT&Ts motion to dismiss the pleadings on standing grounds, holding: "The gravamen of plaintiffs' complaint is that AT&T has created a dragnet that collects the content and records of its customers' communications." *Id.* at 1000. As to the decision's implications for primary or secondary liability, the court held:

> AT&T incorrectly focuses on whether plaintiffs have pled that the *government* "monitored [plaintiffs'] communications or records" . . . . [T]he proper focus is on *AT&T's* actions. Plaintiffs' statutory claims stem from injuries caused solely by AT&T through its alleged interception, disclosure, use, divulgence and/or publication of plaintiffs' communications or communication records.

*id.* at 999 (emphasis in original).

### 4. *Menda Biton v. Menda*, 812 F.Supp. 283 (D.P.R. 1993)

WOW construes this case as one involving secondary liability, but it can only able to do so aided on a presumption that the definition of "acquisition" includes an access requirement. The *Menda* court explicitly stated its analysis was based on joint-and-several liability.

### E. Other Cases

WOW's brief does not mention and it should be deemed to have conceded support for: *Katz v. U.S.*, 389 U.S. 347 (1967) (warrant requirement); *Berger v. New York*, 388 U.S. 41 (1967) (wiretap as dragnet); *U.S. v. Lewis*, 406 F. 3d 11 (1st Cir. 2005) (interception does not require listening); and *U.S. v. Kazarian*, 2012 WL 1810214 (S.D.N.Y. May 18, 2012), citing *Rodriguez*, 968 F.2d at 136 (jurisdiction spans from tapped phone to place where redirected communications first heard).

14

### F. Reconsideration is in the Interest of Justice

A court's finality concerns are "less compelling" in granting reconsideration to address a question that was not previously contested. *Arizona v. California*, 460 U.S. 605, 644 (1983). Pltfs. MFR at 4. As set forth above on page 2, the access argument on which the Court decided Defendant's motion to dismiss was not previously raised or litigated.

WOW does not and cannot reasonably contest this Court's authority to revise its non-final order pursuant to Rule 54(b), particularly given the additional flexibility recognized by the Seventh Circuit of a judge's reconsideration of its own ruling. *See Pickett v. Prince*, 207 F.3d 402, 407 (7th Cir. 2000). The manifest error of law and fact and clearly erroneous outcome shown by Plaintiffs' motion and this reply make reconsideration particularly compelling as a matter in the interest of justice. *See Keene Corp. v. Int'l Fidelity Ins. Co.*, 561 F.Supp. 656, 665 (N.D. Ill. 1982), *aff'd*, 736 F.2d 388 (7th Cir. 1984); *Christianson v. Colt Ind. Operating Corp.*, 486 U.S. 800, 817 (1988), quoting *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983).

### III. CONCLUSION

In sum, WOW's failure to marshal meaningful law and litigation history to support its opposition and the extent to which it distorts authorities and the litigation record fail to rebut Plaintiffs' position that reconsideration is compelling as a matter of substantive law, under the standards that apply to motions for reconsideration, and in the interest of justice.

Wherefore, Plaintiffs pray that this Court grant the relief requested and reconsider its dismissal of their section 2511(1)(a) interception claims against WOW.

Dated: May 13, 2013

Respectfully submitted,
KAMBERLAW, LLC

By:      <u>s/David A. Stampley</u>

David A. Stampley (*pro hac vice*)
100 Wall Street, 23rd Floor
New York, New York 10005
Telephone:(212) 920-3072
Facsimile: (212) 202-6364

One of the Attorneys for Plaintiffs, on behalf
of themselves and all others similarly situated

MICHAEL ASCHENBRENER
mja@aschenbrenerlaw.com
ASCHENBRENER LAW, P.C.
10 South Riverside Plaza, Suite 1800
Chicago, IL 60606
Telephone: (312) 462-4922
Facsimile: (312) 462-4923

**CERTIFICATE OF SERVICE**

I hereby certify that on May 13, 2013, I electronically filed with the Clerk of the Court the foregoing Plaintiffs' Memorandum of Law In Opposition to Defendant's Second Motion to Dismiss using the CM/ECF system which will send notification of such filing to the following attorneys for the Defendant and their e-mail addresses on file with the Court:

**TO:**

Thomas A. Counts
Paul Hastings LLP
55 Second Street, 24th Floor
San Francisco, CA 94105
(415) 856-7070
tomcounts@paulhastings.com

Ryan C. Nier
Paul Hastings LLP
55 Second Street, 24th Floor
San Francisco, CA 94105
(415) 856-7000
ryannier@paulhastings.com

Giselle Perez de Donado
Paul Hastings LLP
191 North Wacker Drive, 30th Floor
Chicago, IL 60606
(312) 499-6000
giselleperez@paulhastings.com

Kelly Ann Demarchis
Paul Hastings LLP
875 15th Street NW
Washington, DC 20005
(202) 551-1700
kellydemarchis@paulhastings.com

Kenneth W. Gage
Paul Hastings LLP
191 North Wacker Drive, 30th Floor
Chicago, IL 60606
(312) 499-6046
kennethgage@paulhastings.com

s/David A. Stampley
David A. Stampley