**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DAN VALENTINE and W. BRAND BOBOSKY, individually and on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| | ) | No. 09 C 7653 |
| Plaintiffs, | ) ) | |
| v. | ) | Judge Edmond E. Chang |
| | ) | |
| WIDEOPEN WEST FINANCE, LLC, | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Dan Valentine and W. Brand Bobosky brought this proposed class action alleging that their Internet service provider (ISP), Defendant WideOpen West Finance, LLC, violated the Electronic Communications Privacy Act (ECPA), 18 U.S.C. § 2510 *et seq.*[1] In their Second Amended Complaint [R. 135], Plaintiffs alleged that WOW intercepted, disclosed, and used their electronic communications when WOW diverted their communications to a third-party advertising service, NebuAd, Inc., in direct violation of §§ 2511(1)(a), 2511(1)(c), and 2511(1)(d) of the ECPA. In December 2012, this Court granted WOW's motion to dismiss [R. 136] the § 2511(1)(a) interception claim for failure to state a claim. Fed. R. Civ. P. 12(b)(6); R. 157, Mot. Dismiss Order at 5-10. At the same time, because neither party's briefs addressed Plaintiffs' disclosure and use claims under §§ 2511(1)(c) and (d) respectively, the Court requested position papers on what to do with those remaining claims. Mot. Dismiss

---

[1]Jurisdiction is proper under 28 U.S.C. § 1331.

Order at 10-11. Before the Court now are Plaintiffs' motion to reconsider the dismissal of the § 2511(1)(a) interception claim [R. 165], the parties' position papers on the §§ 2511(1)(c) and (d) disclosure and use claims [R. 158, 159, 164, 172], and Plaintiffs' motion for leave to amend their complaint [R. 163], along with a Proposed Third Amended Complaint [R. 161-1]. For the reasons explained more fully below, both of Plaintiffs' motions [R. 163, 165] are denied, and the §§ 2511(1)(c) and (d) claims are dismissed.

## I. Background

WOW is an Internet service provider in several states, including Illinois. R. 135, Second Am. Compl. ¶ 15. WOW provided Internet services to over 300,000 customers, including Plaintiffs Dan Valentine and Brand Bobosky. *Id.* ¶¶ 13-14. Plaintiffs allege that, in or around late 2007, WOW installed, on its broadband network, devices that diverted all of WOW's customers' Internet communications to NebuAd. *Id.* ¶¶ 26-32, 45, 91. NebuAd then accessed and analyzed these communications to serve targeted advertisements to WOW customers. *Id.* ¶¶ 92-93. Plaintiffs' Second Amended Complaint alleges that WOW's diversion of their communications to NebuAd violated three provisions of the ECPA: § 2511(1)(a) (interception of communications), §2511(1)(c) (disclosure of communications), and § 2511(1)(d) (use of communications). *Id.* ¶¶ 87-89, 107. In a Proposed Third Amended Complaint, Plaintiffs now allege two additional ECPA violations: § 2511(1)(a) (procurement of interception), and § 2511(3)(a) (divulging communications). R. 161-1, Proposed Third Am. Compl. ¶¶ 90-91 (citing § 2511(1)(a)), 110-17 (citing § 2511(3)(a)).

2

By way of background, the parties have already briefed four separate motions to dismiss connected to this lawsuit. In 2009, the United States District Court for the Northern District of California dismissed an earlier lawsuit brought by Plaintiff Valentine against WOW and five other ISPs for lack of personal jurisdiction. *See Valentine v. NebuAd, Inc.*, 2009 WL 8186130, at *2, *10 (N.D. Cal. Oct. 6, 2009) (limiting its dismissal to lack of personal jurisdiction and declining to rule on whether the complaint stated a claim). Valentine then filed this case against WOW in this Court in December 2009. R. 1. WOW filed two motions to dismiss that version of the Complaint. R. 22, 59. Although the parties briefed both motions, neither motion was resolved on the merits. R. 42 at 5 (denying motion to dismiss pending a status hearing to more clearly define the issues), R. 123 (granting a motion to compel arbitration of six non-ECPA claims and denying the motion to dismiss as moot).

Parallel to these motions to dismiss, Plaintiffs filed two amended complaints. Valentine first amended his complaint in September 2011, adding W. Brand Bobosky as an additional named plaintiff. R. 101-1, First Am. Compl. ¶ 6b. Plaintiffs amended their complaint again in May 2012, abandoning their arbitrable claims and proceeding solely on the ECPA claim. Second Am. Compl. In response to Plaintiffs' Second Amended Complaint, WOW filed another motion to dismiss [R. 136], which this Court granted in part. Mot. Dismiss Order at 20 (dismissing § 2511(1)(a) interception claim).

## II. Legal Standard

Federal Rule of Civil Procedure 54(b) states that a court may reconsider an interlocutory ruling "at any time before the entry of judgment adjudicating all the

claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Motions for reconsideration serve the narrow purpose of presenting newly discovered evidence or correcting manifest errors of law or fact. *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987) (citation omitted). A motion to reconsider is proper when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (citation omitted). But a motion for reconsideration "does not provide a vehicle for a party to . . . advance arguments that could and should have been presented to the district court prior to the judgment." *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000) (internal quotation marks and citation omitted); *see also Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996) ("[R]econsideration is not for rehashing previously rejected arguments.").

## III. Analysis

Plaintiffs advance two arguments in support of their motion for reconsideration. First, Plaintiffs contend that WOW never presented this Court with the argument that Plaintiffs' interception claim should fail because WOW never accessed the contents of their electronic communications. Second, citing numerous cases that Plaintiffs did not rely on in earlier briefings, Plaintiffs argue that this Court made a manifest error of law. Finally, although technically not part of their motion for reconsideration, Plainitffs' in their position papers [R. 158, 164] urge this Court to keep their disclosure

4

and use claims pending even if the Court refuses to grant reconsideration. The Court addresses each of these arguments in turn.

## A. Interception

Plaintiffs first argue for reconsideration of the dismissal of their § 2511(1)(a) interception claim because WOW did not raise the argument on which the Court based its dismissal. Plaintiffs contend that the issue of "access to" the contents of their electronic communications was not raised by WOW in its motion to dismiss. R. 165, Pls.' Mot. Recons. at 1, 4. To be sure, if the Court had made a decision outside the adversarial issues presented, reconsideration might be warranted. *See Bank of Waunakee*, 906 F.2d at 1191. But WOW's motion and its opening brief properly teed up this issue for both Plaintiffs and the Court to consider. Thus, reconsideration on this basis is not warranted.

Plaintiffs' reconsideration motion is premised on the assertion that the Order added an "access" requirement, over and above the element of "acquisition," into the ECPA's § 2511(1)(a) interception provision. *See* Pls.' Mot. Recons. at 1, 6 n.1; *see also* R. 174, Pls.' Reply Br. at 2. Plaintiffs point to one sentence in the Order that they believe introduces such a requirement: "Yes, WOW diverted the communications to NebuAd, but it was NebuAd that actually acquired the communications in the sense of the statute, meaning it was NebuAd that actually *accessed* the communications when it analyzed them to fashion targeted ads." Mot. Dismiss Order at 7-8 (emphasis added).

5

To be clear, the Court did not intend to impose such a requirement. The quoted sentence from the Order merely underscored that Plaintiffs' Second Amended Complaint only alleged that *NebuAd*—not WOW—had acquired (and accessed) the contents of Plaintiffs' communications. What was, and still is, missing from Plaintiffs' pleadings are any factual allegations that *WOW* ever acquired *or* accessed such contents. Yes, Plaintiffs' point is well-taken that "acquisition of" contents might not necessarily coincide with "access to" contents. *See* Pls.' Reply Br. at 4. Indeed, it is possible to envision a scenario where an ISP contracted with a third-party to extract and share, from the ISP's network, customer data that the ISP otherwise would not have had access to. The ISP might opt not to analyze the data from a certain subset of customers, all the while having access to that data if it wanted it. In other words, the ISP might have acquired the contents but chosen not to access them. In that scenario, the distinction between "access" and "acquisition" might make a difference.

But to resolve this motion, the Court need not consider whether there is a meaningful difference between "access to" and "acquisition of" content because any possible distinction would not alter the outcome of this case. *Cf. Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1249 (10th Cir. 2012) (declining to draw a line between "access" and "acquisition" because the ISP's only access to communications was solely in the ordinary course of its business). The fact still remains that in all iterations of their complaint, including their Proposed Third Amended Complaint, Plaintiffs have never made *factual* allegations that WOW either acquired (or actually accessed) the

contents of their communications. *See* Mot. Dismiss Order at 7 (drawing a distinction between factual allegations and legal conclusions).

Setting aside any possible distinction between access and acquisition, WOW adequately raised the issue on which the Court based its dismissal of the interception claim. In its motion to dismiss, WOW argued that dismissal was proper because "Plaintiffs fail to allege that WOW intercepted the contents of any communication . . . because they do not allege WOW ever acquired such contents." R. 136, Def.'s Mot. Dismiss at 1. In its opening brief in support of its motion, WOW elaborated that "[a] defendant cannot be held liable under the ECPA if it simply acts as a conduit to and from an entity that acquires the contents of a communication, but does not itself acquire those contents." R. 137, Def.'s Br. at 11 (citing *Kirch v. Embarq Mgmt. Co.*, 2011 WL 3651359, at *20-21 (D. Kan. Aug. 19, 2011)). WOW also noted that "Plaintiffs do not allege facts to support a conclusion that WOW itself *ever* acquired . . . the contents of any of their communications." *Id.* at 12. Indeed, WOW pointed out that Plaintiffs' Second Amended Complaint alleged that it was NebuAd—not WOW—that received, "*accessed* and analyzed" the contents of their communications. *Id.* (quoting Second Am. Compl. ¶ 6) (emphasis added).

The primary case on which WOW relied in its motion to dismiss, *Kirch v. Embarq*, 2011 WL 3651359, also made clear that the issue of access to or acquisition of contents of communications is central to an interception claim under the ECPA. In *Kirch*, the district court granted summary judgment for the defendant ISP in part because the plaintiff had failed to plead that the ISP had actually acquired the

7

plaintiff's electronic communications. *Id.* at *6. The court emphasized that it was "undisputed" that the ISP "had no access to" the information extracted by NebuAd; instead, the ISP only had "access" to the raw data that ordinarily flowed through its network. *Id.* Such access does not violate the ECPA. *Id.*; *see also* 18 U.S.C. § 2510(5)(a)(ii) (excluding communications that are intercepted by an ISP in the "ordinary course of its business"); § 2511(2)(a)(i) (excluding communications that are intercepted by an employee of an ISP "in the normal course of his employment"). In short, WOW's motion to dismiss, its opening brief in support of its motion, and the cases that WOW relied on all adequately framed the acquisition issue for Plaintiffs and the Court.

Second, Plaintiffs contend that the Court's holding on the interception claim was a manifest error of law. Pls.' Mot. Recons. at 1. In support of their argument, Plaintiffs present this Court with several cases—many of which neither party cited in their earlier motion-to-dismiss briefs—that Plaintiffs now believe support their interpretation of § 2511(1)(a). But a manifest error of law "is not demonstrated by the disappointment of the losing party"; instead, it is the "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (internal quotation marks and citation omitted). Here, none of the authorities that Plaintiffs cite establish a manifest error that warrants granting a motion for reconsideration.

Although Seventh Circuit opinions of course bind this Court, the criminal case that Plaintiffs cite, *United States v. Szymuszkiewicz*, 622 F.3d 701 (7th Cir. 2010), does

not address the precise question at issue here. In *Szymuszkiewicz*, the court reviewed the defendant's conviction under the ECPA for intentionally intercepting his employer's emails. *Id.* at 703. The defendant had set up a "rule" on his supervisor's computer so that it automatically forwarded to the defendant all emails that the supervisor received. *Id.* WOW is correct to point out that the defendant there did acquire the contents of the emails (regardless of whether or not the defendant actually accessed the emails and read them). R. 171, Def.'s Resp. Br. at 12. But *Szymuszkiewicz* ultimately does not govern this case because the defendant there did not simply serve as a conduit to a third-party. The email-forwarding rule that the defendant set up diverted the emails directly to his computer (via the network's server). 722 F.3d at 703-04. Unlike this case, there was no third-party involved. In other words, the defendant himself was the "acquirer." Thus, because the defendant did not serve as a conduit, *Szymuszkiewicz* has no bearing on the outcome of this case.

Plaintiffs also heavily rely on a lone quote from a Second Circuit case, *United States v. Rodriguez*, 968 F.2d 130 (2d Cir. 1992), to support their interpretation of § 2511(1)(a). *See* Pls.' Mot. Recons. at 5 ("Redirection presupposes interception." (quoting *Rodriguez*, 968 F.2d at 136)). But *Rodriguez* also does not help resolve the issue in this case. In *Rodriguez*, there was no debate about whether an interception had actually occurred. The only issue was whether the court that had authorized a wiretap had jurisdiction to do so. *Rodriguez*, 968 F.2d at 135-36. Thus, considering the *Rodriguez* quote in its proper context, it concerned where the interception occurred, not

9

whether there was an interception in the first place by an ISP like WOW, which is the issue on the table now.

The only authority that Plaintiffs cite that does have any bearing on the issue in this case—whether an ISP's role as a conduit constitutes interception and thus subjects it to ECPA liability—is squarely against Plaintiffs. Following the dismissal order [R. 157], the Tenth Circuit in *Kirch v. Embarq Management Co.* affirmed the district court's dismissal of the plaintiffs' interception claim. 702 F.3d 1245. The appellate court affirmed that mere installation of the NebuAd device in the ISP's network did not constitute unlawful interception. *Id.* at 1249-51. Indeed, the Tenth Circuit emphasized that the device gave the ISP access to no more information than it already had in the ordinary course of business. *Id.* at 1250. The court reasoned that the ISP could only be liable under § 2511(1)(a) if the plaintiffs could allege, and ultimately prove, that the NebuAd device facilitated the ISP's acquisition of additional information other than that to which it already lawfully had access. *See id.* at 1251; *see also Hall v. Earthlink Network, Inc.*, 396 F.3d 500, 505 (2d Cir. 2005) (holding that "ISPs do not 'intercept' if they are acting within the ordinary course of their businesses"). Thus, *Kirch* further supports this Court's holding that absent any factual allegations that WOW acquired the contents of Plaintiffs' communications, Plaintiffs have failed to state a claim for direct ECPA liability under 28 U.S.C. § 2511(1)(a).

In the end, while Plaintiffs' substantive legal arguments are not entirely unreasonable, Plaintiffs could and should have made these arguments in the earlier rounds of briefing. With the exception of *Kirch* from the Tenth Circuit (which went

10

against the plaintiffs), all of the cases that Plaintiffs rely on in their present motion were decided long before Plaintiffs opposed WOW's motion to dismiss. Because a reconsideration motion is not the proper vehicle for advancing new arguments or rehashing old ones, Plaintiffs' motion for reconsideration is denied.

## B. Disclosure and Use

Although not technically part of Plaintiffs' motion for reconsideration, this Court must also determine what to do with Plaintiffs' disclosure and use claims under §§ 2511(1)(c) and (d). Because the parties did not directly address Plaintiffs' disclosure and use claims in their dismissal-motion briefs, the Court postponed ruling on these claims in its previous Order. *See* Mot. Dismiss Order at 10-11. The Court asked whether the parties had neglected to address these claims because they had assumed that the decision on the interception liability theory would control the decision on the disclosure and use claims. *Id.* at 11. Because their positions were not clear, the Court requested that the parties submit position papers addressing what to do with these claims. *Id.* at 11, 20. Then, because Plaintiffs' initial position paper was in the nature of a request for reconsideration of the interception claim, the Court requested supplemental position papers as well. R. 160. Again, the Court instructed the parties to directly address the issue of what to do with the disclosure and use claims and, in particular, what the Court should do with those claims if Plaintiffs' requested relief is denied. *Id.*

In their first position paper, Plaintiffs argued that their disclosure and use claims are still alive and pending. R. 158, Pls.' Position Paper at 2. At the same time,

Plaintiffs stated that resolution of these claims might require relitigating the § 2511(1)(a) interception claim. *Id.* Plaintiffs also proposed that the Court grant a motion to reconsider the interception claim or, in the alternative, enter a partial judgment and stay the disclosure and use claims pending appellate resolution of the interception claim. *Id.* at 3-4. Finally, in response to the Court's follow-up question of what it should do with the disclosure and use claims if the motion for reconsideration is denied, Plaintiffs merely suggest that the litigation proceed on the pending disclosure and use claims, which they contend are still viable because WOW did not contest these claims in its motion to dismiss. R. 164, Pls.' Supplement Position Paper at 1-2.

WOW argues that the Court's holding that WOW did not intercept the contents of Plaintiffs' communications necessarily defeats Plaintiffs' disclosure and use claims. R. 159, Def.'s Position Paper at 1, 3-4. WOW elaborates that "WOW could not have used or disclosed the contents of Plaintiffs' communications without first acquiring those contents." R. 172, Def.'s Supplement Position Paper at 3 (emphases omitted). In other words, WOW argues that if the interception claim fails, the disclosure and use claims must fail as well.[2] Although they had the opportunity in their supplemental position paper, Plaintiffs did not respond to WOW's arguments. *See* Pls.' Supplement

---

[2]WOW also asserts that it contested the disclosure and use claims in its motion to dismiss. For one, WOW sought dismissal of Plaintiff's Second Amended Complaint "*in its entirety* with prejudice." Mot. Dismiss at 2 (emphasis added). And although the argument was not emphasized, it is also true that WOW did argue that § 2511(1)(d), which has language almost identical to § 2511(1)(c), first requires an unlawful "interception." *See* Def.'s Br. at 11.

Position Paper at 1-2 (stating only that "[n]otwithstanding Defendant's position as to these claims [R. 159], Plaintiffs believe they are viable").

The Court agrees with WOW, and the unambiguous language of the statute confirms its interpretation. A person cannot violate either the disclosure or use sub-paragraphs of the statute unless that person first "know[s] or ha[s] reason to know that the information *was* obtained through the interception of a[n] . . . electronic communication in violation of this subsection." 18 U.S.C. § 2511(1)(c), (d) (emphasis added). Thus, there is a certain temporal sequence of events that must occur before a person can be liable for disclosure or use.

First, there must be an interception: a person must acquire the contents of communications. Next, for a third-party (as opposed to the original interceptor) to be liable for disclosure or use, the third-party too must gain access to or acquire those contents. *See id.* (stating that a person violates the statute only if that person "discloses" or "uses . . . the *contents* of any . . . communication" (emphasis added)). To be clear, the third-party itself need not be found liable for an additional interception. Instead, the alleged discloser or user must simply disclose or use the *contents* of an already-intercepted communication. *Cf. Noel v. Hall*, 568 F.3d 743, 749 (9th Cir. 2009) (explaining that subsequent use of a recorded conversation is not another interception, but rather constitutes disclosure or use of the intercepted communication). Finally, the person disclosing or using those contents must know (or have reason to know) that the information was unlawfully intercepted. *See McCann v. Iroquois Mem'l Hosp.*, 622 F.3d

13

745, 753 (7th Cir. 2010) (citation omitted). Only when all of those requirements are met can any subsequent unauthorized disclosure or use constitute a violation of the ECPA.

Here, Plaintiffs' disclosure and use claims fail at the second step. Even accepting that NebuAd unlawfully intercepted Plaintiffs' communications, Plaintiffs have not alleged that WOW later had access to or acquired the contents of those intercepted communications. In other words, WOW had no intercepted information to disclose or use. To be sure, if Plaintiffs made factual allegations that WOW had directly intercepted their communications, their disclosure and use claims would remain viable. So too would these claims remain viable if Plaintiffs had amended their complaint to include factual allegations that WOW somehow received the contents of Plaintiffs' intercepted communications from NebuAd.[3] But as discussed below, Plaintiffs' Proposed Third Amended Complaint adds no such allegations. Thus, because Plaintiffs lost their interception claim, they lose their disclosure and use claims as well. For those reasons, the Court now dismisses Plaintiffs' disclosure and use claims under 18 U.S.C. §§ 2511(c) and (d).[4]

---

[3]Plaintiffs assert that "WOW knowingly used intercepted communications that had passed back through the NebuAd appliance and were delivered by WOW to Plaintiffs and Class Members." Pls.' Supplement Position Paper at 2 (citations omitted). Yet, all factual allegations of "use" relate to what NebuAd did, not WOW. *See, e.g.*, Second Am. Compl. ¶¶ 93-94, 99-100.

[4]As a result, Plaintiffs' request for a Rule 54(b) partial judgment is moot. *See* Pls.' Position Paper at 2 (requesting as an alternative to reconsideration that the Court enter partial judgment on its partial dismissal and stay the remaining disclosure and use claims pending appellate review of the interception claim).

### C. Motion for Leave to Amend

Plaintiffs' motion for leave to amend [R. 163], as well as a Proposed Third Amended Complaint [R. 161-1], are also pending before this Court. After a party has amended its pleadings once as a matter of right, district courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). But leave to amend is not granted automatically. *See Airborne Beepers & Video Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007). "[District] courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Johnson v. Cypress Hill*, 641 F.3d 867, 871-72 (7th Cir. 2011) (internal quotation marks and citation omitted); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). And while delay alone usually does not warrant denying leave to amend, the "longer the delay, the greater the presumption against granting leave to amend." *Johnson*, 641 F.3d at 872 (internal quotation marks and citation omitted). Here, futility, delay, and prejudice all point in favor of denying leave to amend.

After nearly four years since the filing of the initial complaint, Plaintiffs' Proposed Third Amended Complaint introduces two brand-new claims under the ECPA. First, Plaintiffs allege that WOW intentionally procured NebuAd to intercept their communications in violation of 18 U.S.C. § 2511(1)(a). *See* Proposed Third Am. Compl. ¶¶ 90-91. Second, Plaintiffs also allege that WOW violated § 2511(3)(a) when it divulged the contents of Plaintiffs' communications to NebuAd. *Id.* ¶¶ 110-17. Plaintiffs argue that these amendments are appropriate in light of the Court's Order

dismissing their interception claim. As to the procurement claim, Plaintiffs point to a footnote in the Court's Order where the Court reasoned that the ECPA's civil-liability provision, § 2520(a), encompasses claims for procuring interceptions. R. 163, Pls.' Mot. Leave Amend at 1-2 (quoting Mot. Dismiss Order at 10 n.3). Plaintiffs next argue that adding a divulgence claim is proper as well given the Court's finding that NebuAd acquired the contents of Plaintiffs' communications. *See id.* at 2. In support of their motion to amend, Plaintiffs also emphasize that they have added no new factual allegations to their proposed complaint and that the parties have not yet entered into full discovery. R. 176, Pls.' Mot. Leave Amend Reply Br. at 8.

That Plaintiffs have added no new factual allegations to their proposed complaint is actually a factor weighing *against* granting leave to amend because Plaintiffs could have made the claims much earlier. *See Bethany Pharmacal Co. v. QVC Inc.*, 241 F.3d 854, 861 (7th Cir. 2001) (reasoning that because plaintiff's proposed new claim was "virtually identical to the factual basis" of its earlier claim, it could have brought the new claim when it filed its original complaint "if it had prepared for this litigation with the appropriate foresight"). Plaintiffs have not offered a sufficient explanation for why they did not include these claims in their earlier complaints. To begin, Plaintiffs did not have to look very far to discover the purported legal basis of either of their new claims: the divulgence provision is in the very same section of the statute as all of its previous claims. And the procurement provision is not only within the same section of the statute, but within the very same subsection.

16

Plaintiffs claim that it was the Order that prompted them to realize that the case is now "uniquely suited" for a divulgence claim. Pls.' Mot. Leave Amend Reply Br. at 4. But Plaintiffs should not have required this Order to realize that pleading a divulgence claim might have been prudent. Because WOW is an ISP, it is not only a "person" for purposes of § 2511(1), *see* 18 U.S.C. § 2510(6) (defining "person" to include "any . . . corporation"), WOW is also an "entity providing an electronic communication service to the public" for purposes of § 2511(3)(a). Given that WOW is a potential defendant under both subsections, there does not appear to be any meaningful difference between "disclosing" and "divulging" contents, and Plaintiffs offer no suggestions. *Cf. Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 174 (5th Cir. 2000) (considering "disclose" under the ECPA and "divulge" under a state analogue to be equivalent).

What is more, adding a divulgence claim now would be futile. "An amendment is futile when it merely restates the same facts using different language, or reasserts a claim previously determined. Similarly, an amendment may be futile when it . . . could not withstand a motion to dismiss." *Bower v. Jones*, 978 F.2d 1004, 1008 (7th Cir. 1992) (internal quotation marks and citations omitted). To survive a motion to dismiss under both the disclosure and divulgence provisions, Plaintiffs would have to allege facts demonstrating that WOW disclosed or divulged *contents* of any communication. *See* 18 U.S.C. § 2511(1)(c), (3)(a) (holding liable persons or entities that intentionally disclose or divulge the contents of any communications). But as discussed above and in the previous Order, Plaintiffs have not sufficiently alleged that WOW ever acquired

17

or had access to any contents in the first place. Thus, raising a divulgence claim, while alleging no additional facts, is futile.

Plaintiffs' failure to allege additional facts also underscores the futility of their proposed procurement claim. To explain why, the Court must first resolve what appears to be some confusion about a footnote in the prior Order, one which the Plaintiffs cite now. In its discussion of secondary liability, the Court explained in an aside comparing the ECPA's criminal and civil provisions that "[t]he procurer of an interception has indeed engaged in an a violation of [§ 2511(1)(a)], and may thus be sued [under § 2520] by the person whose communication was intercepted." Mot. Dismiss Order at 10 n.3. The Court reasoned that this interpretation of the ECPA's civil provision "makes sense because the procurer of a violation . . . is not secondarily liable as that term is usually understood; the procurer is the *principal*, not the merely secondary actor." *Id.*

Plaintiffs appear to have somehow taken the footnote as a clue that they should now allege that WOW procured NebuAd to intercept their communications. *See* Proposed Third Am. Compl. ¶¶ 90-91. If so, Plaintiffs have misinterpreted the significance of the footnote discussion. The "procurer" under the Court's analysis would be *NebuAd*, not WOW. In other words, one could argue that NebuAd procured WOW to intercept the communications. But even under this alternative theory, it would be NebuAd, not WOW, that would remain liable under the statute. As explained in the previous Order, there is no private cause of action for secondary liability under the ECPA. *See* Order at 8-10.

18

Therefore, as applied to WOW, trying to add the procurement claim is futile for the same reasons that the divulgence claim is futile. Plaintiffs have alleged no new facts suggesting that WOW ever acquired the contents of intercepted communications. To state a claim for procurement, Plaintiffs would still need to allege that WOW (or someone on its behalf) intercepted—that is, acquired the contents of—communications. *See* § 2511(1)(a) (stating that a person violates the statute when that person "procures any other person to intercept . . . [an] electronic communication"). But again, because Plaintiffs have alleged no new facts, the procurement claim too would also fail and amendment is therefore futile.

Finally, undue delay and prejudice are also factors that weigh against granting leave to amend. *See Airborne Beepers & Video, Inc.*, 499 F.3d at 665, 667 (finding sufficient prejudice to affirm the district court's denial of leave to amend when the litigation had already been pending for four-and-a-half years and the defendants had already briefed three motions to dismiss). Including its lawsuit in the Northern District of California, Plaintiffs have been pursuing this lawsuit against WOW for nearly five years, four of those years in this Court alone. The parties have already briefed four motions to dismiss. *See Valentine*, 2009 WL 8186130, at *2 (declining to rule on a pending motion to dismiss); R. 22, 59, 136. Together, the protracted litigation and the multiple rounds of briefing demonstrate that WOW will be prejudiced if Plaintiffs get yet another shot now. Plaintiffs' motion for leave to amend is therefore denied.

19

## IV. Conclusion

For the reasons stated above, Plaintiffs' motions for reconsideration [R. 165] and leave to amend [R. 163] are denied. The Court also dismisses Plaintiffs' disclosure and use claims under 18 U.S.C. §§ 2511(1)(c) and (d). Because no other motions or claims remain pending, Plaintiffs' Second Amended Complaint is dismissed with prejudice.


ENTERED:


    s/Edmond E. Chang    
Honorable Edmond E. Chang
United States District Judge

DATE: September 27, 2013

20